UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| NANCY A. MCCLURE-SOTO, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | NO. 5:21-CV-00660 -JKP-HJB |
| | § | |
| BEXAR COUNTY, TEXAS, | § | |
| Defendant | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Bexar County, Texas (hereinafter "Bexar County"), Defendant, and pursuant to FED. R. CIV. P. 56(C), files its Motion for Summary Judgment with respect to all claims asserted by Plaintiff, Nancy McClure-Soto ("McClure-Soto" or "Soto"), and in support thereof, shows the Court as follows:

**Status of Litigation:**

The discovery period has closed. Pursuant to this Court's Memorandum Opinion and Order (D.E.29), McClure-Soto's pending claims under Title VII and the Texas Labor Code are: 1) Retaliation; and 2) Retaliatory Hostile Work Environment.

**Pleadings and Relevant Time Frames:**

Soto's Original Petition and Affidavit attached thereto contain many allegations of misconduct by various Bexar County employees, over a period of many years, including much alleged misconduct having nothing to do with Soto. Bexar County asserts that Soto's pleadings, and her contacts, direct or indirect, with local news media were designed to embarrass and harass current and former members of management within Bexar County. Bexar County has tried to keep its eye on the ball – and the proper playing field throughout this litigation. The playing

1

field is defined by Soto's EEOC Charge 451-2020-01182 which states as follows:

> **DATE(S) DISCRIMINATION TOOK PLACE**
> **Earliest       Latest**
> **12/6/2019     2/26/20**
> X Continuing Action
>
> "I believe I have been subjected to retaliation while in the performance of my duties for providing assistance to a request submitted by Alexandria Millan regarding her EEOC Charge 451-2020-00336. I also complained of harassment, bullying, hostile work environment and that my job duties are being removed little by little. Kelmar Global was hired to conduct an investigation and I believed that the investigation was completed. In addition, I was written up and suspended for 30 days.
>
> "I believe I was retaliated against after I engaged in protected EEOC activity in violation of Title VII of the Civil Rights Act of 1964, as amended." (Ex.6 Gonzalez Aff.BC107)

**Protected Activity on Her Behalf:**

On **December 5, 2019**, Soto sent an email to her supervisor, Tina Smith-Dean ("Smith-Dean") with a long list of her grievances against Smith-Dean, which she copied to Smith-Dean's supervisor, the County Manager, to several County Commissioners, and to the Director of Human Resources.

Soto, in her sworn Answers to Bexar County's Interrogatory No. 10, states that:

"Immediately following that email, until the day I left the county, I was retaliated against." (Ex.4,Int.Ans.10)

**Protected Activity on Behalf of Millan:**

With regard to her assistance to Alexandria Millan, Soto states as follows:

**INTERROGATORY NO. 5:**
Describe how you assisted Alexandria Millan with her complaints to the EEOC.

**ANSWER:** December 10, 2019 & December 16, 2019, Alexandria Millan asked me for copies of her timesheets and personnel file for her attorney and for her EEOC case. She copied me on emails referencing both. (Attached)

However, an examination of those emails reveals that the first email from Millan to Soto

requesting assistance for a copy of her personnel file was actually sent on **December 6, 2019**, the day after Soto's email to Smith-Dean.

On **June 22, 2020** Soto retired from Bexar County in lieu of termination.

Accordingly, the relevant playing field for review of actions which allegedly constitute retaliation or a retaliatory hostile work environment is necessarily limited to actions that occurred from **December 5, 2019 through the date of Soto's retirement on June 22, 2020**.

**<u>Undisputed Facts:</u>**

The following facts are undisputed:

a. At all times relevant to Soto's complaints, she was employed as an Administrative Services Coordinator within the Bexar County Manager's Office, with her supervisor being the Assistant County Manager, Smith-Dean. (D.E.1;Ex.4,Int.Ans.2) Previously, in the same position and department, Soto had reported to County Manager, David Smith. (Ex.4,Int.Ans.2)

b. On December 5, 2019, Soto sent an email to Smith-Dean with a long list of her grievances against her, which she copied to the County Manager, to several County Commissioners and their respective Chiefs of Staff, and to the Director of Human Resources. (Ex.3,RuizAff.BC115-117)

c. On December 6, 2019, Millan asked Soto if she could review her personnel file, and is advised by Soto that Soto does not have it. Millan then emails Smith-Dean communicating that course of events, and asks to review her file in person and to "personally make a copy of it for attorney and myself." (Ex.6 Gonzalez Aff. BC525)

d. On December 9, 2019, Smith-Dean replies to Soto via email, advising that the HR Dept. would investigate her claims, that Smith-Dean would be removing herself from Soto's chain of command until the investigation concluded, and that Soto would report to Veronica Guevara, Risk Management Coordinator until further notice. (Ex.3,Ruiz Aff.BC118)

e. Soto did not suffer any loss of pay, benefits, or a change in job position – just a change in her supervisor pending the investigation. (SotoDepo.P155/15-25)

f. All of the "removal of job duties" that Soto regards as significant, occurred **before December 5, 2019**, to include removal of personnel files, change of lock to Smith-Dean's office, removal of access to Smith-Dean's calendar and reassignment of travel arrangements. (Ex.3,RuizAff.BC115-117; Ex.1; Soto Depo.P99/12-100/2)

**Summary Judgment Evidence:**

Bexar County relies upon the following summary judgment evidence in support of this Motion, which is attached hereto:

Exhibit 1 Affidavit of Tina Smith-Dean, Assistant County Manager

Exhibit 2 Affidavit of Veronica Guevara, Risk Management and Compliance Director

Exhibit 3 Affidavit of Anna Marie Ruiz, Bexar County District Attorney Records, EEOC

Exhibit 4 Plaintiff's Answers to Interrogatories

Exhibit 5 Affidavit of Tanya Gaitan, Budget & Finance Director

Exhibit 6 Affidavit of Manuel Gonzalez, Bexar County HR Records

Bexar County further relies upon the Deposition of McClure-Soto, labeled "FOR ATTORNEY'S EYES ONLY", which is filed separately under a Motion to File Document under Seal and Order filing same under seal.

**Summary Judgment Standard:**

Rule 56(b) of the Federal Rules of Civil Procedure provides that a defending party may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor. Summary judgment is mandated when the pleadings and the evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c). The movant has the burden of proving the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322. To satisfy this burden, the movant may present evidence that negates a material element of the non-movant's claim.

Once the movant makes this showing the burden shifts to the non-movant to show that summary judgment is not appropriate. *Id.* The non-movant must go beyond the pleadings and

present competent summary judgment evidence showing that there is a genuine issue for trial. *LTV Ed. Sys., Inc. v. Bell,* 862 F.2d 1168, 1172 (5th Cir. 1989). In ruling on a summary judgment motion of any kind, courts must consider the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any. *Id.* In addition, it is well established that the non-movant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, or "only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Furthermore, the mere allegation of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*

### **Retaliation/Retaliatory Hostile Work Environment for Protected Activity: 1) Assistance to Millan and 2) December 5, 2019 Complaint to/about Smith-Dean**

**Bexar County is entitled to summary judgment on Plaintiff's claims for retaliation/retaliatory hostile work environment because 1) there is no evidence of any causal link between the alleged adverse employment actions complained of by Plaintiff and her protected conduct; 2) because the summary judgment evidence establishes legitimate nondiscriminatory reasons for the adverse employment actions complained of by Plaintiff; and 3) there is no evidence of any retaliatory hostile work environment against Plaintiff.**

Under Title VII, McClure-Soto must establish a prima facie case of retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) *a causal link existed between the protected activity and the adverse employment action*. *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57(5th Cir. 2007). Title VII's anti-retaliation provision prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing"

under Title VII. *Id.*; 42 U.S.C. § 2000e–3(a). If the Plaintiff establishes a prima facia case of retaliation, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996**);** *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 345-46 (5th Cir. 2016).

McClure-Soto claims that she engaged in a protected activity, first on her own behalf via her email to Smith-Dean, and then beginning the very next day, via her assistance to Millan in attempts to obtain her Personnel file and copies of her time slips for her attorney. (Ex.6 Gonzalez Aff.BC107)

McClure-Soto alleges the following acts of retaliation against her:

**Removal of Smith-Dean as her Supervisor During Investigation into Soto's Complaints**

While this removal should be the poster child for good practices when a supervisor is accused of retaliation, Soto objects, and falsely refers to that action *as a demotion*. (D.E.1-5,p.8-13) Nothing about Soto's Rank/Grade of position, title, pay or benefits changed – she simply reported to Veronica Guevara, then Risk Management Coordinator ("Guevara"), instead of Smith-Dean, until the Kelmar Global investigation could be completed. (SotoDepo.P155/15-25; Ex.2 GuevaraAff.¶2)

Soto also takes issue *with whom Smith-Dean choose to be her temporary supervisor* – Veronica Guevara. Soto identifies Guevara as having the least amount of time in the department. (Ex.4 Int.Ans.6) Soto states that Smith-Dean should have allowed her to report to a manager or director with whom she had been working for years, such as Seth McCabe, Director of Management & Finance, Manuel Gonzalez, HR Manager or Tanya Gaitan, the Budget Manager. (Ex.4 Int.Ans.6) These are odd recommendations since Soto made accusations against McCabe and Gaitan, and objected that HR – hence Manuel Gonzalez – was involved in and directing the Kelmar Global investigation into Soto's complaints about Smith-Dean. (Ex.4,Int.Ans.7,8)

The crux of Soto's complaint as to Smith-Dean's choice of temporary supervisor boils down to Soto's perceived loss of prestige: "*This …deliberately sent out a message that I was no longer a part of the "Office Management Team" as I have been for my entire time in the department.*" (Ex.4Int.Ans.6)

The most telling objection that Soto had to the reassignment of her supervision, was her testimony that Smith-Dean should not have removed her from Smith-Dean's supervision at all because:

> "I --- I – in my experience or in --- in my opinion, having worked so closely with Tina, with David, with everyone in that department, having been a confident of hers, having been a very good friend, someone who had lunch with her on a daily basis, and that we –we were very close. **I – I felt that a better response at that time would have been for her to say, let's chat. What's going on? Why are you so upset? Because that is what I would do with anyone who reported directly to me**." (Soto DepoP106/2-19)

Soto could not see the forest for the forest fire caused by her incendiary email. Instead of coming to Smith-Dean, whom she described as a "very good friend", to address those serious allegations, Soto chose to copy that email to the HR Director, the County Commissioners and their Chiefs of Staff, and the County Manager. Smith-Dean, as a prudent manager, had no choice but to sever the supervisory relationship, and seek an independent investigation.

Soto's belief that Smith-Dean could have simply talked through the problems with Soto, coupled with her perception that she had suffered a serious loss of prestige or power, may well be the root of all that came after, including the February 7, 2020 Reprimand, and the February 26, 2020 Lobby Photo/Video Incident.

There is no evidence that Smith-Dean poisoned the well when she assigned supervision of Soto to Guevara. In Guevara's Affidavit, she states that in December of 2019, Smith-Dean told her that *because there was a complaint against Smith-Dean*, Soto was now assigned to

7

report to Guevara until the investigation was completed. (Ex.2GuevaraAff.P1) Smith-Dean did not offer any further information. (Id.) During the course of Guevara's supervision of Soto, Guevara states that Smith-Dean did not question her about Soto, or suggest or direct her to take any action with regard to Soto. (Id.)

**Reprimand.**

Guevara has been employed by Bexar County since 2017, and had over 35 years of experience in the fields of risk management and claims handling when she joined Bexar County. In those prior positions, and as Risk Management Coordinator for Bexar County, she had supervisory responsibilities over employees who reported directly to her. (Ex.2 Guevara Aff.¶1)

In January, 2020, Soto had several instances of inappropriate communications with Bexar County employees, vendors and County Commissioners about perceived slights and/or changes in policies. One such string of communications began on January 21 with regard to the cleaning of floors in the Employee Clinic and in Human Resources. (Ex.2GuevaraAff. BC70-75) Soto was upset that she had not been consulted about these scheduled services. By January 24th, the Director of Facilities Management had joined the conversation, with a copy to Smith-Dean, to state that they did not have the time to add an additional level of bureaucracy to their operation, and that he was instructing his team to continue to coordinate schedules directly with the users in County buildings. (Id.BC72) Soto then responded with a lengthy email, copied to the County Manager, advising that Smith-Dean was no longer her supervisor. (Id.BC71-72)

The first time that Soto included her supervisor, Guevara, in these communications, was on January 27, with an email that was copied to the County Manager, Guevara, and Commissioners Rodriguez and Calvert and their Chiefs of Staff. (Id.BC70-71) Below her signature block is typed "my file/job duties/retaliation." (Id.71) In the body of the email, paragraph four, Soto makes note of the fact that Smith-Dean is not supposed to be making any

decisions regarding her job duties, that Guevara is only her temporary supervisor and has limited knowledge, and therefore Soto "will await further instruction from County Manager, Mr. David Smith." (Id.BC70)

Then on January 31, 2020, from 11:08 a.m. until 1:06 p.m., a series of emails were exchanged between Soto and Guevara, and between Soto and Seth McCabe – all of which were also copied to the County Manager, Commissioners Rodriguez and Calvert and District Attorney Joe Gonzales.(Id.BC66-69) The subject matter of these emails is coverage for bathroom breaks while Soto is working at the front desk lobby. Soto acknowledges that "It is quite unbelievable that I am being forced to send out an email for such a petty issue but, since I am being presented with another form of retaliation, I am obligated to document it." (Id.BC67) She asks for "clarification" from the County Manager and/or the District Attorney as to "what the County's policy is on asking permission being allowed to use the restroom." (Id.BC67)

In none of these situations, before they escalated into ridiculousness, did Soto reach out to her supervisor for assistance in problem solving, or in the second situation, to state her complaint about Guevara's "offer" directly to Guevara first. (Id.BC66-75) Soto admits that she would expect the person under her supervision to first come to her – whether it was a problem with Soto or someone else. (Soto Depo.P175/20-176/12)

Guevara sought the counsel of Human Resources in terms of how to address these types of communications. (Ex.2, Guevara Aff.p.2) She issued a Written Reprimand to Soto on February 7, 2020, which cited to her violation as being "Conduct which is detrimental to or has an adverse effect on the office or department." (Id.BC65) The Reprimand noted Soto's disrespect of Guevara, by not bringing those concerns to her first as Soto's supervisor. (Id.65)

9

Soto signed it with the notation that "EEOC Complaint filed on 1/12/20." [1]

In her deposition testimony, Soto admitted to knowing better. Soto agreed that although she copied those emails to the County Manager, and two Bexar County Commissioners, none of those individuals were proper people to contact about when or how the clinic floor ought to be cleaned. (Soto Depo.P/177/18 – 179/4)

The fact that Soto had made allegations and was involved in an investigation with regard to alleged misconduct by Smith-Dean, did not allow Soto to conduct herself inappropriately in the work place Her unprofessional conduct was addressed in accordance with Bexar County Civil Service Rules – a Written Reprimand, which is one of the lowest levels of discipline.

**February 26, 2020 Lobby Photo/Video Event.**

Soto asserts that Smith-Dean solicited emails from six employees about an event in the lobby of the 9th floor on that morning. The allegations were that Soto was photographing and videotaping employees as they were coming into work. This caused her to be placed on Investigative Administrative Leave, and ultimately to a recommendation that she be terminated. (Ex.4,Int.Ans.7)

On February 26, 2020, Guevara received forwarded communications that had been sent to Smith-Dean from various employees in the department about Soto's causing a disruption in the workplace. (Ex.2 Guevara Aff.p.2) These employees discussed Soto's behavior in the office, and on that day particularly, when she appeared to be photographing and/or videotaping employees as they were arriving at the office. (Id.p.2) Guevara confirms that Smith-Dean only forwarded the information and made no suggestion as to how to handle the problem. (Id.p.2)

Guevara states in her affidavit that based upon what she observed in the office on a daily basis, her perception was that the employees felt bullied and intimidated by Soto. (Id.) She was

---

[1] Soto's EEOC Charge was not filed until April 9, 2020. (Ex.6 Gonzalez Aff.BC107)

concerned because Soto had just received the Reprimand 19 days before, yet it seemed Soto's behavior was becoming more aggressive and inappropriate. (Id.) Guevara notes that her goal when issuing a Reprimand is to cause the employee to look at the problem, and take corrective action.(Id.)

Guevara reached out to the attorneys in the Bexar County District Attorney's Office, Civil Division for guidance in investigating and with regard to the appropriate action to be taken while the investigation was ongoing. The determination was made that the work environment was too unsettling to allow Soto to remain in the workplace during the investigation. (Id.2) that same day, February 26, 2020, Soto was placed on Investigative Administrative Leave for 30 days, with full pay and benefits during this time. (Id.2, Exhibit B)

Human Resources conducted the investigation, which usually would have been concluded in 30 days, but Covid 19 interrupted that process. With many Bexar County employees suddenly working from home, much of the staffing/resources had to first be directed to allowing that work to proceed remotely. (Id.p.2) When the investigation could not be concluded within 30 days, at the end of that 30 day leave, Soto was instructed to begin working from home. (Id.2)

The investigation included the interviews of six employees, a review of the video of the reception foyer, and the attempted interview of Soto. (Ex.6 Gonzalez Aff.BC12-89) When Soto was contacted via email to set up a remote interview, her response was repeatedly to the effect that "I am unaware of any incident which occurred on February 26, 2020", "I cannot possibly give my side of the story if I don't know what you are referring to." "I went to work as normal. At noon, I was given a letter by Veronica Guevara, placed on Investigative Administrative Leave and walked out of the building." (Id.88-89) Soto was invited to send in a written statement, and

although her counsel communicated with the Assistant District Attorney who was working on this matter, no response was received by HR as of April 28, 2020 when its report was prepared. (Id.13, 78-80)

The incident in question involved employees reporting that Soto was photographing and or videotaping them as they came off the elevator on the morning of February 26, 2020. (Id.BC14,42,46-50) Budget Analyst Leon actually confronted Soto that morning, with an exchange of words in the lobby, telling her that what she was doing was not right. Soto responded by stating "I am not taking pictures of you. Do you have something to hide?" (Id.46) Soto then offered to show her phone to Leon and to other employees to verify that she was not taking photographs. (Id.46)

Several employees reported that the same videotaping/ photographing actions had also taken place in the days before as well. (Id. 42, 47, 48) On that day, Soto denied taking any photographs or videos. (Id.46,48) However, HR was able to review the surveillance camera video in the lobby area, which clearly showed Soto using a co-worker's work station at the front desk before 8 a.m. and interfacing her personal phone and the County computer. That chronology of surveillance events is found at Ex.6, Gonzalez Aff.BC14. Images and video were observed on the computer as Soto was interfacing with the County computer. From 7:55 a.m. until 8:13 a.m., Soto is seen using her personal device to monitor the elevator lobby, and flashing lights on the device indicate she is taking photos. At 8:13 a.m., Soto has a minute long confrontation with Leon, where Soto pursues Leon from the foyer to the elevator lobby three times following Leon's statement "I know what you're doing." (Id.BC14) Still photos of the surveillance video are found at (Id.BC52-63)

In her deposition, Soto testified that she merely photographing the office to document

dirty elevator doors, newspapers stacked up, a sloppy bulletin board, etc. and that she used her phone for that purpose all the time. (Soto Depo.192/16-196/18)

During the interviews, all of the employees stated that Soto's behavior and confrontation with co-workers had created an environment that was "uncomfortable", "intimidating", "tense and stressful", "on edge", "fearful and unusual" and "fearful of retaliation" upon Soto's return. (Id.BC14) One employee stated that she was "scared for when she comes back and the controlling behavior continues" and "she retaliates against me, that's what I am terrified of." (Id.BC15)

The events of February 26, 2020 caused Tanya Gaitan to email Smith-Dean that afternoon about the hostile and intimidating work environment she had been experiencing and that she believed her staff had been experiencing as a result of actions by Soto and Millan. (Ex.5) She also stated her concerns, and her staff's concerns that their budget work – which is on a shared drive – and is extensive, could be accessed or tampered with by a disgruntled employee. (Ex.5BC388)

Guevara did not participate in the investigation but was provided with the report. After consultation with HR and attorneys in the Bexar County District Attorney's Office, Civil Division, the recommendation was made that Soto be terminated. (Ex.2, Guevara Aff. p.3) Smith-Dean did not discuss this process with Guevara, nor make any suggestions or instructions as to what action should be taken as to Soto. (Id.p.3)

Soto was still working from home, like most Bexar County office employees. Guevara met with her in person on June 9, 2020 to advise her that the investigation had concluded and that the recommendation had been made for her termination. (Id.p.3) Soto was advised that she had the right to reply to that proposed action within ten days. On June 22, 2020, Guevara

received a notice from Soto that she was retiring her position that date; and prepared an acknowledgment of same. (Ex.2, Guevara Aff. Ex.C)

Soto's conduct in the workplace is the only evidence of a hostile work environment – perpetuated by Soto. There is no evidence of retaliation against Soto or of a retaliatory hostile work environment.

## Conclusion

A train wreck began on December 5, 2019, with Soto's email to Smith-Dean. Unfortunately the train wreck occurred because of Soto's increasingly aggressive actions when she didn't get to talk one on one with Smith-Dean, when she perceived that she had lost her membership in the *"Office Management Team"* by being assigned a temporary supervisor during the investigation, and when she perceived others (outside departments) were challenging practices she had set up years ago. The summary judgment evidence establishes that Soto became the aggressor, the bully, and the intimidator. There is no summary judgment evidence to support any of McClure-Soto's claims for retaliation or retaliatory work environment by Bexar County, or any maliciousness or bad acts by Smith-Dean directed to McClure-Soto from December 5, 2019 until the time that Soto retired.

WHEREFORE, PREMISES CONSIDERED, Bexar County prays this Court grant Defendant's Motion for Summary Judgment in its entirety, and dismiss all claims and causes of action asserted herein by Plaintiff, such that Plaintiff take nothing by this action, and for such other and further relief to which Defendant may show itself justly entitled.

Respectfully submitted,

*/s/ Erin R. McNiece*
**ERIN R. McNIECE**
State Bar No. 13838700
CAVARETTA, KATONA & LEIGHNER PLLC

700 N. St. Mary's Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 588-2901
Facsimile: (210) 588-2908
mcniecee@ckl-lawyers.com

ATTORNEYS FOR DEFENDANT,
BEXAR COUNTY, TEXAS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been delivered via CM/ECF electronic filing on this the 7th day of December, 2023:

Jason J. Jakob                                *VIA ELECTRONIC FILING SERVICE*
DIAZ & JAKOB, PLLC
1100 NE Loop 410, Suite 200
San Antonio, Texas 78209
jjj@diazjakob.com
Attorney for Plaintiff

*/s/ Erin R. McNiece*
**ERIN R. McNIECE**