# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

NANCY A. MCCLURE-SOTO,  §
    **Plaintiff**  §
     §
v.  §    **NO. 5:21-CV-00660 -JKP-HJB**
     §
**BEXAR COUNTY, TEXAS,**  §
    **Defendant**  §

## AFFIDAVIT OF ANNA MARIE RUIZ

STATE OF TEXAS  §
     §
COUNTY OF BEXAR  §

**BEFORE ME,** the undersigned authority, on this date personally appeared ANNA MARIE RUIZ who, after being duly sworn, deposed as follows:

"My name is ANNA MARIE RUIZ. I am employed as Office Supervisor, Bexar County District Attorney's Office. I am over the age of eighteen (18) years, am mentally competent and capable of making this affidavit. In my position as Office Supervisor, I serve as a custodian of records for Bexar County District Attorney's Office. I have personal knowledge of the facts stated herein and they are true and correct.

"Attached hereto are 39 pages of records from the Bexar County District Attorney's Office, pertaining to Bexar County, Texas' Position Statement on EEOC Charge #182, Nancy McClure-Soto v. Bexar County, which are kept by Bexar County, Texas in the regular course of business, and it was the regular course of business of Bexar County, Texas for an employee or representative of Bexar County, Texas with knowledge of the event, condition, opinion or event recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are exact duplicates of the original.

"Further Affiant sayeth not."

SIGNED this the __1__ day of December, 2023.



ANNA MARIE RUIZ

STATE OF TEXAS          §

COUNTY OF  BEXAR      §

**BEFORE ME**, the undersigned authority, on this day personally appeared ANNA MARIE RUIZ who, upon his oath, stated that he has read the foregoing Affidavit and states that each and every fact stated therein is true and correct.

**SUBSCRIBED AND SWORN TO BEFORE ME** by the said ANNA MARIE RUIZ, this the __1st__ day of December, 2023.

NOTARY PUBLIC, STATE OF TEXAS

NOEL  ELISA BUTLER
Notary Public, State of Texas
Comm. Expires 06-09-2025
Notary ID 133147744

# McClure-Soto
# Position Statement #182



JOE D. GONZALES
BEXAR COUNTY CRIMINAL DISTRICT ATTORNEY
PAUL ELIZONDO TOWER
101 W. NUEVA
SAN ANTONIO, TEXAS 78205
(210) 335-2311

May 11, 2020

Hector Colon-Padro
Equal Employment Opportunity Commission
San Antonio Field Office
5410 Fredericksburg Road, Ste. 200
San Antonio, Texas 78229
hector.colon-padro@eeoc.gov

Re:  Nancy McClure-Soto
     Charge No. 451-2020-01182

Dear Mr. Colon-Padro:

I am the attorney assigned to the above-referenced charge and will represent Bexar County in this matter. My contact information is listed below.

The complainant Nancy McClure-Soto ("Ms. McClure-Soto") claims she suffered retaliation for assisting Alexandria Millan ("Ms. Millan") with an EEOC Complaint (451-2020-00336) and complaining "of harassment, bullying, hostile work environment and that my job duties are being removed little by little;" and that she was "written up and suspended for 30 days." Respondent Bexar County denies such allegations.

As an initial matter, Bexar County does not know what assistance Ms. McClure-Soto, an Administrative Coordinator, provided to Ms. Millan, a Budget Analyst, regarding Ms. Millan's EEOC Complaint. Ms. McClure-Soto is not referenced within Ms. Millan's complaint, nor does she appear to have any role or influence regarding Ms. Millan's claims. Without additional information regarding the basis of her assertion, the Respondent cannot speculate as to any connection between Ms. Millan's claim and any alleged adverse action against Ms. McClure-Soto.

BC 000110

## A.  December 5, 2019: Complaint Against Tina Smith-Dean

The events relevant to Ms. McClure-Soto's claim are best addressed in chronological order. On December 5, 2019, Ms. McClure-Soto emailed Tina Smith-Dean (Ms. Smith-Dean), the Bexar County Assistant Manager, complaining that Ms. Smith-Dean had made certain work assignment changes that impacted Ms. McClure-Soto and that Ms. Smith-Dean made such managerial decisions without discussing the changes with Ms. McClure-Soto. Exhibit A. Ms. McClure-Soto alleged that she was feeling "harassed" and "oppressed" and that the changes were made for retaliatory purposes, possibly based on age or use of the Spanish language. In response, Ms. Smith-Dean informed Ms. McClure-Soto the issue would be investigated and immediately removed herself from Ms. McClure-Soto's chain of command. Exhibit B.

A neutral outside firm, Kelmar Global, was retained to investigate Ms. McClure-Soto's claims. Kelmar Global submitted a final report to the County Manager's Office, which was referred to the District Attorney's Office for legal review. In a memo to Ms. McClure-Soto, County Manager David Smith wrote that:

> The legal review concluded that Ms. Smith-Dean was within her authority as a manager to remove or amend job responsibilities for those individuals within her chain of command. Further, based on its review of the Kelmar report, the District Attorney's Office has determined that no alleged action of Ms. Smith-Dean rose to the level of unlawful conduct and that any allegations of discrimination could not be sustained.

Exhibit C. As a result of these findings, the matter was closed, warranting no additional action because Ms. McClure-Soto's complaints lacked merit.

## B.  January 12, 2020: Written Reprimand

In January 2020, Ms. McClure-Soto received a written reprimand for inappropriate communications directed to her temporary supervisor, Veronica Guevara, and other Bexar County employees. Exhibit D. Specifically, Ms. McClure-Soto sent a series of unprofessional, sarcastic emails berating her temporary supervisor and challenging the Facility Management Director's authority to arrange floor cleaning in a separate building. Ms. McClure-Soto's hostility and overblown allegations of retaliation were directed at individuals who were uninvolved with her complaint against Ms. Smith-Dean. By copying various Bexar County elected officials to emails directed at Ms. Guevara, Ms. McClure-Soto attempted to cast discredit upon her temporary supervisor.[1] None of the additional individuals attached to the emails were involved with the email topics.

---

[1] Ms. McClure-Soto took the same approach when she emailed her compliant to Ms. Smith-Dean and attached officials and other employees who were not involved in the matters addressed within the email.

BC 000111

Ms. McClure-Soto's unprofessional conduct could not go unaddressed, so she was disciplined pursuant to the Bexar County Civil Service Rules—a written reprimand, one of the lowest forms of discipline available to supervisors. Ms. McClure-Soto refused to acknowledge that her behavior was inappropriate and cast herself as a victim by writing on the written reprimand: "EEOC complaint filed on 1/12/20. I feel this is another form of retaliation." Exhibit D. It appears Ms. McClure-Soto's representation that she filed an EEOC compliant was false, as Bexar County is not aware of and has never been served with a claim filed on or about January 12, 2020.

## C. February 26, 2020: Harassing/Intimidating Other Employees

On February 26, 2020, six employees submitted complaints regarding Ms. McClure-Soto's behavior in the workplace. Five complaints specifically addressed Ms. McClure-Soto photographing and/or videotaping coworkers as they arrived at work. When these complaints were received, Ms. McClure-Soto was placed on paid administrative leave pursuant to Bexar County Civil Service Policy Rule 7.6.11. Exhibits E, F.

Bexar County Human Resources (HR) was requested to conduct an investigation into the employees' complaints against Ms. McClure-Soto. During the investigation, the complainants were interviewed, employee statements were reviewed, and a Bexar County camera recording from the morning of February 26, 2020 was analyzed. The investigator found the video supported the allegations that Ms. McClure-Soto was photographing and/or recording coworkers as they entered the office area. The video also showed the confrontation between Ms. McClure-Soto and another employee. A witness recounted that the employee told Ms. McClure-Soto what she was doing was "wrong." In response Ms. McClure-Soto pursued her coworker asking the employee "Do you have something to hide?"

Ms. McClure-Soto was given the opportunity to be interviewed regarding the complaints against her. When the investigator reached out to Ms. McClure-Soto, she responded:

> I am unaware of any incident which occurred on February 26, 2020. On that date, I was given a letter by Veronica Guevara which stated I was being placed on "Investigative Administrative Leave" for a period of 30 days and then I was walked out of the building. I asked Veronica several times why I was being placed on "Investigative Administrative Leave". She stated she did not have any information to provide me. She only said that an investigation was being conducted that involved me. I asked if it was in reference to the Kelmar Global Investigation and she said it did not. She said some "complaints" had made against me, that there would be an investigation conducted. Until the investigation was completed, I would be on "Investigative Administrative Leave".

Exhibit G. After additional communications requesting Ms. McClure-Soto participate in an interview or at least respond to written questions, Ms. McClure-Soto and her attorney, who was retained after the interview request was made, failed to timely respond. Ms. McClure-Soto's interview was set for April 16, 2020, but she failed to participate. The investigator then asked for a written response by April 17, 2020. When Ms. McClure-Soto's attorney requested additional time, the undersigned requested that a response from Ms. McClure-Soto be submitted early in the week of April 20, 2020. After no response was received, the investigation was finalized on April 28, 2020. Exhibit H. On May 8, 2020, Ms. McClure-Soto's counsel emailed the undersigned the attached letter, which includes the following statement "Jasmine Leon said I was taking pictures of her to try to intimidate her. I was not." Exhibit I.

In the final report, the investigator found that Ms. McClure-Soto was "recording her colleagues entering and exiting the workspace during work hours," she engaged in a "verbal altercation" with another employee [Jasmine Leon] regarding her acts, her fellow employees felt "fearful and intimated by her," she "created conflict with colleagues, openly discussed confidential employment matters and sought to coerce others to participate in a coup against management." Exhibit H. The investigator further found Ms. McClure-Soto to be "confrontational, intimidating, retaliatory and the source of distrust" with her colleagues.

On April 8, 2020, Ms. McClure-Soto returned from administrative leave.[2] As Ms. McClure-Soto recognized in her above-referenced statement, the leave period was not a 30-day "suspension" as she alleges within her EEOC charge. Rather, as she recognized, Ms. McClure-Soto was on leave pending the investigation, receiving full pay and benefits.[3] Under Bexar County policies a suspension would be a disciplinary act that requires a notice period and an opportunity for an employee to respond, prior to the discipline enactment. The day following her return, which was prior to the completion of the HR report, Ms. McClure-Soto filed an EEOC complaint. On April 15, 2020, Bexar County was served with Ms. McClure-Soto's EEOC compliant.

## D.    Alleged Retaliation

Prior to her complaint, Ms. McClure-Soto received a written reprimand and took additional actions that warranted an HR investigation. To the extent Ms. McClure-Soto alleges that she was retaliated against for assisting Alexandria Millan with her EEOC compliant, the

---

[2] The investigator was unable to finish the investigation within thirty working days, which is the maximum time period allowed for someone to remain on paid administrative investigative leave, under Rule 7.6.11, Sec. 2(e). Thus, Ms. McClure-Soto returned to work in a teleworking capacity prior to the completion of the investigation. On March 23, 2020, Bexar County Judge Nelson Wolff entered a Stay Safe, Stay Home Order. As a result, the vast majority of Bexar County employees began teleworking and did not come into the office during the workday.

[3] Ms. McClure-Soto clearly understood that she was on administrative leave and not suspended as demonstrated by her email to Ms. Ana Bernal from HR on April 16, 2020. Exhibit G.

BC 000113

Respondent is not aware of a how or why Ms. McClure-Soto "assisted with" Ms. Millan's claim and there is no support or evidence for her contention that she suffered retaliation for such acts.

With regard to Ms. McClure-Soto's allegation that she was retaliated against because of her complaint against Ms. Smith-Dean, again there is no causal connection between the written reprimand and her previous complaint. Ms. McClure-Soto received a written reprimand for her inappropriate and unprofessional communications with Ms. Guevara and other Bexar County employees. These incidents were separate and distinct from Ms. McClure-Soto's complaint against Ms. Smith-Dean. The same is true for facts supporting Ms. McClure-Soto's paid administrative leave. Several weeks after receiving her written reprimand, Ms. McClure-Soto was placed on paid administrative leave because six colleagues complained of her actions within the workplace, all six of whom were uninvolved with Ms. McClure-Soto's complaint against Ms. Smith-Dean.

Importantly, Ms. McClure-Soto exhibited behavior that warranted appropriate discipline. Participation in filing an EEOC claim or making a complaint against a supervisor does not give an employee permission to violate employer rules or take any other action which may otherwise result in consequences for misconduct. Ms. McClure-Soto has no right to harass and intimidate her fellow employees or to disrupt the office environment, causing her colleagues to be "fearful" and "uncomfortable," in a "tense and stressful" workplace. Despite her effort to protect herself against discipline by filing an EEOC complaint, Ms. McClure-Soto is not shielded from discipline simply because she may have participated in some form of protected activity.

In sum, Ms. McClure-Soto cannot meet her burden to show a prima facie discrimination claim based on retaliation for complaining about her supervisor, Ms. Smith-Dean. The articulated reasons for Ms. McClure-Soto's written reprimand and the investigation initiated on February 26, 2020 are not pre-textual. As a result, there is no evidence or support of a retaliation claim in this instant case.

Sincerely,

/s/ Kristin K. Bloodworth

Kristin K. Bloodworth
Assistant Criminal District Attorney,
Civil Section
101 W. Nueva, 7th Floor
San Antonio, Texas 78205
Telephone: (210) 335-2367
Kristin.bloodworth@bexar.org

Enclosures.

From: Soto, Nancy
Sent: Thursday, December 5, 2019 4:01 PM
To: Smith-Dean, Tina ████████████████
Cc: Calvert, Tommy ████████████ Rodriguez, Justin ████████████████ Smith, David ████████████████; Caballero, Francesca ████████████████ Putney, Amy ████████████████ Gonzalez, Manuel ████████████
Subject: Workplace Bullying & Retaliation

Tina,

On June 19, 2019, you sent out an email to all the supervisors in Budget, Management & Finance, and Human Resources to reiterate that all IT, Facility, timekeeping, supply management and execution of financial transactions (paying invoices, credit cards, etc.) are to be handled by the Administrative Support staff. In that email, you also stated, "They are ready and more than able to provide the assistance you need. They have great processes and systems in place to keep things running smoothly". Please see attached

Recently, you have made several changes, which I feel has had an impact on my ability to conduct many of my job duties.

- You have removed access from your work calendar making it difficult to assist with the scheduling of meetings and interviews, to know when you will be in or out of the office, or even to simply locate you when someone is looking for you
- When I was out of my office recently, you removed all personal files/folders from a file cabinet in my office without even the professional courtesy of notifying me. Files which I have maintained for the past 15 years without incident
- You abruptly changed the lock on your office door, which I have been opening as a courtesy to you for over 9 years.
- And today, after over 15 years of me being directly responsible for managing all travel for our department, which included travel for the County Manager, County Judge, Commissioners, Human Resources, Budget, and Management & Finance, you have removed that responsibility from me without any type of explanation as to why.

I realize you are perfectly within your rights as the director of this department to move, change, reassign, or remove job duties and other responsibilities as you please. I also know you will have a perfectly crafted and professional response to each one of the issues; however, it does not change the fact that you have gone out of your way to do these things without any type of explanation, or professional discussion. For an employee who has been with this department for more than 15 years, I find it quite disrespectful. It is clear to me this is your typical method of sending out the message that I am, (to paraphrase you), "in your cross hairs".

EXHIBIT A

Recently, you sent out a memo to our entire department to let us know that you take harassment and bullying very serious and that if any of us are experiencing any issues we should let you know. Therefore, I am taking this opportunity to notify you that I am being harassed and feel very oppressed by you. I feel your recent actions are in direct retaliation for a meeting I recently had with Commissioner Justin Rodriguez to discuss issues and concerns that have been ongoing in this department for many years. Unfortunately, I have no confidence in our Human Resources Department since they report directly to you so, I also reached out directly to David Smith and will be reaching out to other Commissioners as well. Thus, I felt it prudent to copy them on this email.

Your actions have sent a clear message to me and my coworkers that you are angry with me for some reason and you are on a mission to slowly remove my job duties in order to justify the deletion of my position or you are simply trying to bully and harass me into leaving. Both of which I have seen you do and heard you gloat about on numerous occasions over the past several years.

I have worked with you and for you for almost 16 years Tina. I once considered you a friend and a mentor. Unfortunately, that changed several years ago. When your position changed, so did your disposition. Instead of using your position to lead this department and promote professionalism, I have watched as you use your position to bully and harass staff. I have seen and been a victim of your vindictiveness and retaliation. I have been cursed at, ignored, and now my reputation with this and other departments is being tarnished. All without merit.

I believe much of this began when I made a personal decision to stop participating in emails and group texts that demean or degraded others. My age may also be a factor. I have suffered some personal tragedy and serious illnesses over the past few years that forced me to take a large amount of sick leave. You have asked me to close doors because it irritates you having to listen to some of us openly speaking Spanish so; perhaps that fact that I am married to a Hispanic and often speak fluently also irritates you. Alternatively, it could just simply be something you personally do not like about me. Whatever the reasoning, it is all extremely unprofessional, quite exhausting, and I would appreciate it if this behavior would cease.

Over the years, I have proven myself as an asset to this department and that is reflected in my performance reviews. I have numerous emails to demonstrate that I was once considered a valued member of this team. My opinions and work product were valued and respected. I would like the opportunity to continue my career with the county until such a time, as I am ready to retire. I would like to work in a non-hostile environment. I would like to know that I can come to work daily and not feel that someone is conspiring to affect my career path.

I have been employed by Bexar County for almost 23 years. Over 15 of those years have been in this department. I have never had any disciplinary action against me. On the contrary, I have been promoted and commended for my hard work.

As I mentioned to you, I have diligently looked, and will continue to seek employment in another capacity within the county as I still have much to offer. I am simply asking to be treated with respect. Your recent behavior has demonstrated to me that you are on a mission to release me from my job. Therefore, I am compelled to reach out to your

superiors for their help.

Respectfully

Nancy A. McClure-Soto

BC 000117

**From:** Smith-Dean, Tina
**Sent:** Monday, December 9, 2019 10:36 AM
**To:** Soto, Nancy <██████████████████>
**Cc:** Calvert, Tommy <████████████> Rodriguez, Justin <████████████@bexar.org> Smith, David <David Smith@███████████████> Caballero, Francesca <████████████████████> Putney, Amy <████████████████████> Gonzalez, Manuel <████████████████████>
**Subject:** RE: Workplace Bullying & Retaliation

Nancy,

I have received and reviewed your email from Thursday, Dec. 5, 2019. Based on the concerns expressed, it is most appropriate for these allegations to be reviewed by the Bexar County Human Resources Department per our Bexar County policies, who will serve as neutral investigators. I have forwarded your email to the appropriate HR representatives.

Please note that the concerns expressed in your email are taken seriously and will not negatively impact your job or the relationships within our work environment. At this time, I am removing myself from your chain of command and you will report to Veronica Guevara, Risk Management Coordinator, until further notice. Thus, we will not have additional interaction until this matter has been resolved. At the conclusion of the HR investigation, I welcome the opportunity to discuss your feelings and explain my basis for reorganizing the job duties and workload of staff members per the needs of the office.


Tina M. Smith-Dean
Assistant County Manager



**From:** Soto, Nancy <████████████████>
**Sent:** Thursday, December 5, 2019 4:01 PM
**To:** Smith-Dean, Tina <████████████████████>
**Cc:** Calvert, Tommy <████████████████ Rodriguez, Justin <████████████ Smith, David <████████████ Caballero, Francesca <████████████████ Putney, Amy <████████████ Gonzalez, Manuel <████████████@███████@████████████>
**Subject:** Workplace Bullying & Retaliation

Tina,

On June 19, 2019, you sent out an email to all the supervisors in Budget, Management & Finance, and Human Resources to reiterate that all IT, Facility, timekeeping, supply

**EXHIBIT B**

BC 000118

management and execution of financial transactions (paying invoices, credit cards, etc.) are to be handled by the Administrative Support staff. In that email, you also stated, "They are ready and more than able to provide the assistance you need. They have great processes and systems in place to keep things running smoothly". Please see attached

Recently, you have made several changes, which I feel has had an impact on my ability to conduct many of my job duties.

- You have removed access from your work calendar making it difficult to assist with the scheduling of meetings and interviews, to know when you will be in or out of the office, or even to simply locate you when someone is looking for you
- When I was out of my office recently, you removed all personal files/folders from a file cabinet in my office without even the professional courtesy of notifying me. Files which I have maintained for the past 15 years without incident
- You abruptly changed the lock on your office door, which I have been opening as a courtesy to you for over 9 years.
- And today, after over 15 years of me being directly responsible for managing all travel for our department, which included travel for the County Manager, County Judge, Commissioners, Human Resources, Budget, and Management & Finance, you have removed that responsibility from me without any type of explanation as to why.

I realize you are perfectly within your rights as the director of this department to move, change, reassign, or remove job duties and other responsibilities as you please. I also know you will have a perfectly crafted and professional response to each one of the issues; however, it does not change the fact that you have gone out of your way to do these things without any type of explanation, or professional discussion. For an employee who has been with this department for more than 15 years, I find it quite disrespectful. It is clear to me this is your typical method of sending out the message that I am, (to paraphrase you), "In your cross hairs".

Recently, you sent out a memo to our entire department to let us know that you take harassment and bullying very serious and that if any of us are experiencing any issues we should let you know. Therefore, I am taking this opportunity to notify you that I am being harassed and feel very oppressed by you. I feel your recent actions are in direct retaliation for a meeting I recently had with Commissioner Justin Rodriguez to discuss issues and concerns that have been ongoing in this department for many years. Unfortunately, I have no confidence in our Human Resources Department since they report directly to you so, I also reached out directly to David Smith and will be reaching out to other Commissioners as well. Thus, I felt it prudent to copy them on this email.

Your actions have sent a clear message to me and my coworkers that you are angry with me for some reason and you are on a mission to slowly remove my job duties in order to justify the deletion of my position or you are simply trying to bully and harass me into leaving. Both of which I have seen you do and heard you gloat about on numerous occasions over the past several years.

I have worked with you and for you for almost 16 years Tina. I once considered you a friend and a mentor. Unfortunately, that changed several years ago. When your position changed, so did your disposition. Instead of using your position to lead this department and promote professionalism, I have watched as you use your position to bully and harass staff. I have seen and been a victim of your vindictiveness and retaliation. I have been

cursed at, ignored, and now my reputation with this and other departments is being tarnished. All without merit.

I believe much of this began when I made a personal decision to stop participating in emails and group texts that demean or degraded others. My age may also be a factor. I have suffered some personal tragedy and serious illnesses over the past few years that forced me to take a large amount of sick leave. You have asked me to close doors because it irritates you having to listen to some of us openly speaking Spanish so; perhaps that fact that I am married to a Hispanic and often speak fluently also irritates you. Alternatively, it could just simply be something you personally do not like about me. Whatever the reasoning, it is all extremely unprofessional, quite exhausting, and I would appreciate it if this behavior would cease.

Over the years, I have proven myself as an asset to this department and that is reflected in my performance reviews. I have numerous emails to demonstrate that I was once considered a valued member of this team. My opinions and work product were valued and respected. I would like the opportunity to continue my career with the county until such a time, as I am ready to retire. I would like to work in a non-hostile environment. I would like to know that I can come to work daily and not feel that someone is conspiring to affect my career path.

I have been employed by Bexar County for almost 23 years. Over 15 of those years have been in this department. I have never had any disciplinary action against me. On the contrary, I have been promoted and commended for my hard work.

As I mentioned to you, I have diligently looked, and will continue to seek employment in another capacity within the county as I still have much to offer. I am simply asking to be treated with respect. Your recent behavior has demonstrated to me that you are on a mission to release me from my job. Therefore, I am compelled to reach out to your superiors for their help.

Respectfully

Nancy A. McClure-Soto



Date:      May 1, 2020
To:        Nancy McClure-Soto, Administrative Coordinator
From:      David L. Smith, County Manager
Subject:   Kelmar Global Report

As you are aware, Kelmar Global ("Kelmar") was retained to conduct an independent investigation of your allegations against Ms. Tina Smith-Dean, Assistant County Manager. Kelmar conducted a thorough investigation which included numerous interviews with you and several other current/former employees identified as having relevant knowledge. The final report, as well as a legal review by the Criminal District Attorney's Office-Civil Division, has been provided to my office.

The legal review concluded that Ms. Smith-Dean was within her authority as a manager to remove or amend job responsibilities for those individuals within her chain of command. Further, based on its review of the Kelmar report, the District Attorney's Office has determined that no alleged action of Ms. Smith-Dean rose to the level of unlawful conduct and that any allegations of discrimination could not be sustained. I now consider this matter closed and no further action is necessary at this time.

Please contact Veronica Guevara at veronica.guevara@bexar.org upon email receipt of this memorandum regarding your report to work schedule.

Office of the County Manager
101 W. Nueva, Suite 1024
San Antonio, TX 78205
Phone (210) 335-0179
Fax (210) 335-2683
www.bexar.org

EXHIBIT C                              BC 000121



Notice of Disciplinary Action – Written Reprimand

Date: Friday, February 07, 2020
To: Nancy McClure-Soto, Administrative Services Coordinator
From: Veronica Guevara, Risk Management Coordinator
Re: Notice of Disciplinary Action, Written Reprimand

Under the provision of Bexar County Civil Service Commission Rules and Regulations, Policy 7.6.10 Disciplinary Actions, you are hereby advised that this is a Written Reprimand. The Written Reprimand is being delivered to you for the following violations of the policy:

    t.   Conduct which is detrimental to or has an adverse effect on the office or department.

The specific reasons for this action:

In the past several days, you have sent a number of lengthy emails to various public officials throughout Bexar County documenting behaviors you believe to be retaliatory. You have directly contacted other Executive Directors within Bexar County and initiated inappropriate communications challenging the performance of their assigned duties. Specifically, you engaged the Facilities Management Executive Director over the control and direction of facility and maintenance issues within certain facilities in Bexar County in an insubordinate manner (for example, communicating in "all caps"). On Friday, January 31, 2020 at 1pm, you sent an email to me (attached) with a carbon copy to David Smith, the County Manager, Joe Gonzales, the District Attorney, and two Commissioners, Tommy Calvert and Justin Rodriguez.

Instead of being respectful and giving me the courtesy of discussing your concerns directly with me as your supervisor, you instead sent your complaints office-wide. Those concerns should have been communicated directly to me so that I might have the opportunity to address them with you directly. Thereafter, if you felt that your concerns were not addressed, you could bring them to the attention of senior management as necessary. Additionally, you have alleged that I am retaliating against you for the first time in an email for something though I am not aware of anything I have done to you which would constitute retaliation. You spent a considerable amount of work time to write the attached emails which contain inaccurate information. On Friday, January 31, 2020, I sent you an email to offer assistance without any pretext or motive. You then took my offer of assistance and disingenuously describe it as retaliation without any support. This type of behavior negatively impacts your ability to productively interact with other employees and strains the work environment.

I would remind you that you have been temporarily placed under my supervision as a result of complaints you previously made against your supervisor. You were placed under my supervision during the pendency of the workplace investigation which is currently still ongoing. Bexar County takes all employee complaints seriously and we promote a workplace which is free from unlawful behavior and any form of retaliation. As a complainant, you have the right to be free from unlawful behavior and retaliation. However, you may not engage in inappropriate communications with your superiors or other Bexar County employees. The attached emails reflect a less than professional approach to interactions with other Bexar County colleagues and are not indicative of the types of communications that promote cooperation and interoffice harmony. In the future, if you have a concern regarding your employment, please permit me the opportunity to address it with you directly prior to sending out mass emails to individuals who are not within your supervisory chain.

This written reprimand cannot be appealed, but you have the right to respond to this disciplinary action in writing to me in 10 days.

_Nancy Soto_    2/7/20     _V. G._     2/7/2020
Nancy McClure-Soto     Date        Veronica Guevara     Date
Administrative Services Coordinator        Risk Management Coordinator

cc: Bexar County Civil Service Commission
en: Email 01/31/2020, 1:00pm, from Nancy Soto, to Veronica Guevara, cc: David Smith, Justin Rodriguez, Tommy Calvert, Joe Gonzales

_EEOC complaint filed on 1/12/20._
_I feel this is and the form of_
_retaliation. Nancy Soto 2/7/20_

**EXHIBIT D**     BC 000122

## Guevara, Veronica

| | |
|---|---|
| **From:** | McCabe, Seth |
| **Sent:** | Friday, January 31, 2020 1:06 PM |
| **To:** | Guevara, Veronica |
| **Subject:** | FW: 9th Floor-PET-Front Desk Coverage 01/31/20 |
| **Attachments:** | Front Desk Coverage |

**Importance:**        High

Since you are referenced.

From: Soto, Nancy <nsoto@bexar.org>
Sent: Friday, January 31, 2020 12:02 PM
To: McCabe, Seth <smccabe@bexar.org>
Cc: Smith, David <David.Smith@bexar.org>; Rodriguez, Justin <justin.rodriguez@bexar.org>; Calvert, Tommy
<tc@bexar.org>; Millan, Alexandria <alexandria.millan@bexar.org>; Gonzales, Joe D. <Gonzales.Joe@bexar.org>
Subject: 9th Floor-PET-Front Desk Coverage 01/31/20
Importance: High

Seth McCabe,

As you know, I am covering the 9th floor front desk today, Friday, January 31, 2020. My Office
Assistant Olivia Espinosa is out sick. It has been common practice since we moved into this
building, to ask one of my coworkers to "listen" or "cover" the front desk area when I need to
run across the hall to use the restroom. To my knowledge, this has not changed. This morning
around 10:30 am, I asked my coworker, Alexandria Millan, to cover for me so I could run
across the hall. I was not gone more than 3-4 minutes. I was just informed, by Alexandria
Millan, that after she returned to her office, she was approached by you. She said you told
her "you do not need to sit up at the front because you do not report to Nancy". She said she
informed you that she was only watching the desk so I could go to the restroom.

Yesterday, January 30, 2020, I was in a meeting. At 12:00, my Office Assistant, Olivia Espinosa,
wanted to go to lunch. She told me she was approached by Veronica Guevara and by Tina
Smith-Dean, who both offered to sit at the desk and cover for her until I got out of my meeting.
When I came out of my meeting at 12:06, Tina Smith-Dean, Assistant County Manager, was
sitting at the front desk providing coverage for Olivia Espinosa. I hardly think providing coverage
for the front desk rises to the level of the Assistant County Manager, but either way, coverage
was provided.

Subsequently, I received the attached email from Veronica Guevara, my temporarily
assigned supervisor. For the first time ever, she is offering me coverage for the front desk
even though she is in a meeting until 2:00 pm today. She also stated that I would need to
notify the supervisor prior to asking for coverage for the front desk, which would naturally
include restroom breaks. Since you are the supervisor of everyone on this floor, except me
and Pearl Jauregui , are you suggesting that I should be asking your permission each time I
need to go to the restroom? Is there a policy I am unaware of that employees need to request
permission to go to the restroom, or does this only apply to me?

1

**BC 000123**

I have been covering the 9th floor front desk since we moved into this building. I routinely skip my lunches or eat at the front desk in order to avoid asking anyone for coverage. Everyone in this department, including Veronica Guevara, Tina Smith-Dean, and you, Seth McCabe, are aware of that and have never offered my any type of assistance or coverage.

It is quite unbelievable I am being forced to send out an email for such a petty issue but, since I am being presented with another form of retaliation, I am obligated to document it.

Clearly, this is simply another petty form of retaliation since I sent out an email to Tina Smith-Dean on December 5, 2019. Although Tina Smith-Dean stated that " the concerns expressed in your email are taken seriously and will not negatively impact your job or the relationships within our work environment", as expected, her response has proven to be false. At this point, I can't help but wonder when one of the stakeholders, which are being copied on my numerous emails, is finally going to step in and put a stop to this constant retaliation and discrimination.

I would appreciate clarification from County Manager, Mr. David Smith and/or District Attorney, Mr. Joe Gonzales, to let me know exactly what the County's Policy is on asking permission before being allowed to use the restroom.

cc. EEOC/Continued Retaliation/Discrimination

Nancy A. Soto
Administrative Coordinator
101 W. Nueva Suite 901
San Antonio, Tx 78205

(210) 335-2405
(210) 335-0555

BC 000124

| | |
|---|---|
| **From:** | Soto, Nancy |
| **Sent:** | Friday, January 31, 2020 1:00 PM |
| **To:** | Guevara, Veronica |
| **Cc:** | Smith, David; Rodriguez, Justin; Calvert, Tommy; Gonzales, Joe D. |
| **Subject:** | Front Desk Coverage-01-31-20 #2 |

Good afternoon Veronica,

It is 12:20 pm and I am sitting at the front desk eating my lunch as I do every time my Office Assistant is out for the day. I find it quite odd that you would, out of the blue, offer to provide me your assistance with coverage since you have seen me repeatedly eat lunch at the front desk since you began working in this department. I do find it quite coincidental however; that your email coincides with a conversation Seth McCabe just had with Alexandria Millan concerning her watching the front desk while I ran to the restroom. In his conversation with Alexandria, he stated " you do not need to sit at the front desk, you do not report to Nancy". Even though she was only covering, so I could go to the restroom.

I am certain you are aware of this because I have asked almost everyone in this department, at one time or another, to "cover while I step across the hall". You may have even covered for me once or twice. It is common practice and I am certain that Olivia Esparza, has done the same when I am out of the office. She has never mentioned to me that you or anyone has brought it to her attention that she should be asking a supervisor before doing so. As women, sometimes, there simply is not enough time to request permission before using the restroom.

Clearly, you are aware of the issues which are taking place in this office concerning myself and Assistant County Manager, Tina Smith-Dean. It is the very reason you were directed to be my temporary supervisor. Your direction to me to "make sure the supervisor is notified as a courtesy", would of course include restroom breaks. This would mean I would be required to contact Mr. Seth McCabe each time I need to use the restroom since everyone on the 9th floor reports directly to Seth, except me and Pearl. Unless, there is a county policy I am unaware of, this clearly is a violation of my rights as there is not a single other person, in particular, any woman, in this department which is required to do that.

I should note that it is now 12:53. You, along with your guests, had lunch delivered and have had an opportunity to eat your lunch in the conference room. You have passed by me on two (2) occasions while I am eating my lunch at the front desk and not offered to sit here and provide any sort of coverage.

This is simply another form of retaliation, being directed at me, since I sent out an email to Assistant County Manager, Tina M. Smith-Dean. As such, I feel compelled to document it for the investigation which is currently taking place and copy all stakeholders on this email.

Respectfully,

Nancy A. Soto
Administrative Coordinator
101 W. Nueva Suite 901
San Antonio, Tx 78205

(210) 335-2405
(210) 335-0555

1

BC 000125

**From:** Guevara, Veronica <veronica.guevara@bexar.org>
**Sent:** Friday, January 31, 2020 11:08 AM
**To:** Soto, Nancy <nsoto@bexar.org>
**Subject:** Front Desk Coverage

Good morning, Nancy:

I noticed that Olivia is not in today. If you need help covering the front desk by folks on the floor, please let me know or make sure his/her supervisor is notified or asked as a courtesy. I'm tied up until about 2 pm but am happy to cover up front as well.

Thank you,

Veronica Guevara
Bexar County
Risk Management Coordinator
Phone: 210-335-2559
Email: veronica.guevara@bexar.org

BC 000126

| From: | Soto, Nancy |
|---|---|
| Sent: | Monday, January 27, 2020 12:36 PM |
| To: | Curry, Dan |
| Cc: | Smith, David; Guevara, Veronica; Torralva, Jose; Ramirez, Hector; Rodriguez, Justin; Calvert, Tommy; Caballero, Francesca; Putney, Amy |
| Subject: | 2nd Response- Resource Management Facility Needs |
| Importance: | High |

Good afternoon Dan,

My immediate supervisor, at this time, is Veronica Guevara. I have copied her on this email. As I mentioned in my email below, our internal office process is to have all Facility related issues funneled through our Administrative Team, of which I am responsible for. To my knowledge, this has not changed. Again, we are not adding any additional level of bureaucracy to your operation. Our internal process has never created any issues in the scheduling of any services, in fact, it has cut down on the number of people directly involved.

Up until your email, which I received on Friday, January 24, 2020, this has *NEVER* been an issue or even questioned. As you know, I have worked directly with the Facilities Staff for years and years. I am extremely confused as to why this would be an issue for you at this time as I have also worked directly with you Dan. Most recently on the renovations of the current County Gym Facility where I was directed by Tina Smith-Dean to meet regularly with you and your staff regarding the renovations which needed to be done prior to the opening. I have also worked directly with you to coordinate the yearly Employee Health Fair. This sudden concern about the way we have been operating internally for so many years is quite perplexing.

I would be happy to meet and discuss any issues which your department is having concerning our internal process as I am totally unaware of anything that has changed which has hindered your staff from conducting their work within our department.

Tina Smith-Dean would normally be the individual to make this type of major change concerning one of our internal policies and to one of my long standing job responsibilities. To my knowledge, she is not supposed to be making any decisions concerning my job duties. Veronica Guevara was only assigned as my temporary supervisor on December 5, 2019, pending the outcome of other issues which are currently being addressed within our department and therefore, she has limited knowledge of this issue and of my long standing job responsibilities. I believe a change, of this magnitude, which will change a long standing internal office policy and remove of one of my larger job responsibilities rises to a higher. Therefore; as I mentioned in my first email response to you, I will await further instruction from County Manager, Mr. David Smith, to determine if he wants to remove this job duty from me and change the way we have been operating since I was hired in this department.

I have copied other stakeholders on this email as a means to document a much larger issue.

Respectfully,

1

Nancy A. Soto
Administrative Coordinator
101 W. Nueva  Suite 901
San Antonio, Tx 78205



my file/job duties/retaliation

---

**From:** Curry, Dan <dcurry@bexar.org>
**Sent:** Monday, January 27, 2020 11:20 AM
**To:** Soto, Nancy <nsoto@bexar.org>
**Subject:** RE: 01-24-20- Resource Management Facility Needs

Nancy,
Who is your immediate supervisor, I will take up this issue with them.


Thank You,

**Dan Curry**  AIA,FMP
Director
Bexar County Facilities Management

---

**From:** Soto, Nancy
**Sent:** Friday, January 24, 2020 5:37 PM
**To:** Curry, Dan
**Cc:** Smith, David; Torralva, Jose; Ramirez, Hector
**Subject:** 01-24-20- Resource Management Facility Needs
**Importance:** High

Dan,

Thank you for your email. I understand your concerns. It has been my job responsibility since I started in this department to oversee the day to day operations of our departments  housekeeping, custodial services, repairs, etc.  and to be the direct contact for our offices. This includes our office on  the 9th floor of the Paul Elizondo Tower, the Human Resources Department, the Employee Clinic, and also the County Gym.  This was designed to cut down on the number of people who are contacting your department to open work orders and to streamline the flow of work.  To my knowledge this has not changed.  I don't believe this process has ever created any issues in the scheduling of any services, in fact, it has cut down on the number of people directly involved.

The clinic is a unique area.  As you know, we do not have access to their  narcotics area.  It has been a long standing practice for Facilities to contact me prior to scheduling any services which would require "after hours" work.  I coordinate with UHS and Human Resources to get approval for Clinic Staff to stay after their normal scheduled hours and also to have the overtime salary  approved.  I have also made it a point to maintain a close relationship with the County's Housekeeping Services so I can address our department's needs  without going directly through your department for every small issue.  In the past, I was formerly introduced to the account managers which made this much easier.  I was not given that same courtesy when this new company was hired.

2

BC 000128

I took it upon myself to meet and introduce myself to Mr. Guerra shortly after 4M took over the housekeeping contract. I did a walk-through of the Employee Clinic area to explain the specific needs of the clinic. I did this in anticipation of the floors at the clinic being cleaned to ensure there would be no confusion or delays.

My intent is not to add an additional level of bureaucracy to your operation as I a fully aware of the need for you and your team to be able to conduct your business without delay. I have always worked directly with your staff to facilitate their schedules along with the needs of this department. I am not aware of any time when your staff has had to wait or delay a job because of my availability. On the contrary, I have provided your staff with my personal cell number to be able to reach me at any time as to avoid any delays.

Since Tina Smith-Dean is no longer in my chain of command, I have copied Mr. David Smith, County Manager, on this email. It was David, through our Operations Manager Mr. John Diaz, who gave me this responsibility when I started working for this department almost 16 years ago. Until today, it has NEVER been a problem and I have not been made aware that anything has changed. I will await further instruction from Mr. Smith to determine if he wants to remove this job duty from me and change the way we have been operating since I was hired in this department. Until then, I would respectfully request that our normal process be allowed to continue as I am not aware of any issues which have presented a problem for the Facilities Staff. I am happy to discuss anything I can do to make this process smoother if needed.

Thank you for your understanding
Respectfully,

Nancy A. Soto
Administrative Coordinator
101 W. Nueva Suite 901
San Antonio, Tx 78205



From: Curry, Dan <dcurry@bexar.org>
Sent: Friday, January 24, 2020 4:52 PM
To: Soto, Nancy <nsoto@bexar.org>
Cc: Torralva, Jose <jose.torralva@bexar.org>; Ramirez, Hector <hramirez@bexar.org>; Smith-Dean, Tina <Tina.Smith@bexar.org>
Subject: FW: Report

Nancy,
I appreciate your desire to help coordinate day to day operations within several spaces in our buildings. However, we simply do not have the staff, time, or resources to add an additional level of bureaucracy to our operation. I cannot have my staff rely on the schedule or availability of a single person to do their job. I am instructing my team to continue to coordinate schedules directly with the users in County buildings for events like this; floor care, custodial services, repairs, power shut downs, etc. My team is responsible for maintenance and facility issues at ALL buildings and spaces, that is why we are here. As always if you need assistance you can call x52608 and submit a work order.

Thank you in advance for your understanding.

Thank You,

BC 000129

Dan Curry AIA,FMP
Director
Bexar County Facilities Management

---

**From:** Soto, Nancy
**Sent:** Wednesday, January 22, 2020 9:15 AM
**To:** Garcia, Ponch
**Cc:** Ramirez, Hector; Torralva, Jose
**Subject:** RE: Report

Good Morning Ponch,

Since the Employee Clinic opened, it has been my job responsibility to oversee the facility and maintenance issues for the Clinic. I thought you and I had discussed in the past but perhaps I am mistaken. I also had a meeting with Mr. Guerra over a week ago. As I was not formerly introduced to him when his company originally took over the custodial contract, I thought it would be prudent to introduce myself and provide him with my contact information. We also did a walk-through of the Employee Clinic. I introduced him to the Clinic staff and we discussed our expectations. I informed him that I am responsible for the facility maintenance issues for our Employee Clinic. As such, he would need to coordinate directly with me anytime the clinic floors needed to be cleaned. It is mandatory that staff personnel from UHS be present at all times due to the narcotics which are stored in the clinic. In addition, I need to make sure we have approval from UHS for staff to stay late. In additional, the salary of that individual is approved prior to scheduling anything after hours. I also agree that the clinic floors are in need of cleaning along with a few other items I discussed with Mr. Guerra.

Mr. Guerra went directly to the clinic staff and scheduled the cleaning of the floors. I only found out about it yesterday at the end of the day. I did remind clinic staff that all requests such as these need to come to me before these types of decisions are made as it is my job responsibility.

Today, I am trying to confirm with UHS the approval of their staff to work after hours to facilitate the cleaning of the floors and I will also make sure the overtime payment of the employee is approved. As soon as I am able to confirm, I will Hector.

I am also responsible for the maintenance and facility issues over in our Human Resources Department. Staff has been instructed to funnel all requests directly through me. I will reach out directly to Ana Bernal to determine exactly what issues Human Resources may be having in regards to the cleaning staff so I can address them also.

I would appreciate it if you would keep me in the loop on all facility/maintenance issues related to the Resource Management Department (9th Floor-PET, Human Resources, & Employee Clinic).

Thank you for reaching out to me Ponch and have a great day

*Nancy A. Soto*
*Administrative Coordinator*
*101 W. Nueva Ste. 901*
*San Antonio, Tx 78205*


nsoto@bexar.org

4

BC 000130

From: Garcia, Ponch <bponchgarcia@bexar.org>
Sent: Wednesday, January 22, 2020 8:51 AM
To: Soto, Nancy <nsoto@bexar.org>
Cc: Ramirez, Hector <hramirez@bexar.org>; Torralva, Jose <jose.torralva@bexar.org>
Subject: FW: Report

Nancy,

A walk-thru of the entire building was conducted with the 4M Contract Manager last Thursday. I took the opportunity to introduce the Contract Manager to Ana Bernal, HR Manager. 4M will be working towards addressing the some of the issues presented by Ana in regard to cleaning services and staff.

During the walk-thru - 4M noted that the floors required attention and I agree. The floors look horrible.

I asked 4M to coordinate with the Maintenance Team to schedule the cleaning of the floors at the earliest opportunity.

Please let me know if you have any questions.

Thank you

Ponch


*Boldemar "Ponch" Garcia, MBA, FMP*
*Contract & Compliance Manager*
*Bexar County Facilities Management Department*
*Office:* █████████████
*Cell:* █████████████

CONFIDENTIALITY NOTICE: This electronic transmission and any attachments constitute confidential information which is intended only for the named recipient(s) and may be legally privileged. If you have received this communication in error, please contact the sender below immediately. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication by anyone other than the named recipient(s) is strictly prohibited.

From: Ramirez, Hector <hramirez@bexar.org>
Sent: Tuesday, January 21, 2020 3:36 PM
To: Soto, Nancy <nsoto@bexar.org>
Cc: Gutierrez, Carmen <cgutierrez@bexar.org>
Subject: FW: Report

Nancy,
Making sure you were informed of this proposed schedule to strip and wax in the clinic.


Hector E Ramirez
Supervisor
Bexar County Facilities Management


5

BC 000131

<u>hramirez@bexar.org</u>

**From:** Garcia, Ponch
**Sent:** Tuesday, January 21, 2020 2:26 PM
**To:** 'Paul Guerra'
**Cc:** Ramirez, Hector; Gutierrez, Carmen; Garza, Alexandria
**Subject:** RE: Report

Please reach out to maintenance team so they can inform stakeholders.

Thank you

Ponch

**From:** Paul Guerra [mailto:pguerra@4-m.com]
**Sent:** Tuesday, January 21, 2020 2:10 PM
**To:** Garcia, Ponch
**Subject:** Report

Ponch,

Forgot to put the clinic, the floor is scheduled to be stripped and waxed this Friday 01/24/2020.

**Have a Safe and Great Day!**

Paul Guerra
*Account Manager*





BC 000132



February 26, 2020

To: Nancy Soto

Subject: Notice of Investigative Administrative Leave

Effective February 26, 2020, you are being placed on Investigative Administrative Leave with pay for a period of up to thirty (30) business days pursuant to Bexar County Human Resources Policy 7.4.04 Administrative Leave and Bexar County Civil Service Commission Rules, Policy 7.6.11 Investigative Administrative Leave.

During the period you are on Investigative Administrative Leave you are required to call in each morning at 8:30 a.m. to Veronica Guevara ▉▉▉▉▉▉▉▉▉ she is unavailable please leave a message. During this period you must be available for telephone communication between the hours of 8:00 a.m. through 5:00 p.m., Monday through Friday. In addition, you must be available to report, in person, to Administration if necessary to participate in the investigation or respond to work inquiries. Being unresponsive or unavailable during your regularly scheduled hours may result in additional disciplinary action up to and including termination. You are not permitted to work a second job during your regular schedule while you are on Investigative Leave pursuant to Bexar County Civil Service Commission Rule 7.6.11, Sec. (e).

Be advised that until further notice, access to all areas of the Bexar County Resource Management Office is strictly prohibited. Access to the building for administrative purposes must be authorized in advance by contacting Veronica Guevara.

Sincerely,

_____  2.26.2020
Veronica Guevara            Date
Risk Management Coordinator

cc:    Bexar County Civil Service Commission

I acknowledge receipt of this document:

_____   2/26/20
Employee Signature          Date Received

1

**EXHIBIT E**                    BC 000133



## EXHIBIT A:

## EMPLOYEE'S DUTY TO PRESERVE INFORMATION

Under the Texas Public Information Act, as a Bexar County employee, you are the custodian of any records related to your work with Bexar County or any information that constitutes the transaction of official business. You have a legal duty to preserve that information. This includes information contained in any personal electronic devices such as cell phones, tablets, or personal computers, which are subject to the Act if those devices contain work-related information. This duty to preserve covers communication such as texts, tweets, emails, notes, and pictures.

Through this notice you are directed to maintain all videos, photographs, and records created by you or in your possession which constitutes the transaction of official business or in any way relates to your employment with Bexar County. DOCUMENTATION DESTRUCTION: IT IS REQUESTED THAT ALL DOCUMENTS, VIDEOS, PHOTOGRAPHS, AND/OR OTHER DATA COMPLIATIONS WHICH MIGHT IMPACT THE SUBJECT MATTER OF THIS INVESTIGATION BE PRESEVED AND THAT ANY ONGOING PROCESS OF DOCUMENT DESTRUCTION INVOLVING SUCH DOCUMENTATION CEASE. If any document, image, or data required herein has previously been destroyed, you are requested to describe in detail the circumstances of and reasons for such destruction and to produce all documents which relate to either the circumstances or the reasons for such destruction.

Sincerely,

_Veronica Guevara_     2.26.2020
Veronica Guevara         Date
Risk Management Coordinator

I acknowledge receipt of this document:

_Nancy A. M. Olin Sil_     2/26/20
Employee Signature         Date Received

1

BC 000134



| | |
|---|---|
| **RULE NUMBER:** | 7.6.11 |
| **TITLE:** | INVESTIGATIVE ADMINISTRATIVE LEAVE |
| **EFFECTIVE DATE:** | March 16, 2007 |
| **REVISED:** | Adopted May 24, 2012, Effective June 8, 2012
Adopted September 17, 2015, Effective September 18, 2015 |

## SECTION 1. GENERALLY

a. <u>Defined.</u> Investigative Administrative Leave is the paid, temporary release from duty to permit the investigation of a violation of office or department policies or Civil Service Rules.

b. <u>Mandatory leave.</u> The office or department shall place an employee on Investigative Administrative Leave when the disciplinary action arises from an incident which constitutes a crime against the County.

c. <u>Discretionary leave.</u> The office or department may place an employee on Investigative Administrative Leave if it is in the best interest of the County and there is no lateral position to which the employee may be reassigned.

## SECTION 2. PROCEDURES

a. <u>Written reasons for leave.</u> The employee shall be served with a written memo which informs the employee they are being placed on Investigative Administrative Leave and must be available during their normal working hours to participate in the investigation or respond to work inquiries.

b. <u>Unavailability of employee on leave.</u> If the employee is nonresponsive or unavailable during their regularly scheduled hours, the employee may face additional disciplinary action.

c. <u>Second jobs not allowed while on leave.</u> The employee is not allowed to work a second job during their regularly scheduled hours while on Investigative Administrative Leave.

d. <u>Contact information.</u> The employee must provide current address and phone contact information.

e. <u>Leave.</u> The regular period of leave will be no longer than thirty (30) business days.

1

**EXHIBIT F**

BC 000135

f.      Return to work. Upon completion of the investigation, the employee may be returned to work without penalty and/or disciplinary action may be taken.

BC 000136

Nancy,

The Investigation continues as I mentioned.

Here are the questions I was going to ask you.

You will have until 9:00 a.m. tomorrow, Friday, April 17, 2020 to respond.

1. Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department and Work Location) How long have you been working for the County?

2. On the morning of Wednesday, February 26, 2020, what actions did you take between your arrival at the office and approximately 9:00 a.m.?

3. Did you take any actions on the morning of February 26 that were outside your normal morning routine at the office? If so, what were those actions?

4. On the morning of February 26, did anyone react to what he/she perceived as you recording (film/photo) him/her with your personal mobile device? If so, what happened?

5. If you were recording (film/photo), do you think any persons may have been in those recordings?

6. Have you made other recordings of colleagues within the office setting? If yes, when/where?

7. Did you have a reason for the recording (film/photo)? If yes, then what is that reason?

8. Is anyone else aware of your reason for the recording?

9. Have you been tasked with similar reasons before?

Respectfully,

**Ana M. Bernal**
HR-HRIS Manager
Bexar Co. Human Resources

**EXHIBIT G**                    BC 000137

Ana,

Again, I am not aware of any incident which occurred. I cannot possibly provide "my side of the story" if I don't know what you are referring to. I went to work as normal. At noon, I was given a letter by Veronica Guevara, placed on "Investigative Administrative Leave", and walked out of the building even though I did not violate any office or department policies or any Civil Service Rules. I was not provided any details or explanation as to why. I truly can't provide any additional information until I understand exactly what I am being accused of. At this time, I am requesting the full details of this investigation so I can provide them to my attorney.

Thank you for your time.

Respectfully,

Nancy Soto

**From:** Bernal, Ana
**Sent:** Thursday, April 16, 2020 9:22 AM
**To:** Soto, Nancy <nsoto@bexar.org>
**Subject:** RE: February 26, 2020

Nancy,
We want to give you the opportunity to give your side of the story.
If you don't want to participate in the interview would you like to submit a written state as to what occurred that day prior to you being put on Investigative Administrative Leave?

Respectfully,
Ana Bernal

**From:** Soto, Nancy
**Sent:** Thursday, April 16, 2020 9:04 AM
**To:** Bernal, Ana <abernal@bexar.org>
**Subject:** RE: February 26, 2020

Ana,

As I explained below, I am unaware of any incident which occurred on February 26, 2020. I was given a letter by Veronica Guevara which stated I was being placed on "Investigative Administrative Leave" for a period of 30 days and then I was walked out of the building. I have no information on the details of this investigation even though I have repeatedly asked. I assumed this investigative was completed since I was returned to work and the "Investigative Administrative Leave" was not extended. Please provide me with the details of the actual incident or complaint which you believe

BC 000138

to have occurred so I can discuss it with my attorney and we can determine the best course of action.

Respectfully,

Nancy Soto

From: Bernal, Ana
Sent: Thursday, April 16, 2020 8:52 AM
To: Soto, Nancy <nsoto@bexar.org>
Subject: RE: February 26, 2020

This interview is part of the investigation and you are being given the opportunity to respond to what occurred on Wednesday, February 26, 2020.

From: Bernal, Ana
Sent: Thursday, April 16, 2020 8:50 AM
To: Soto, Nancy <nsoto@bexar.org>
Subject: RE: February 26, 2020

Nancy,
This interview is your opportunity to walk me through that morning, perhaps something will come up.

Ana

From: Soto, Nancy
Sent: Thursday, April 16, 2020 8:44 AM
To: Bernal, Ana <abernal@bexar.org>
Subject: RE: February 26, 2020

Good Morning Ana,

Thank you for your response. I am unaware of any incident which occurred on February 26, 2020. On that date, I was given a letter by Veronica Guevara which stated I was being placed on "Investigative Administrative Leave" for a period of 30 days and then I was walked out of the building. I asked Veronica several times why I was being placed on "Investigative Administrative Leave". She stated she did not have any information to provide me. She only said that an investigation was being conducted that involved me. I asked if it was in reference to the Kelmar Global Investigation and she said it did not. She said some "complaints" had made against me, that there would be an investigation conducted. Until the investigation was completed, I would be on "Investigative Administrative Leave".

On April 8, 2020, I received a phone call from Veronica Guevara, which was followed up by an email,

to inform me that I was no longer on "Investigative Administrative Leave". I was being brought back to work again. Again, I asked why she had put me on "Investigative Administrative Leave", and again she said she had no information to provide me. I was returned to work.

I am seeking clarification and details as to exactly what this interview that you are asking me to participate in is regarding.

Thank you

Nancy Soto

**From:** Bernal, Ana
**Sent:** Thursday, April 16, 2020 8:04 AM
**To:** Soto, Nancy <nsoto@bexar.org>
**Subject:** RE: February 26, 2020

Nancy,
The interview today is in reference to the incident that occurred on Wednesday, February 26, 2020.

**From:** Soto, Nancy
**Sent:** Wednesday, April 15, 2020 5:05 PM
**To:** Bernal, Ana <abernal@bexar.org>
**Subject:** RE: February 26, 2020

Ana,

Thank you for your email. Could you please provide clarification on what investigation this is reference to. What investigation am I being interviewed for and what charges is this concerning?

Thank you
Respectfully,

Nancy Soto

**From:** Bernal, Ana
**Sent:** Wednesday, April 15, 2020 1:10 PM
**To:** Soto, Nancy <nsoto@bexar.org>
**Subject:** February 26, 2020
**Importance:** High

Nancy,

At 9:00 a.m. Thursday, April 16, 2020 via WebEx you have an opportunity to speak with myself, Ana

Bernal, HR-HRIS Manager who is conducting interviews on behalf of the Budget Office, and Management and Finance. You can expect to meet with myself, Ana Bernal and my colleague Alejandro Fabela, Sr. HR Analyst via WebEx.

Your supervisor has been informed of your absence on Thursday between the hours of 9:00 a.m. and 10:00 a.m.

**Ana M. Bernal**
HR-HRIS Manager
Bexar Co. Human Resources



### Investigation of Accusations of Harassment and Video Recording

Date: April 28, 2020
To: Manuel Gonzalez, Human Resources Director, Bexar County
Re: Workplace Incident — Budget Office, and Management and Finance Department

Prepared by: Ana Bernal, HR-HRIS Manager

On Wednesday, March 11, 2020 an investigation was begun involving a series of complaints regarding Ms. Nancy McClure-Soto, Administrative Services Coordinator for the Resource Management Department of Bexar County.

#### The Complaints

In the complaints, colleagues of Ms. Nancy McClure-Soto allege:

1) Recording photo/video of coworkers
2) Intimidation
3) Causing dissention and discourse
4) Misuse of County resources
5) Disrupting the work environment

#### Exhibits

1) Statement from Ms. Sylvia Diaz, Data Analyst - Compliance
2) Statement from Ms. Tanya Gaitan, Budget Manager
3) Statement from Ms. Olivia Espinosa, Office Assistant IV
4) Statement from Mr. Manuel Leal, Government Relations Manager
5) Statement from Ms. Jasmine Leon, Analyst Budget
6) Text from Mr. Blake Meneley, Sr. Analyst Finance
7) Interview with Ms. Sylvia Diaz, Data Analyst - Compliance
8) Interview with Ms. Olivia Espinosa, Office Assistant IV
9) Interview with Ms. Tanya Gaitan, Budget Manager
10) Interview with Mr. Manuel Leal, Government Relations Manager
11) Interview with Ms. Jasmine Leon, Budget Analyst
12) Interview with Mr. Blake Meneley, Sr. Analyst Finance
13) Written Reprimand to Ms. Nancy McClure-Soto, dated Friday, February 7, 2020
14) Video of reception foyer of Ms. Nancy Soto, Ms. Olivia Espinosa, and Ms. Jasmine Leon
15) Bexar County Human Resources, Employee Conduct, Confidentiality, Policy 7.5.04

#### Investigation

Wednesday, March 11, 2020, written statements were shared with Human Resources for investigation. Following consultation with legal counsel, Human Resources assigned Investigator Ms. Ana Bernal, Human Resources Manager with scribe Mr. Alejandro Fabela, Sr. Human Resources Analyst. Interviews occurred the week of April 6th, 2020.

EXHIBIT H          BC 000142



### Ms. Nancy McClure-Soto Interview

Initially an interview was planned for 9:00 a.m., Thursday, April 16, 2020 via WebEx video conference with Ms. Nancy McClure-Soto. Questions were developed and agreed to by investigator and counsel. Ms. McClure-Soto was informed by Human Resources, by phone, and in writing, of the interview. Following two emails from Ms. McClure-Soto requesting details on the investigation and Ms. McClure-Soto's absence from the WebEx meeting, the investigator was called at 4:00 p.m. by Mr. Jason Jakob, attorney representing Ms. McClure-Soto. At 4:45 p.m., Mr. Jakob emailed Ms. Ana Bernal, Bexar County Counsel, Ms. Kristin Bloodworth of the District Attorney Civil Division responded Friday, April 17, 2020 at 3:06 p.m. to Mr. Jakob including questions planned for interview. As of the close of this report, Tuesday, April 28, 2020, no response has been received from Ms. McClure-Soto or her representation.

### Interviews

Ms. Sylvia Diaz, Data Analyst - Compliance shared she has felt uncomfortable for weeks around Ms. McClure-Soto, who made obvious her recording of colleagues including one incident when she told Ms. Alexandria Millan, Budget Analyst, "start recording, here they come." Ms. McClure-Soto has approached Ms. Diaz, "trying to coerce me to go against management."[1]

Ms. Tanya Gaitan, Budget Manager shared in a written statement events since February 6, 2020 where Ms. McClure-Soto was openly discussing with Ms. Alexandria Millan, Budget Analyst, a confidential matter. Ms. Gaitan shared concerns with Ms. McClure-Soto's access (technology, calendars and keys) to information, which has been used in a "manipulative manner" to intimidate and antagonize colleagues in the office.[2]

Ms. Olivia Espinosa, Office Assistant IV, stated Ms. McClure-Soto creates an environment of "tension and stress" making people "uncomfortable" by restricting common areas from coworkers like the supply room and requiring logins/passwords for all staff workstations. Ms. McClure-Soto speaks to others in such a way that is "aggressive" and tries to "control a lot of stuff". Ms. Espinosa witnessed the confrontation between Ms. Leon and Ms. McClure-Soto. Ms. Leon stated to Ms. McClure-Soto, "I know what you're doing", in reference to recording coworkers. Ms. McClure-Soto brought Ms. Espinosa into the confrontation by trying to get Ms. Espinosa to agree she was not recording. Ms. McClure-Soto followed Ms. Leon into the elevator lobby and replied, "I'm not taking pictures of you. Do you have something to hide?" Ms. Espinosa could sense Ms. McClure-Soto was "adding fuel to the fire", egging Ms. Leon on.[3]

Mr. Manuel Leal, Government Relations Manager, stated the office has been "very tense, everybody is on edge, they are fearful of being recorded verbally and through video" by Ms. McClure-Soto.[4]

Ms. Jasmine Leon, Budget Analyst, shared Ms. McClure-Soto intimidates colleagues in Budget by either recording or simulating recording colleagues with her personal phone. Ms. Leon was prompted to share her statement following a confrontation with Ms. McClure-Soto that began in the 9th floor foyer to the elevator lobby. Ms. Leon stated, Ms. McClure-Soto has approached her before during work hours to file

---

[1] See exhibit 7, Interview with Ms. Sylvia Diaz
[2] See exhibit 2 & 9, Statement and Interview of Ms. Tanya Gaitan
[3] See exhibit 3 & 8, Statement and Interview of Ms. Olivia Espinosa
[4] See exhibit 4 &10, Statement and Interview with Mr. Manuel Leal

BC 000143



EEOC (Equal Employment Opportunity Commission) claims, mentioning her personal disability (confidential)[5], and encouraging her to join in a coup.[6]

Mr. Blake Meneley, Sr. Finance Analyst, shared concerns with Ms. McClure-Soto supporting an environment that is "unusual, a little tense" and absent of trust.[7]

### Findings

Recording photo/video of colleagues – The County camera found directly behind reception desk of the Budget Office, and Management and Finance department (9th floor of Paul Elizondo Tower) shows Ms. McClure-Soto in the act of photographing and/or video recording. Ms. McClure-Soto is on County camera photographing and/or video recording using her personal device for over 20 minutes on the 9th floor foyer. The video timeline is detailed below.[8]

- 7:49 a.m., Ms. McClure-Soto begins her day at Ms. Espinosa's workstation.
- 7:52 a.m., Ms. McClure-Soto is reviewing video from her personal device on the County workstation under Ms. Espinosa's login.
- 7:53 a.m., Ms. McClure-Soto appears to have some sync/interface connection with her personal phone and the County computer workstation reflecting the transfer of information, images and video.
- 7:55 a.m., Ms. McClure-Soto passes the workstation over to Ms. Espinosa stepping away shortly for a minute to then sit at the station next to her.
- 7:58 a.m., Ms. McClure-Soto sets her position at the reception facing her personal device to record the elevator lobby.
- 8:01 a.m., Ms. McClure-Soto is seen using her personal device to monitor the elevator lobby area and her personal phone screen shows Mr. Armando Salazar's movement, as he enters into the reception lobby then Ms. McClure-Soto takes a photo, evidenced by the phone blinking.
- 8:02 a.m., Ms. McClure-Soto is seen using her personal device to monitor the elevator lobby area and her personal phone screen shows Ms. Jasmine Leon's movement, as she enters into the reception lobby then Ms. McClure-Soto takes a photo, evidenced by the phone blinking.
- 8:08 a.m., Ms. McClure-Soto exits reception to stand in foyer and proceeds to photograph/record foyer walls.
- 8:09 a.m., Ms. McClure-Soto is recording a wall in the foyer and continues to record turning her direction towards the elevator lobby the moment Alexandria Millan and Blake Meneley walk in.
- 8:09 a.m. – 8:13 a.m., Ms. McClure-Soto remains in the reception lobby photographing/video recording using her personal device, pacing and examining the space.
- 8:13 a.m., Ms. McClure-Soto has a minute long confrontation with Ms. Leon, where she pursues Ms. Leon from the foyer to the elevator lobby three times following Ms. Leon's statement "I know what you're doing."
- 8:14 a.m. – 9:20 a.m., Ms. McClure-Soto remained at the reception area.

Work Environment – All who shared statements and were interviewed described the work environment being "uncomfortable", "intimidating and antagonizing", "tense and stressful", "on edge", "fearful and unusual", "fearful of retaliation" due to Ms. McClure-Soto's behavior and confrontation with

---

[5] See exhibit 15, Bexar County HR Policy 7.5.04
[6] See exhibit 5, 11 and 14 Statement, Interview with Ms. Jasmine Leon, and Video of reception desk and foyer
[7] See exhibit 6 and 12, Text and Interview with Mr. Blake Meneley
[8] See exhibit 14, Video of reception desk and foyer

BC 000144



colleagues.[9] Ms. Espinosa states the following, "scared for when she comes back and the controlling behavior continues", "she retaliates against me, that's what I'm terrified of".[10]

Misuse of County Resources and Dissention – Ms. Tanya Galtan witnessed Ms. McClure-Soto discussing out-loud with Ms. Alexandria Millan of a confidential personnel matter during regular work hours.[11] Ms. Olivia Espinosa has shared practices like employee logins/passwords as well as restricting spaces and resources from coworkers.[12] Ms. Sylvia Diaz was asked by Ms. McClure-Soto during work hours to join her in "advocating for" other staff members "involving management".[13] Ms. Jasmine Leon was told by Ms. McClure-Soto during work hours to file an EEOC complaint and "join her in what she is trying to do".[14]

Insubordination – Friday, February 7, 2020, Ms. McClure-Soto had been issued a written reprimand where she was instructed to cease all conduct which is detrimental to or has an adverse effect on the office or department. The notice specifically stated "you spent a considerable amount of work time" conducting actions that "negatively impacts your ability to productively interact with other employees and strains the work environment."[15] This conduct has continued, evidence by using personal device (mobile phone) to record colleagues, discourse and confrontation.

## Conclusion

Five employees (Ms. Sylvia Diaz, Ms. Olivia Espinoza, Mr. Manuel Leal, Ms. Jasmine Leon and Mr. Blake Meneley) corroborated they witnessed Ms. Nancy McClure-Soto holding her phone in such a manner, it appeared as though she was recording her colleagues entering and exiting the workspace during work hours. Video from Bexar County camera corroborates the allegations of Ms. McClure-Soto recording/videoing colleagues including Ms. Leon who she later had a verbal altercation with.[16] Ms. McClure-Soto does conduct acts, such as recording/videoing/photographing colleagues, which are detrimental to and have adverse effect on the office and make colleagues feel fearful and intimidated by her. Ms. McClure-Soto has created conflict with colleagues, openly discussed confidential employment matters and sought to coerce others to participate in a coup against management. Ms. McClure-Soto was previously advised and disciplined to improve her behavior and cease "inappropriate communications" within the workplace. The "inappropriate communication" continued as evidence by Ms. Galtan and Ms. Leon hearing Ms. McClure-Soto mention confidential items which include a personnel matter and a colleague's disability.[17] The individuals interviewed work in close proximity and feel Ms. McClure-Soto is confrontational, intimidating, retaliatory and the source of distrust.

[9] *See exhibits 7, 8, 10, & 12, interviews with Ms. Diaz, Ms. Espinosa, Mr. Leal, and Mr. Meneley*
[10] *See exhibit 3, Statement of Ms. Olivia Espinosa*
[11] *See exhibits 2 & 9, Statement and interview with Ms. Tanya Galtan*
[12] *See exhibit 8, Interview with Ms. Olivia Espinosa*
[13] *See exhibit 7, Interview with Ms. Sylvia Diaz*
[14] *See exhibit 11, Interview with Ms. Jasmine Leon*
[15] *See exhibit 13, Written Reprimand*
[16] *See exhibit 14, Video of reception desk and foyer*
[17] *See exhibit 8 & 9, Interview with Ms. Leon, and Ms. Galtan*

BC 000145



O. RENE DIAZ, ESQ.
*Former District Judge*
*Founding & Managing Partner*

**Diaz Jakob**
ATTORNEYS AT LAW LLC
*"Amat Victoria Curam"*

JASON J. JAKOB, ESQ.
*Founding & Senior Partner*

ALAMO TOWERS WEST
901 N E LOOP 410, SUITE 900
SAN ANTONIO, TEXAS 78209
TELEPHONE: (210) 226-4500
TELECOPIER: (210) 226-4502
www.DiazJakob.com

May 6, 2020

Kristin K. Bloodworth                    VIA EMAIL: Kristin.bloodworth@bexar.org
Assistant Criminal District Attorney
Civil Division
101 W. Nueva St.
Paul Elizondo Tower, 7th Floor
San Antonio, TX 78205

     RE:   Bexar County HR Investigation – Nancy Soto (Our File No. 0790-001)

Dear Counsel:

Ms. Bernal has requested information to the following questions with regard to the above referenced matter. Listed below are the questions and their answers:

1. Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department and Work Location) How long have you been working for the County?

Nancy A. McClure-Soto, ████████ Home or ████████ Work, Administrative Coordinator, Resource Management Department, 101 W. Nueva, Suite 901, Paul Elizondo Tower, 9th Floor, San Antonio, Texas 78205; 23 years.

2. On the morning of Wednesday, February 26, 2020, what actions did you take between your arrival at the office and approximately 9:00 a.m.?

Arrived at work around 7:15 a.m., opened the supply room door, opened my office, put my lunch in the refrigerator, went to check the mail, sat up front with my Office Assistant, Olivia Espinosa, to go over routine office work.

3. Did you take any actions on the morning of February 26 that were outside your normal morning routine at the office? If so, what were those actions?

None

**EXHIBIT I**

4. On the morning of February 26, did anyone react to what he/she perceived as you recording (film/photo) him/her with your personal mobile device? If so, what happened?

**Jasmine Leon said I was taking pictures of her to try to intimidate her. I was not.**

5. If you were recording (film/photo), do you think any persons may have been in those recordings?

**None that I am aware of.**

6. Have you made other recordings of colleagues within the office setting? If yes, when/where?

**Yes. Birthday parties, holiday parties, and award ceremonies.**

7. Did you have a reason for the recording (film/photo)? If yes, then what is that reason?

**It was the festivities, further none.**

8. Is anyone else aware of your reason for the recording?

**No**

9. Have you been tasked with similar reasons before?

**I don't understand this question please be more specific.**

Thank you, and if you have any questions or concerns, please feel free to contact our office.

Sincerely,

DIAZ JAKOB, LLC
Attorneys at Law

Jason J. Jakob, Esq.

JJJ/vlm