# EXHIBIT 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NANCY A. MCCLURE-SOTO, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | NO. 5:21-CV-00660 -JKP-HJB |
| | § | |
| BEXAR COUNTY, TEXAS, | § | |
| | § | |
| Defendant | § | |

<u>PLAINTIFF'S, NANCY A. MCCLURE-SOTO, OBJECTIONS AND ANSWERS TO
DEFENDANT 'S BEXAR COUNTY TEXAS, FIRST SET OF INTERROGATORIES</u>

Plaintiff, by and through its attorneys, and pursuant to Rules 33 and 34 of the Federal Rules of
Civil Procedure and the Local Rules of this Court, responds and objects to Defendant Bexar
County's First Set of Interrogatories as follows:

Respectfully submitted,

The Jakob Law Firm, P.C.
Tetco Center
1100- N E Loop 410, Suite 200
San Antonio, TX 78209
Telephone: (210) 226-4500
Telecopier: (210) 226-4502
E-mail: jjakob@thejakoblaw.com

By: _____
    JASON J. JAKOB
    Texas Bar No. 24042933
    Attorney for Plaintiff, Linda James

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing pleading was served upon the following counsel of record in this matter in compliance with June 3, 2022.

**ERIN R. McNIECE**
State Bar No. 13838700
CAVARETTA, KATONA & LEIGHNER PLLC
700 N. St. Mary's Street, Suite 1500
San Antonio, Texas 78205
Telephone: (210) 588-2901
Facsimile: (210) 588-2908
**ATTORNEY FOR DEFENDANT,
BEXAR COUNTY, TEXAS**

**Via Email:** mcniece@ckl-lawyers.com

_____
JASON J. JAKOB, ESQ.

## PRELIMINARY STATEMENT

1.      Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2.      By making the accompanying responses and objections to Defendant's requests for documents and interrogatory, Plaintiff does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Plaintiff makes the responses and objections herein without in any way implying that it considers the requests and interrogatory, and responses to the requests and interrogatory, to be relevant or material to the subject matter of this action.

3.      Plaintiff will produce responsive documents only to the extent that such documents are in the possession, custody, or control of Plaintiff, as set forth in the Federal Rules of Civil Procedure. Plaintiff's possession, custody, or control does not include any constructive possession that may be conferred by Plaintiff's right or power to compel the production of documents or information from third parties or to request their production from other State Agencies or agencies of the United States.

4.      A response to a document request or interrogatory stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Plaintiff performed any of the acts described in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory, or that Plaintiff



acquiesces in the characterization of the conduct or activities contained in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory.

5.     Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6.     Plaintiff will make available for inspection at Plaintiff's Attorney's offices responsive documents. Alternatively, Plaintiff will produce copies of the documents.

7.     Publicly available documents including, but not limited to, newspaper clippings, court papers, and documents available on the Internet, will not be produced.

## GENERAL OBJECTIONS

1. Plaintiff objects to each instruction, definition, document request, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2. Plaintiff objects to each document request and interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3. Plaintiff objects to each document request to the extent that it calls for production of a privilege log for internal documents of Plaintiff. A request for such a log is unreasonable and unduly burdensome in light of the work product doctrine, and other privileges protecting such internal documents from discovery.

4. Plaintiff objects to each instruction, definition, document request, and interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

5. Plaintiff objects to each instruction, definition, document request, and interrogatory as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant from Defendant's own files, from documents or information in Defendant's possession, or from documents or information that Defendant previously produced to Plaintiff. Responding to such requests and interrogatory would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests and interrogatory is substantially the same or less for Defendant as for Plaintiff. This objection encompasses, but is not limited to, documents and answers to interrogatories previously produced by Defendant to Plaintiff in the course of Plaintiff's civil investigation of all transcripts of depositions of employees and former employees of Defendant, all correspondence between the Plaintiff and Defendant, all other information provided by Defendant to Plaintiff, and all information produced by Plaintiff to Defendant in response to discovery requests of Defendant. All such documents and information will not be produced.



6. Defendant's document requests and interrogatory call for the production of documents and information that were produced to the Plaintiff by other entities and that may contain confidential, proprietary, or trade secret information.

7. To the extent any of Defendant's document requests or its interrogatory seek documents or answers that include expert material, including but not limited to survey materials, Plaintiff objects to any such requests and interrogatory as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

8. Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses.

OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**
Identify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge.

**ANSWER:**

**Alexandria Millan-** Retaliation; Hostile Work Environment; Vulgarity; Favoritism; Profanity; Harassment.

**Allen Castro, Ph.D.-** Retaliation; Hostile Work Environment; Bullying; Sexual Harassment; Racism; Vulgarity; Profanity; Harassment

**Tina Smith-Dean-** Retaliation; Hostile Work Environment; Bullying; Favoritism; Racism; Vulgarity; Profanity; Harassment

**David L. Smith-** Retaliation; Hostile Work Environment; Bullying; Favoritism; Vulgarity; Profanity; Harassment

**Tanya Gaitan-** Retaliation; Hostile Work Environment; Bullying; Favoritism; Vulgarity; Harassment

**Seth McCabe-** Retaliation; Hostile Work Environment; Bullying; Favoritism; Sexual Harassment; Vulgarity; Profanity; Harassment

**Commissioner Justin Rodriguez-** Retaliation; Hostile Work Environment; Sexual Harassment

**Commissioner Tommy Calvert-** Retaliation; Hostile Work Environment; Bullying; Racism; Harassment

**Francesca Caballero-**Sexual Harassment; Hostile Work Environment; Retaliation

**Jose Torralva-** Sexual Harassment; Retaliation; Hostile Work Environment; Bullying; Racism; Favoritism; Harassment



**Manuel Gonzalez**- Retaliation; Hostile Work Environment; Bullying; Sexual Harassment; Harassment

**Ana Bernal**- Retaliation; Hostile Work Environment; Bullying; Sexual Harassment; Harassment

**Cate Gruenberg**- Retaliation; Hostile Work Environment; Bullying

**Nicole Segreto**- Retaliation; Hostile Work Environment; Bullying

**Rudy Rodriguez (Kelmar Global)**- Retaliation; Hostile Work Environment; Bullying; Sexual Harassment; Racism; Vulgarity; Profanity; Harassment

**J.D. Smith (Kelmar Global)** - Retaliation; Hostile Work Environment; Bullying; Sexual Harassment; Racism; Vulgarity; Profanity; Harassment

**Laurie Camacho**- Retaliation; Hostile Work Environment; Bullying; Racism; Favoritism; Vulgarity; Profanity; Harassment

**Kristina Brunner** - Retaliation; Hostile Work Environment; Bullying; Sexual Harassment; Racism; Favoritism; Vulgarity; Profanity; Harassment

**Barbara Schafer** - Hostile Work Environment; Bullying; Racism; Favoritism; Vulgarity; Profanity

**David Marquez** – Hostile Work Environment; Vulgarity; Profanity **Audrey Cavazos** - Retaliation; Hostile Work Environment; Bullying; Sexual Harassment; Racism; Favoritism; Vulgarity; Profanity; Harassment

**Janet Guadarrama** - Retaliation; Hostile Work Environment; Bullying; Sexual Harassment; Racism; Favoritism; Vulgarity; Profanity; Harassment

**Kay Whitcomb** - Retaliation; Hostile Work Environment; Bullying; Harassment; Racism; Favoritism; Vulgarity; Profanity

**Margaret Cuellar** - Retaliation; Hostile Work Environment

**Sylvia Diaz**- Retaliation; Hostile Work Environment; Bullying; Harassment; Racism; Favoritism; Vulgarity; Profanity

**Renee Watson** - Retaliation; Hostile Work Environment; Bullying; Harassment; Racism; Favoritism; Vulgarity; Profanity

**Veronica Guevara**- Retaliation; Hostile Work Environment; Bullying; Harassment; Racism; Favoritism; Vulgarity; Profanity

**Blake Menely**- Retaliation; Hostile Work Environment; Bullying; Harassment; Racism; Favoritism; Vulgarity; Profanity

**Manuel Leal**- Retaliation; Hostile Work Environment; Bullying; Harassment; Racism; Favoritism; Vulgarity; Profanity

**Jasmine Leon**- Retaliation; Hostile Work Environment; Bullying; Harassment; Racism; Favoritism; Vulgarity; Profanity

**Plaintiff reserves its right to supplement its responses.**

**INTERROGATORY NO. 2:**
Describe your job duties as an Administrative Coordinator within the Bexar County Manager's Office.

**ANSWER:** Under general direction, is responsible for the coordination of administrative and business functions in the department. Manages all vendor and client service contracts; monitors



overall departmental budget; manages facility assets for the office; and performs related duties as required

## Duties and Responsibilities:

Monitors departmental budget development and oversees execution of all budget processes

Coordinates the process and preparation of internal and external service contracts, requests for proposals, and service/maintenance agreements, ensures specification compliance and achievement of contract deliverables for all contract/vendor services performed for the department

Serves as primary office liaison with BCIT and is the onsite resource for development, installation, management and troubleshooting of a wide variety of specialized software programs that are integral to this office; serves as onsite administrator of all software programs

Oversees supervision, training and evaluation of all administrative and clerical personnel

Coordinates the documentation for new hires, disciplinary actions and terminations, job description maintenance, and performance appraisal completion

Documents and maintains all departmental policies and procedures that may include activity-based costing program, billing processes, contract management, time and attendance, and other County systems

Assists Department Heads in the coordination of training and tracking of professional and technical staff members

May attend meetings or represent the department for County-wide projects or activities

Coordinates Commissioners Court agenda items and prepares presentations for the department

Manages department's assets including office space, equipment, supplies and support services, oversees accounts payable and accounts receivable for the department, and provides administrative support to Executive in charge

Performs related duties as required

## Minimum Qualifications:

Graduation from an accredited college or university with a Bachelor's Degree in Business Administration or Public Administration or closely related field and five (5) years of office administration experience including three (3) years of supervisory experience; or an equivalent combination of education and experience

Good knowledge of office administration; knowledge of and skill in applying rules of grammar, spelling and punctuation; proficient with Microsoft Office (outlook, Word, Excel and Power Point), Adobe Acrobat and Social Media Platforms; knowledge of county government is desirable

Plaintiff's, NANCY A. MCCLURE-SOTO, Objections and Responses to Defendant's First Set of Interrogatories 

Strong organizational skills that reflect ability to perform and prioritize multiple tasks seamlessly with excellent attention to detail; skill in supervising professional employees; skill in operating and maintaining office computer systems and a wide variety of office software packages

Ability to communicate effectively, both verbally and in writing; ability to communicate effectively with diverse groups of individuals utilizing tact and diplomacy; ability to perform basic to complex mathematical calculations; ability to establish and maintain effective working relationships with subordinates, co-workers, County employees, Department/Division Heads, Elected/Appointed Officials, outside organizations and agencies, vendors and the public

Must secure and maintain a favorable background investigation

Must clear a pre-employment physical and a pre-employment drug screen test

May be required to work more than 40 hours during the workweek

## Working Environment and Physical Demands:

Constantly working in indoor conditions with occasional exposure to hostile or violent individuals
Occasionally moves items weighing up to 15 pounds
Occasionally moves about the office
Frequently communicates with others; must be able to exchange accurate information
Constantly operates a computer and other office productivity machinery
Positions self to perform essential functions
Must be able to remain in a stationary position

## Individual Office/Department Conditions:

Tasks and special requirements unique to an individual office or department may be addressed through a separate list of detailed specifications prepared by that office/department and subject to approval by Human Resources and the Civil Service Commission. Office/department specifications may not be more complex nor at a higher level of responsibility than any of those contained in this position description

| SECTION | UNIT |
|---|---|
| Judicial Services | Medical Examiner's Office |

Must be able to deal effectively with distraught families, legal representative, media, Justice of the Peace, funeral directors, and law enforcement agencies

May be exposed to unpleasant or disturbing images or descriptions on a regular basis

Must secure and maintain a favorable background investigation from the FBI and DPS.

**Preferred:**



Advanced knowledge of Texas Medical Examiner statutes and accreditation requirements are preferred, and/or must be capable to develop such knowledge within six (6) months of hiring

**Prior to Hiring:**
Must complete a pre-employment drug test; also be tested for Tuberculosis, Hepatitis B, and HIV

| SECTION | UNIT |
|---|---|
| Public Works Department | Administration |

**Duties and Responsibilities:**

Responsible for setting up physical or psychological, and post-accident testing for applicants and current employees

Creates and monitor's FMLA and worker's compensation documentation and files and tracks case and updates data

Manages and submits Payroll and Status Forms as needed to Auditor's Office in a timely manner

Oversees vehicle titles and manages Exhibit B's for vehicle and equipment auctions or trade-ins

**Minimum Qualifications:**
Must be able to process employment applications job announcements, transfers, promotional processing, current vacant positions and background checks

Must update and maintain personnel and medical confidential files and documents

Must have a valid Texas driver's license

*The above statements are intended to describe the general nature and level of work being performed by people assigned to this classification. They are not intended to be construed as an exhaustive list of all responsibilities, duties and skills required of personnel so classified. Candidates whose disabilities make them unable to meet these requirements will still be considered qualified if they can perform the Essential Functions of the job with reasonable accommodation.*

| Office / Department | Human Resources Approval Date | Civil Service or Sheriff's Civil Service Approval Date | Commissioners Court or County Manager Approval Date |
|---|---|---|---|
| Management & Financial Service | February 9, 2016 | | October 1, 2011 |
| Facilities Management | | | October 1, 2013 |
| Bexar Heritage | September 11, 2018 | | October 1, 2015 |



| Public Works | December 19, 2016 | | December 23, 2016 |
|---|---|---|---|
| Economic & Community Dev. | | | October 7, 2017 |

Plaintiff reserves its right to supplement its responses.

## INTERROGATORY NO. 3:
Identify to whom and how you allegedly submitted an EEOC Charge on January 12, 2020.

**ANSWER:** January 2019, I submitted Inquiry # 451-2020-01182 to the EEOC. (Attached) I subsequently received a confirmation email with an interview date. I had no prior experience or knowledge of the EEOC process and believed my case was formally filed once the initial appointment had been set. I later discovered that my case had not been "Officially filed" until April 9th, which was the date of my interview with the EEOC Investigator, Mr. Hector Prado-Colon.

Plaintiff reserves its right to supplement its responses.

## INTERROGATORY NO. 4:
Describe your chain of command as an Administrative Coordinator within the Bexar County Manager's Office.

**ANSWER:** I reported directly to David Smith, from the time I started with the department. I physically moved from the 10th floor of the Paul Elizondo Tower to the ninth floor around September 2011, however; my duties remained the same and I still reported directly to David Smith. I was subsequently moved back and forth between the 9th and 10th floors on two (2) additional occasions between 2012 & 2015 (cannot remember exact dates). I was permanently moved around 2015-16 and placed under the direct supervision of Tina Smith-Dean.

Plaintiff reserves its right to supplement its responses.

## INTERROGATORY NO. 5:
Describe how you assisted Alexandria Millan with her complaints to the EEOC.

**ANSWER:** December 10, 2019 & December 16, 2019, Alexandria Millan asked me for copies of her timesheets and personnel file for her attorney and for her EEOC case. She copied me on emails referencing both. (Attached)

Plaintiff reserves its right to supplement its responses.



**INTERROGATORY NO. 6:**
Please state the factual basis for your belief that Smith-Dean's removal of herself at your supervisor during the investigation into your complaints about Smith-Dean constituted a "demotion" and/or any kind of retaliation.

**ANSWER:** Seth McCabe, Director of Management & Finance; Manuel Gonzalez, HR Manager; Tanya Gaitan, Budget Manager; and myself reported directly to Tina Smith-Dean. Smith-Dean had the option to change the reporting structure to allow me to report to a manager or Director with whom I had been working directly with for years; who had firsthand experience and extensive knowledge of my daily job duties; and who were her designated back-ups when she was out of the office. Instead, she opted to have me report to Veronica Guevara, Risk Management Coordinator. Veronica Guevara had the least amount of experience in our department, had only basic understanding of the office Administrative Duties & Processes or of my job duties. This made it difficult to perform my basic job duties and deliberately sent out a message to all, that I was no longer a part of the "Office Management Team" as I had been for my entire my time in the department. (Attached)

> **Plaintiff reserves its right to supplement its responses.**

**INTERROGATORY NO. 7:**
Identify each act of retaliation that you allege was committed personally by Smith-Dean, and for each such act, state, when and where such act occurred.

**ANSWER:** December 2019-Tina Smith-Dean removed all Employee Personnel Files which were in my office file cabinet. I was not in my office when she removed them. Maintaining all employee personnel files was a job duty I had for 15 years. This duty was stripped from me without any type of explanation, justification, or notification. (Attached 7-1 Located in Production Addendum)

December 2019-Tina Smith-Dean had the locks changed on her office door. I had a master key and had been opening her office door every morning for years. I had no knowledge the locks were changed until I attempted to open her door one morning. It had been my responsibility to prepare necessary documents to request such changes, coordinate with the Facilities department, and maintain all office keys. This job duty was removed from me. This inherently sent a message to ninth floor and Facility staff that if I was no longer allowed to simply open her office door for her, I was no longer a trusted employee. (Attached)

February 26, 2020-Tina Smith-Dean solicited, collected, and used emails from six (6) employees who were subsequently used to place me on Investigative Administrative Leave which led to disciplinary action and proposed termination of my job. (Attached 7-2 Located in Production Addendum)

It should be noted that there are likely additional acts of retaliation, sabotage, harassment, bullying, passive-aggressiveness, sexual harassment/assault, and other behaviors inconsistent with County policy and perpetuated by Mrs. Smith-Dean (and others) that were uncovered in the



Kelmar Global investigation. Thus, the Defendant itself is in custody of this evidence and continues to obstruct the disclosure of any and all findings of that report. It stands to reason that if there were exculpatory information in that report/investigation beneficial to the Defendant, then the Defendant would not be so strident in its efforts to prevent that publicly funded report from seeing the light of day.

**Plaintiff reserves its right to supplement its responses.**


## INTERROGATORY NO. 8:

Identify each act of retaliation that you allege was committed by anyone other than Smith-Dean, and for each such act, state who committed the act, and when and where such act occurred.

**ANSWER:** **Tanya Gaitan: (December 2019)** Tanya had the locks changed on her office door without requesting it through me which was my job and the office standard for years

Tanya and all her direct reports began opening their own IT service calls for phone and computer issues which was my job and the office standard for years. (Attached-8-1 Located in Production Addendum)

Tanya began sending all email correspondence concerning office issues directly to my administrative assistant, Olivia Espinosa, without copying me, which was not the office standard. Tanya removed my access to view her Microsoft Office calendar which I had previously had access to for years for the purpose of scheduling meetings. My Office Assistant continued to have access to view her calendar. Tanya sent emails to Alexandria Millan misrepresenting facts about missing timesheets and lied about having met with me to discuss these missing timesheets. (Attached 8-2 Located in Production Addendum)

Tanya lied in an email dated December 19, 2019, about the binding of the yearly Budget Books. She misrepresented the facts and removed my job duty from me which had always been my responsibility. (Attached 8-3 Located in Production Addendum)

Tanya provided false and misleading statements about me during and internal investigation. (Attached 8-4 Located in Production Addendum)

**Veronica Guevara:** December 17, 2019- I was at a scheduled doctor's appointment. I received a series of text messages from Veronica asking me where I was. I reminded her I had approved, scheduled sick leave. She had access to my leave request, and she could have asked my staff at the front desk (Attached 8-5 Located in Production Addendum)

January 2, 2020, Veronica sent a series of emails at 2:54 pm, concerning the processing of a new employee who was scheduled to start work the following Monday. Even though I was out on approved vacation leave, and not expected to return until Monday morning, I responded. I informed her I would process the new employee in the afternoon because I would be processing



another new employee in the morning on that same day. Her response was "As you are not able to take this assignment as requested, it will be delegated to someone else." She removed that job duty from me. (Attached 8-6 Located in Production Addendum)

January 31, 2020, Veronica sent me an email within minutes of a verbal encounter between Seth McCabe and Alexandria Millan in which Seth was informing Alexandria that she could no longer provide coverage for me when I needed to run across the hall to the restroom. I responded via email. Veronica Guevara subsequently used this email, along with others to justify giving me a Written Reprimand. (Attached 8-7 Located in Production Addendum)

February 7, 2020- Veronica Guevara gave me a written Reprimand, The 1st ever in my entire 23 years with Bexar County. (Attached 8-8 Located in Production Addendum)

February 7, 2020- Veronica invited Melissa Shannon, the Government Relations Manager to sit in and observe my Written Reprimand. Melissa Shannon was not a part of my reporting structure and not part of our department. This was not standard practice in our department. This was a means to further embarrass and humiliate me.

February 26, 2020- Veronica Guevara placed me on Investigative Administrative Leave. She stated she "had limited information of the reasons why but was informed by Human Resources that a complaint was received from employee Jasmine Leon and that I would remain on leave until their investigation was completed." Jasmine Leon was never placed on any type of leave pending the outcome of that same investigation. This same employee, Jasmine Leon, had just been in a news story release by KSAT 12, in which she and Budget Manager, Tanya Gaitan, were caught on camera "flipping off" the Bexar County Courthouse. Neither Jasmine nor Tanya were given Written Reprimands, investigated, or put on any type of Leave for that incident. At this exact same time, Tina Smith-Dean herself, was also the subject of an active investigation being conducted by Kelmar Global because of my allegations of her abusive behavior towards me. Mrs. Smith-Dean was never put on any type of Investigative Leave pending the outcome of that investigation. I questioned Veronica about the disparity in the way in which I was being treated compared to my coworkers. She had no response. (Attached 8-10 Locate4d in Production Addendum)

April 8, 2020- I received a letter and email from Veronica Guevara stating my Investigative Administrative Leave was expiring and that I would be returning to work effective April 9, 2020. No explanation was provided as to the outcome of the investigation. Veronica stated she had no knowledge of the status of that investigation and that I would need to contact Human Resources for additional information. This was completely contradictory to the original direction I was given when I was put on leave. My return to work was 100% remote. Access to shared drives, SAP, Lawson, and other necessary access was removed and I was denied the access I needed to perform my job. (Attached 8-11 Located in Production Addendum)

June 9, 2020- I received an email from Veronica Guevara telling me to report to work at 8:00 am the next morning. I arrived to work at 7:30. My badge was disabled, and I was forced to sit in the lobby until 8:15 when Veronica finally opened the front door for me. At 3:00 pm Veronica handed me a Notice of Proposed Disciplinary Action / Termination. Again, even though it was not standard practice in our department, Veronica invited another individual who was not part of my reporting



structure or part of our department to observe. Debra Carter worked for the Economic Development Department. I was walked to my office, my county property was collected, and was not given the opportunity to collect my personal belongings. As of this statement, my personal belongings have never been returned. Ms. Guevara and Ms. Carter escorted me out of the building. Both individuals knew I was well known and respected within the county. It was humiliating.

**Ana Bernal:** April 2020 Ana Bernal conducted an "internal investigation" into the false allegations Jasmine Leon had accused me of. Other than a workshop Ms. Bernal attended in 2019, she had no formal training on how to conduct an internal investigation. In fact, she had never conducted any type of investigation prior to the one she led against me. The Human Resource department had no written policies or procedures in place which she could have used to guide her through the process. Her investigation questions were leading, the information obtained was untruthful, not factual, disingenuous, and much of what was written had nothing to do with me but, rather, was focused on another employee, who also had a Federal EEOC pending, Mrs. Alexandria Millan. Ms. Bernal's final investigative report was nothing but hearsay, speculation, and lies. No supporting documentation or proof was ever provided by any of her witnesses. All information submitted by Ms. Bernal was solicited by Tina Smith-Dean, gathered from a small group of staff who prepared their written statements all on the same day, February 26, 2020, and submitted them via email to Tina Smith-Dean who was, at that time, under an investigation being conducted by Kelmar Global into my allegations of her abusive and retaliatory treatment of me. The final recommendation of Ms. Bernal's investigation, who was, incidentally, a direct report to Tina Smith-Dean, was to propose termination of my position.

**Manuel Gonzalez:** July 13, 2020-I submitted paperwork to retire from Bexar County June 22, 2020. Benefits for the months of June 2020 and July 2020 had already been withdrawn from my wages; therefore, my medical benefits coverage was current and paid through the end of July 2020. On July 2, 2020, I submitted all required documentation for retirement along with a check payable to the Bexar County Clerk for my medical coverage to be paid for the month of August 2020. This documentation was sent via email to Valerie Rodriguez, HR Tech II with Bexar County Human Resources. On July 10, 2020, I was attempting to refill diabetic prescriptions for my husband when I was informed that I had no insurance coverage. I was shocked and confused. I immediately tried contacting Valerie Rodriguez. Later in the day, I suffered a medical emergency. Upon arriving at the hospital, I was informed I had no medical insurance coverage and was denied treatment because I had no way to secure payment. After repeated attempts to reach Manuel Gonzalez and Valerie Rodriguez, I was finally able to reach Margaret Cuellar, Aetna Rep for Bexar County. She confirmed my medical coverage with Aetna had been terminated on June 22, 2020, which is the same day I retired. On July 13, 2020, I exchanged many emails between Manuel Gonzalez and Valerie Rodriguez. It came as no surprise that the explanations provided were illogical, incoherent and did not explain why my benefits were terminated. Manuel Gonzalez and Valerie Rodriguez were acting as agents on behalf of Tina Smith-Dean to continue effecting her retaliation on me and now my family. (Attached 8-12 Located in Production Addendum)

**Valerie Rodriguez:** July 13, 2020-I submitted paperwork to retire from Bexar County June 22, 2020. Benefits for the months of June 2020 and July 2020 had already been withdrawn from my wages; therefore, my medical benefits coverage was current and paid through the end of July 2020. On July 2, 2020, I submitted all required documentation for retirement along with a check

Plaintiff's, NANCY A. MCCLURE-SOTO, Objections and Responses to Defendant's First Set of Interrogatories



payable to the Bexar County Clerk for my medical coverage to be paid for the month of August 2020. This documentation was sent via email to Valerie Rodriguez, HR Tech II with Bexar County Human Resources. On July 10, 2020, I was attempting to refill diabetic prescriptions for my husband when I was informed that I had no insurance coverage. I was shocked and confused. I immediately tried contacting Valerie Rodriguez. Later in the day, I suffered a medical emergency. Upon arriving at the hospital, I was informed I had no medical insurance coverage and was denied treatment because I had no way to secure payment. After repeated attempts to reach Manuel Gonzalez and Valerie Rodriguez, I was finally able to reach Margaret Cuellar, Aetna Rep for Bexar County. She confirmed my medical coverage with Aetna had been terminated on June 22, 2020, which is the same day I retired. On July 13, 2020, I exchanged many emails between Manuel Gonzalez and Valerie Rodriguez. It came as no surprise that the explanations provided were illogical, incoherent and did not explain why my benefits were terminated. Manuel Gonzalez and Valerie Rodriguez were acting as agents on behalf of Tina Smith-Dean to continue effecting her retaliation on me and now my family.

**Jasmine Leon:** February 26, 2020-provided false and misleading statements about me during and internal investigation. Jasmine Leon was also featured in a news story in which it highlighted her, and Tanya Gaitan were caught on camera "flipping off" the Bexar County Courthouse. (Attached 8-13 Located in Production Addendum)

https://www.ksat.com/news/defenders/2020/02/24/memo-bexar-county-manager-david-smith-directed-employees-to-receive-absolution/

**Sylvia Diaz:** February 26, 2020-provided false and misleading statements about me during and internal investigation. Sylvia Diaz was also featured in a news story which highlighted the fact that she was promoted after providing negative testimony about me during the internal investigation which was conducted by Ana Berna. (Attached 8-14 Located in Production Addendum)

https://www.ksat.com/news/defenders/2020/11/30/bexar-county-employee-promoted-on-same-day-co-worker-she-testified-against-was-handed-proposed-termination/

**Manuel Leal:** February 26, 2020-provided false and misleading statements about me during and internal investigation.

**Blake Menely:** February 26, 2020-provided false and misleading statements about me during and internal investigation.

Plaintiff reserves its right to supplement its responses.

**INTERROGATORY NO. 9:**
State the factual basis for your allegation that you were retaliated against for assisting Alexandria Millan with an EEOC complaint(s).



**ANSWER:** December 2019-Tina Smith-Dean removed all Employee Personnel Files which were in my office file cabinet. I was not in my office when she removed them. Maintaining all employee personnel files was a job duty I had for 15 years. This duty was stripped from me without any type of explanation, justification, or notification.

December 2019-Tina Smith-Dean had the locks changed on her office door. I had a master key and had been opening her office door every morning for years. I had no knowledge the locks were changed until I attempted to open her door one morning. It had been my responsibility to prepare necessary documents to request such changes, coordinate with the Facilities department, and maintain all office keys. This job duty was removed from me. This inherently sent a message to ninth floor and Facility staff that if I was no longer allowed to simply open her office door for her, I was no longer a trusted employee.

February 26, 2020-Tina Smith-Dean solicited, collected, and used emails from six (6) employees who were subsequently used to place me on Investigative Administrative Leave which led to disciplinary action and proposed termination of my job. (Attached)

      **Plaintiff reserves its right to supplement its responses.**

**INTERROGATORY NO. 10:**
State the factual basis for your allegation that you were retaliated against for complaining about Smith-Dean's hostility towards you.

**ANSWER:** December 5, 2019, I sent an email to Tina Smith-dean which detailed her years of abuse, mistreatment, vulgarity, harassment, retaliatory practices, and her bullying towards me and other employees. Immediately following that email and until the day I left the county, I was retaliated against. Not only by Tina Smith-Dean but also by coworkers. This retaliation was documented in a series of emails in which I documented clearly in my responses to the written reprimand I received, in the EEOC Complaint I filed, and in the Kelmore Global Investigative Report. All emails and documents have been provided. Defendant itself is in custody of the evidence from Kelmore Global and continues to obstruct the disclosure of any and all findings of that report.

      **Plaintiff reserves its right to supplement its responses.**

**INTERROGATORY NO. 11:**
Identify each witness to the acts of retaliation described in your answers to Interrogatories Nos. 7 and 8.

**ANSWER:** Tina Smith-Dean; Veronica Guevara; Seth McCabe; Tanya Gaitan; Alexandria Millan; Olivia Espinosa; Sylvia Diaz; Jasmine Leon; Joseph Brantley; Blake Menely; Kristina Brunner; Frances Elizondo-Moreno; Paul Matye; Thomas DeCesare; Armando Hernandez; Ian Maurer; Melissa Shannon; Debra Carter; David Smith; Roger Henderson; Roxanne Leal; Tommy



Calvert; Justin Rodriguez; Margaret Cuellar; Valerie Rodriguez; Manual Leal; Manuel Gonzalez; Adam Leos.

## INTERROGATORY NO. 12:
Describe each of your job duties that you assert was 'removed' by Smith-Dean or by another at her direction.

## ANSWER:

- Management of Employee Personnel Files
- All Travel and Training within the department
- Coordination and management of all IT, Computer, and Phone related issues within the department
- Coordination and management of all facility related issues within the department
- Processing of New Employees
- Printing and dissemination of Commissioners Court Presentations
- Setting up laptop and preparing Mrs. Smith-Dean's work area in Commissioners Court
- Logging and dissemination of yearly budget program changes
- Dissemination of internal and external office announcements
- Dissemination of internal job postings
- Distribution of Jail Track Report
- Binding of Annual Budget Document
- Preparation and management of Holiday Staffing Calendar
- Scheduling of all office interviews
- Answering phone calls and scheduling of meetings for Tina Smith-Dean
- Preparation and distribution of Daily Attendance Reports
- Upkeep and control of office supplies
- Management of all office keys
- Locking and unlocking office doors for management staff
- Many other "duties as assigned" (cleanliness of conference rooms & breakrooms; restocking copy machines and fax machine with paper; distribution of supplies; distribution of mail etc.)

**Plaintiff reserves its right to supplement its responses.**

## INTERROGATORY NO. 13:
Identify each person at Bexar County Human Resources with whom you discussed your claims of retaliation, and for each, state the date such discussion took place.

**ANSWER:** I never requested any "official assistance" from anyone in Human Resources. The Human Resources Department reports directly to Tina Smith-Dean. Asking for assistance or



discussing my concerns would have resulted in additional retaliation against me. I did have private conversations with individuals who were concerned about my wellbeing and mental health. I believe these individuals are still employed with Bexar County and the release of their names would result in retaliation against them. I respectfully decline to list their names.

**Plaintiff reserves its right to supplement its responses.**

## INTERROGATORY NO. 14:
Describe what you took photographs and/or videos of on your phone while at the office on February 26, 2020.

**ANSWER:** Elevator doors; Glass display cabinets in lobby; Lobby furniture; Wall art in office and lobby; Signage in lobby; Front Desk Area; Newspapers behind front desk; bulletin board in lobby; and floors in lobby

**Plaintiff reserves its right to supplement its responses.**

## INTERROGATORY NO. 15:
Describe each instance in which you allege you were unable to conduct your normal job duties, to include the date of each instance.

**ANSWER:** Beginning December 10, 2019, until continuing until the time I was proposed with termination of my job, I was unable to conduct my routine job duties. I was ignored or gaslighted with so many emails that it was impossible to conduct my duties or complete my work.

**Plaintiff reserves its right to supplement its responses.**

## INTERROGATORY NO. 16:
If you are claiming to have suffered any mental anguish, or any mental or emotional injury, pain or suffering, as a result of the alleged events during your employment with Bexar County, Texas, identify all physicians, surgeons, doctors, chiropractors, osteopaths, psychiatrists, psychologists, therapists, counselors or other practitioners of the healing arts, or hospitals, pharmacies or other institutions who have conducted examinations or provided care, treatment, services or supplies to you for the time period beginning January 1, 2020 to present.

**ANSWER:** Although I struggled with extreme anxiety and depression at the loss my career, I was unable to afford the cost of professional counseling. Because of the pandemic, community support groups were not offered and religious counseling through my church was suspended. Prior to my termination, On February 13, 2020, I was prescribed anxiety medication by Dr. Angela



Riley, at the Bexar County Employee Clinic. I continued taking that medication until the prescription expired. I was not financially able to seek out medical assistance to get another prescription.

**Plaintiff reserves its right to supplement its responses.**

## INTERROGATORY NO. 17:
Please identify all periods of employment, including self-employment, that Plaintiff has had since June 1, 2020, to include the name and address of each employer, your job title, your salary or wage payments, income, vacation pay, sick pay, bonuses and benefits, and any other compensation received from each employer or self-employment.

**ANSWER:**       I respectfully decline to provide this information. I fear additional retaliation from Bexar County. Tina Smith-Dean, David L. Smith, Thomas Guevara, and Manuel Gonzalez. Their behavior has been intentional and harmful to me mentally, physically, and emotionally. Moreover, their behavior is in contradiction to Bexar County's policies and procedures for Employee Conduct (Section 7.5) and Civil Services Rules and Regulations (Section 7.6).

**Plaintiff reserves its right to supplement its responses.**

## INTERROGATORY NO. 18:
Identify all income, benefits or services provided to you, or paid on your behalf including, without limitation, by any insurance company, unemployment insurance or other state or federal governmental entity or agency, from the date of your separation of employment with Bexar County, Texas. Your response should include, without limitation, a statement of the amount of benefits paid by each payor and the name, address and telephone number of the payor, and the account number, policy number and any other designation, which identifies the source of the payment(s).

**ANSWER:**

Client respectfully declines to provide this information. I fear of additional retaliation from Bexar County. Tina Smith-Dean, David L. Smith, Thomas Guevara, and Manuel Gonzalez. Their behavior has been intentional and harmful to me mentally, physically, and emotionally. Moreover, their behavior is in contradiction to Bexar County's policies and procedures for Employee Conduct (Section 7.5) and Civil Services Rules and Regulations (Section 7.6).

**Plaintiff reserves its right to supplement its responses.**

## INTERROGATORY NO. 19:
Describe any and all communications you had with Defendant concerning the facts, circumstances, events, happenings, occurrences, or transactions which form the basis of this litigation on or after



June 22, 2020. (Your response will be deemed sufficient if you state the date of the communication, mode of communication, [i.e., telephone, correspondence, meeting, etc.], parties to the communication, and substance of the communication.)

**ANSWER:**

Client respectfully declines to provide this information. I fear of additional retaliation from Bexar County. Tina Smith-Dean, David L. Smith, Thomas Guevara, and Manuel Gonzalez. Their behavior has been intentional and harmful to me mentally, physically, and emotionally. Moreover, their behavior is in contradiction to Bexar County's policies and procedures for Employee Conduct (Section 7.5) and Civil Services Rules and Regulations (Section 7.6).

**Plaintiff reserves its right to supplement its responses.**

**INTERROGATORY NO. 20:**
Describe each and every admission made or allegedly made by Defendant regarding your employment or the acts, omissions, facts, circumstances, events, happenings, or occurrence which form the basis of this litigation. (You may, at you option, limit your answer to those admissions you may attempt to make known to a Judge or Jury at any hearing or trial in this cause, provided you so state in your answer.)

**ANSWER:**

Client respectfully declines to provide this information. I fear of additional retaliation from Bexar County. Tina Smith-Dean, David L. Smith, Thomas Guevara, and Manuel Gonzalez. Their behavior has been intentional and harmful to me mentally, physically, and emotionally. Moreover, their behavior is in contradiction to Bexar County's policies and procedures for Employee Conduct (Section 7.5) and Civil Services Rules and Regulations (Section 7.6).

**Plaintiff reserves its right to supplement its responses.**

**INTERROGATORY NO. 21:**
If you have been unable to work for any period of time since June 22, 2020, please identify the time period, and the reason that you were unable to work during that time period.

**ANSWER:** I was unemployed for months after my resignation from Bexar County. The world was in the middle of a Global Pandemic. It was virtually impossible to find employment. Most of the world was completely shut down. I respectfully decline to provide any additional information concerning this matter. I fear of additional retaliation from Bexar County. Tina Smith-Dean, David



L. Smith, Thomas Guevara, and Manuel Gonzalez. Their behavior has been intentional and harmful to me mentally, physically, and emotionally. Moreover, their behavior is in contradiction to Bexar County's policies and procedures for Employee Conduct (Section 7.5) and Civil Services Rules and Regulations (Section 7.6).

<u>VERIFICATION</u>

STATE OF TEXAS        §
                        §
COUNTY OF _BEXAR_    §

       BEFORE ME, the undersigned authority, on this day personally appeared NANCY A. MCCLURE-SOTO, who being by me first duly sworn, says that she has read the foregoing Answers to Interrogatories, and states that each and every allegation, denial, and/or statement maintained therein is true and correct and within her personal knowledge.

                               NANCY A. MCCLURE-SOTO

       SUBSCRIBED AND SWORN TO BEFORE ME, on this the _1st_ day of _JUNE_, 2022.

DAVID ALLEN DOAN
Notary Public, State of Texas
Comm. Expires 05-27-2025
Notary ID 133126954

                               NOTARY PUBLIC, STATE OF TEXAS