# EXHIBIT 6

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **NANCY A. MCCLURE-SOTO,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **NO. 5:21-CV-00660 -JKP-HJB** |
| | § | |
| **BEXAR COUNTY, TEXAS,** | § | |
| **Defendant** | § | |

## <u>AFFIDAVIT OF MANUEL GONZALEZ III</u>

| STATE OF TEXAS | § |
|---|---|
| | § |
| COUNTY OF BEXAR | § |

**BEFORE ME**, the undersigned authority, on this date personally appeared MANUEL GONZALEZ III who, after being duly sworn, deposed as follows:

"My name is MANUEL GONZALEZ III. I am employed as Human Resources Director with Bexar County, Texas in the Human Resources Department. I am over the age of eighteen (18) years, am mentally competent and capable of making this affidavit. In my position as Director of Human Resources, I serve as a custodian of records for Bexar County Human Resources. I have personal knowledge of the facts stated herein and they are true and correct.

"Attached hereto are _87_ pages of records from Bexar County Human Resources which are kept by Bexar County, Texas in the regular course of business, and it was the regular course of business of Bexar County, Texas for an employee or representative of Bexar County, Texas with knowledge of the event, condition, opinion or event recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are exact duplicates of the original.

"Further Affiant sayeth not."

SIGNED this the ____1____ day of December, 2023.

_____
MANUEL GONZALEZ III

STATE OF TEXAS            §

COUNTY OF   BEXAR        §

**BEFORE ME,** the undersigned authority, on this day personally appeared MANUEL GONZALEZ III who, upon his oath, stated that he has read the foregoing Affidavit and states that each and every fact stated therein is true and correct.

**SUBSCRIBED AND SWORN TO BEFORE ME** by the said MANUEL GONZALEZ III, this the ____1____ day of December, 2023.

_____
NOTARY PUBLIC, STATE OF TEXAS

NELDA J TANAKA
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 07/19/26
NOTARY ID 12422118-1

# EXCERPTS OF HR FILE
# FOR MCCLURE-SOTO

**Job Title:** ADMINISTRATIVE SERVICES COORDINATOR

**Grade:** E - 06

**Job Type:** Full-Time, Regular

**Office / Department:** See Page 3

**FLSA:** Exempt

**Civil Service Status** Regular Civil Service

### Summary:

Under general direction, is responsible for the coordination of administrative and business functions in the department. Manages all vendor and client service contracts; monitors overall departmental budget; manages facility assets for the office; and performs related duties as required

### Duties and Responsibilities:

Monitors departmental budget development and oversees execution of all budget processes

Coordinates the process and preparation of internal and external service contracts, requests for proposals, and service/maintenance agreements, ensures specification compliance and achievement of contract deliverables for all contract/vendor services performed for the department

Serves as primary office liaison with BCIT and is the onsite resource for development, installation, management and troubleshooting of a wide variety of specialized software programs that are integral to this office; serves as onsite administrator of all software programs

Oversees supervision, training and evaluation of all administrative and clerical personnel

Coordinates the documentation for new hires, disciplinary actions and terminations, job description maintenance, and performance appraisal completion

Documents and maintains all departmental policies and procedures that may include activity-based costing program, billing processes, contract management, time and attendance, and other County systems

Assists Department Heads in the coordination of training and tracking of professional and technical staff members

May attend meetings or represent the department for County-wide projects or activities

Coordinates Commissioners Court agenda items and prepares presentations for the department

Manages department's assets including office space, equipment, supplies and support services, oversees accounts payable and accounts receivable for the department, and provides administrative support to Executive in charge

Performs related duties as required

## Minimum Qualifications:

Graduation from an accredited college or university with a Bachelor's Degree in Business Administration or Public Administration or closely related field and five (5) years of office administration experience including three (3) years of supervisory experience; or an equivalent combination of education and experience

Good knowledge of office administration; knowledge of and skill in applying rules of grammar, spelling and punctuation; proficient with Microsoft Office (outlook, Word, Excel and Power Point), Adobe Acrobat and Social Media Platforms; knowledge of county government is desirable

Strong organizational skills that reflect ability to perform and prioritize multiple tasks seamlessly with excellent attention to detail; skill in supervising professional employees; skill in operating and maintaining office computer systems and a wide variety of office software packages

Ability to communicate effectively, both verbally and in writing; ability to communicate effectively with diverse groups of individuals utilizing tact and diplomacy; ability to perform basic to complex mathematical calculations; ability to establish and maintain effective working relationships with subordinates, co-workers, County employees, Department/Division Heads, Elected/Appointed Officials, outside organizations and agencies, vendors and the public

Must secure and maintain a favorable background investigation

Must clear a pre-employment physical and a pre-employment drug screen test

May be required to work more than 40 hours during the workweek

## Working Environment and Physical Demands:

Constantly working in indoor conditions with occasional exposure to hostile or violent individuals
Occasionally moves items weighing up to 15 pounds
Occasionally moves about the office
Frequently communicates with others; must be able to exchange accurate information
Constantly operates a computer and other office productivity machinery
Positions self to perform essential functions
Must be able to remain in a stationary position

## Individual Office/Department Conditions:

Tasks and special requirements unique to an individual office or department may be addressed through a separate list of detailed specifications prepared by that office/department and subject to approval by Human Resources and the Civil Service Commission. Office/department specifications may not be more complex nor at a higher level of responsibility than any of those contained in this position description

| SECTION | UNIT |
|---|---|
| Judicial Services | Medical Examiner's Office |

Must be able to deal effectively with distraught families, legal representative, media, Justice of the Peace, funeral directors, and law enforcement agencies

May be exposed to unpleasant or disturbing images or descriptions on a regular basis

Must secure and maintain a favorable background investigation from the FBI and DPS.

**Preferred:**
Advanced knowledge of Texas Medical Examiner statutes and accreditation requirements are preferred, and/or must be capable to develop such knowledge within six (6) months of hiring

**Prior to Hiring:**
Must complete a pre-employment drug test; also be tested for Tuberculosis, Hepatitis B, and HIV

| SECTION | UNIT |
|---|---|
| Public Works Department | Administration |

**Duties and Responsibilities:**

Responsible for setting up physical or psychological, and post-accident testing for applicants and current employees

Creates and monitor's FMLA and worker's compensation documentation and files and tracks case and updates data

Manages and submits Payroll and Status Forms as needed to Auditor's Office in a timely manner

Oversees vehicle titles and manages Exhibit B's for vehicle and equipment auctions or trade-ins

**Minimum Qualifications:**
Must be able to process employment applications job announcements, transfers, promotional processing, current vacant positions and background checks

Must update and maintain personnel and medical confidential files and documents

Must have a valid Texas driver's license

*The above statements are intended to describe the general nature and level of work being performed by people assigned to this classification. They are not intended to be construed as an exhaustive list of all responsibilities, duties and skills required of personnel so classified. Candidates whose disabilities make them unable to meet these requirements will still be considered qualified if they can perform the Essential Functions of the job with reasonable accommodation.*

| Office / Department | Human Resources Approval Date | Civil Service or Sheriff's Civil Service Approval Date | Commissioners Court or County Manager Approval Date |
|---|---|---|---|
| Management & Financial Service | February 9, 2016 | | October 1, 2011 |
| Facilities Management | | | October 1, 2013 |
| Bexar Heritage | September 11, 2018 | | October 1, 2015 |
| Public Works | December 19, 2016 | | December 23, 2016 |
| Economic & Community Dev. | | | October 7, 2017 |

NS0573

Form 302 (Revised 3/2017)

Bexar County, Texas
## EMPLOYEE STATUS FORM

INSTRUCTIONS: This form is to be executed by the appropriate individual(s) and submitted to the County Auditor's Office.
If the County Auditor's Office can execute its certificate hereon no further action is necessary. If not, the form will be returned
with the reason indicated.

Name Nancy A McClure-Soto     Employee # ▓▓▓ Department Management & Financial Service
Old PO Title/# Administrative Services Coordinator/30002454 New/Current PO Title/#
Position Section Management & Financial Services    Job Posting

**Effective Date or First Day/Last Day on Payroll** June   22   2020   M-F 10days

Please Check the Applicable Items:

☐ A: NEW EMPLOYEE   ☐ B: REHIRE   Select Employee Status    If part-time, indicate hours per week: _____
                                         *Timesheets required for all temporary employee's
☑ C: SEPARATION Retiring   Resign

ENTERED
JUN 23 2020
COUNTY AUDITOR

☐ D: CHANGE TO PRESENT EMPLOYEE

       Reason for Leave Without Pay

☐ E: PRESENT EMPLOYEE - Change in salary only _____ Step Pay/Level Select Step Pay Level   Date _____

               ◯ (TJJD fund) ◯ (gen. fund) ☐ AUTO # CELL
             Cost Center: _____

| | TABLE | GRADE | SALARY | LONGEVITY | Add'l Salary | BUDGET | Cert Pay | Cert Pay | ALLOWANCE |
|---|---|---|---|---|---|---|---|---|---|
| PROPOSED -- per mo. | | | | | | $ 0.00 | | | |
| PRESENT -- per mo. | E | 08 | 5784 | 110 | | $ 5,894.00 | | | |

-2947 +2720.31 ✓
34 ✓

LEAVE OF ABSENCES, AND OTHER INFORMATION       Hours

F. LEAVE OF ABSENCE WITHOUT PAY     Dates: _____
G. EARNED COMP TIME PAYABLE   Select Reason for Comp Time Payout
H. EARNED VACATION PAYABLE WITH FINAL PAYCHECK    8160.— ✓     240
I. EARNED SICK LEAVE PAYABLE WITH FINAL PAYCHECK    8160.— ✓   Total Accrued = 720 x 1/2= 240
J. EARNED HOLIDAY PAYABLE    16320.—
K. EARNED FLSA TIME PAYABLE   Select Reason for FLSA Payout
L. EARNED OVERTIME   Select Overtime Reason

| COLLECTIVE BARGAINING AGREEMENT ACTION BELOW | FIRST DAY | LAST DAY | DOLLAR AMT |
|---|---|---|---|
| Shift Differential Pay | | | |
| Duty Differential Pay | | | |
| Certification | | | |
| Education | | | |
| Critical Incident Response Pay | | | |
| Parking Allowance | | | |

All other changes:

CHECKED JUN 7 6 2020

I hereby certify that the above information is in accordance with the personnel rules.

_____     _____     _____     6/22/20
Signature of County Auditor     Date     Signature of Employer     Date

**BC 000007**

**BEXAR**  **COUNTY**

Resources Management
Management & Finance
101 W Nueva, Suite 900, San Antonio, Texas, 78204
210-335-2659 Office



Monday, June 22, 2020

Nancy A. McClure-Soto

Bexar County is in receipt of the attached notice reflecting Monday, June 22, 2020 as your retirement.
Your retirement is accepted, and will be recorded with Bexar County as a retirement the close of business, Monday,
June 22, 2020.

In Service,


Veronica Guevara
Risk Management Coordinator

En:    Retirement Notice, delivered to Human Resources 9:04 am, 06/22/20

BC 000009



June 22, 2020

I am retiring my position with Bexar County effective today.

Nancy A McClure — Soto
6/22/20

EE# 161356

BC 000010

Laptop with the service tag CH0X7S2 was loaned to Nancy Soto and has been returned to Bexar County along with the charging cable. She has no other county property. ID's and keys were already turned in.

Laptop & charger turned in

_____
Received by: (signature)

6-22-20
_____

Date

COPY



( (

Investigation of Accusations of Harassment and Video Recording

Date:   April 28, 2020
To:     Manuel Gonzalez, Human Resources Director, Bexar County
Re:     Workplace Incident — Budget Office, and Management and Finance Department

Prepared by: Ana Bernal, HR-HRIS Manager

On Wednesday, March 11, 2020 an investigation was begun involving a series of complaints regarding Ms. Nancy McClure-Soto, Administrative Services Coordinator for the Resource Management Department of Bexar County.

### The Complaints

In the complaints, colleagues of Ms. Nancy McClure-Soto allege:

1) Recording photo/video of coworkers
2) Intimidation
3) Causing dissention and discourse
4) Misuse of County resources
5) Disrupting the work environment

### Exhibits

1) Statement from Ms. Sylvia Diaz, Data Analyst – Compliance
2) Statement from Ms. Tanya Galtan, Budget Manager
3) Statement from Ms. Olivia Espinosa, Office Assistant IV
4) Statement from Mr. Manuel Leal, Government Relations Manager
5) Statement from Ms. Jasmine Leon, Analyst Budget
6) Text from Mr. Blake Meneley, Sr. Analyst Finance
7) Interview with Ms. Sylvia Diaz, Data Analyst – Compliance
8) Interview with Ms. Olivia Espinosa, Office Assistant IV
9) Interview with Ms. Tanya Galtan, Budget Manager
10) Interview with Mr. Manuel Leal, Government Relations Manager
11) Interview with Ms. Jasmine Leon, Budget Analyst
12) Interview with Mr. Blake Meneley, Sr. Analyst Finance
13) Written Reprimand to Ms. Nancy McClure-Soto, dated Friday, February 7, 2020
14) Video of reception foyer of Ms. Nancy Soto, Ms. Olivia Espinosa, and Ms. Jasmine Leon
15) Bexar County Human Resources, Employee Conduct, Confidentiality, Policy 7.5.04

### Investigation

Wednesday, March 11, 2020, written statements were shared with Human Resources for investigation. Following consultation with legal counsel, Human Resources assigned Investigator Ms. Ana Bernal, Human Resources Manager with scribe Mr. Alejandro Fabela, Sr. Human Resources Analyst. Interviews occurred the week of April 6th, 2020.

BC 000012



## Ms. Nancy McClure-Soto Interview

Initially an interview was planned for 9:00 a.m., Thursday, April 16, 2020 via WebEx video conference with Ms. Nancy McClure-Soto. Questions were developed and agreed to by investigator and counsel. Ms. McClure-Soto was informed by Human Resources, by phone, and in writing, of the interview. Following two emails from Ms. McClure-Soto requesting details on the investigation and Ms. McClure-Soto's absence from the WebEx meeting, the investigator was called at 4:00 p.m. by Mr. Jason Jakob, attorney representing Ms. McClure-Soto. At 4:45 p.m., Mr. Jakob emailed Ms. Ana Bernal, Bexar County Counsel, Ms. Kristin Bloodworth of the District Attorney Civil Division responded Friday, April 17, 2020 at 3:06 p.m. to Mr. Jakob including questions planned for interview. As of the close of this report, Tuesday, April 28, 2020, no response has been received from Ms. McClure-Soto or her representation.

### Interviews

Ms. Sylvia Diaz, Data Analyst - Compliance shared she has felt uncomfortable for weeks around Ms. McClure-Soto, who made obvious her recording of colleagues including one incident when she told Ms. Alexandria Millan, Budget Analyst, "start recording, here they come." Ms. McClure-Soto has approached Ms. Diaz, "trying to coerce me to go against management."[1]

Ms. Tanya Galtan, Budget Manager shared in a written statement events since February 6, 2020 where Ms. McClure-Soto was openly discussing with Ms. Alexandria Millan, Budget Analyst, a confidential matter. Ms. Galtan shared concerns with Ms. McClure-Soto's access (technology, calendars and keys) to information, which has been used in a "manipulative manner" to intimidate and antagonize colleagues in the office.[2]

Ms. Olivia Espinosa, Office Assistant IV, stated Ms. McClure-Soto creates an environment of "tension and stress" making people "uncomfortable" by restricting common areas from coworkers like the supply room and requiring logins/passwords for all staff workstations. Ms. McClure-Soto speaks to others in such a way that is "aggressive" and tries to "control a lot of stuff". Ms. Espinosa witnessed the confrontation between Ms. Leon and Ms. McClure-Soto. Ms. Leon stated to Ms. McClure-Soto, "I know what you're doing", in reference to recording coworkers. Ms. McClure-Soto brought Ms. Espinosa into the confrontation by trying to get Ms. Espinosa to agree she was not recording. Ms. McClure-Soto followed Ms. Leon into the elevator lobby and replied, "I'm not taking pictures of you. Do you have something to hide?" Ms. Espinosa could sense Ms. McClure-Soto was "adding fuel to the fire", egging Ms. Leon on.[3]

Mr. Manuel Leal, Government Relations Manager, stated the office has been "very tense, everybody is on edge, they are fearful of being recorded verbally and through video" by Ms. McClure-Soto.[4]

Ms. Jasmine Leon, Budget Analyst, shared Ms. McClure-Soto intimidates colleagues in Budget by either recording or simulating recording colleagues with her personal phone. Ms. Leon was prompted to share her statement following a confrontation with Ms. McClure-Soto that began in the 9th floor foyer to the elevator lobby. Ms. Leon stated, Ms. McClure-Soto has approached her before during work hours to file

---

[1] *See exhibit 7, Interview with Ms. Sylvia Diaz*
[2] *See exhibit 2 & 9, Statement and Interview of Ms. Tanya Galtan*
[3] *See exhibit 3 & 8, Statement and Interview of Ms. Olivia Espinosa*
[4] *See exhibit 4 & 10, Statement and Interview with Mr. Manuel Leal*

BC 000013



EEOC (Equal Employment Opportunity Commission) claims, mentioning her personal disability (confidential)[5], and encouraging her to join in a coup.[6]

Mr. Blake Meneley, Sr. Finance Analyst, shared concerns with Ms. McClure-Soto supporting an environment that is "unusual, a little tense" and absent of trust.[7]

## Findings

Recording photo/video of colleagues – The County camera found directly behind reception desk of the Budget Office, and Management and Finance department (9th floor of Paul Elizondo Tower) shows Ms. McClure-Soto in the act of photographing and/or video recording. Ms. McClure-Soto is on County camera photographing and/or video recording using her personal device for over 20 minutes on the 9th floor foyer. The video timeline is detailed below.[8]

- 7:49 a.m., Ms. McClure-Soto begins her day at Ms. Espinosa's workstation,
- 7:52 a.m., Ms. McClure-Soto is reviewing video from her personal device on the County workstation under Ms. Espinosa's login.
- 7:53 a.m., Ms. McClure-Soto appears to have some sync/interface connection with her personal phone and the County computer workstation reflecting the transfer of information, images and video.
- 7:55 a.m., Ms. McClure-Soto passes the workstation over to Ms. Espinosa stepping away shortly for a minute to then sit at the station next to her.
- 7:58 a.m., Ms. McClure-Soto sets her position at the reception facing her personal device to record the elevator lobby.
- 8:01 a.m., Ms. McClure-Soto is seen using her personal device to monitor the elevator lobby area and her personal phone screen shows Mr. Armando Salazar's movement, as he enters into the reception lobby then Ms. McClure-Soto takes a photo, evidenced by the phone blinking.
- 8:02 a.m., Ms. McClure-Soto is seen using her personal device to monitor the elevator lobby area and her personal phone screen shows Ms. Jasmine Leon's movement, as she enters into the reception lobby then Ms. McClure-Soto takes a photo, evidenced by the phone blinking.
- 8:08 a.m., Ms. McClure-Soto exits reception to stand in foyer and proceeds to photograph/record foyer walls.
- 8:09 a.m., Ms. McClure-Soto is recording a wall in the foyer and continues to record turning her direction towards the elevator lobby the moment Alexandria Millan and Blake Meneley walk in.
- 8:09 a.m. – 8:13 a.m., Ms. McClure-Soto remains in the reception lobby photographing/video recording using her personal device, pacing and examining the space.
- 8:13 a.m., Ms. McClure-Soto has a minute long confrontation with Ms. Leon, where she pursues Ms. Leon from the foyer to the elevator lobby three times following Ms. Leon's statement "I know what you're doing."
- 8:14 a.m. - 9:20 a.m., Ms. McClure-Soto remained at the reception area.

Work Environment – All who shared statements and were interviewed described the work environment being "uncomfortable", "intimidating and antagonizing", "tense and stressful", "on edge", "fearful and unusual", "fearful of retaliation" due to Ms. McClure-Soto's behavior and confrontation with

---

[5] *See exhibit 15, Bexar County HR Policy 7.5.04*
[6] *See exhibit 5, 11 and 14 Statement, Interview with Ms. Jasmine Leon, and Video of reception desk and foyer*
[7] *See exhibit 6 and 12, Text and Interview with Mr. Blake Meneley*
[8] *See exhibit 14, Video of reception desk and foyer*

BC 000014



colleagues.[9] Ms. Espinosa states the following, "scared for when she comes back and the controlling behavior continues", "she retaliates against me, that's what I'm terrified of".[10]

Misuse of County Resources and Dissention – Ms. Tanya Galtan witnessed Ms. McClure-Soto discussing out-loud with Ms. Alexandria Millan of a confidential personnel matter during regular work hours.[11] Ms. Olivia Espinosa has shared practices like employee logins/passwords as well as restricting spaces and resources from coworkers.[12] Ms. Sylvia Diaz was asked by Ms. McClure-Soto during work hours to join her in "advocating for" other staff members "involving management".[13] Ms. Jasmine Leon was told by Ms. McClure-Soto during work hours to file an EEOC complaint and "join her in what she is trying to do".[14]

Insubordination – Friday, February 7, 2020, Ms. McClure-Soto had been issued a written reprimand where she was instructed to cease all conduct which is detrimental to or has an adverse effect on the office or department. The notice specifically stated "you spent a considerable amount of work time" conducting actions that "negatively impacts your ability to productively interact with other employees and strains the work environment."[15] This conduct has continued, evidence by using personal device (mobile phone) to record colleagues, discourse and confrontation.

## Conclusion

Five employees (Ms. Sylvia Diaz, Ms. Olivia Espinoza, Mr. Manuel Leal, Ms. Jasmine Leon and Mr. Blake Meneley) corroborated they witnessed Ms. Nancy McClure-Soto holding her phone in such a manner, it appeared as though she was recording her colleagues entering and exiting the workspace during work hours. Video from Bexar County camera corroborates the allegations of Ms. McClure-Soto recording/videoing colleagues including Ms. Leon who she later had a verbal altercation with.[16] Ms. McClure-Soto does conduct acts, such as recording/videoing/photographing colleagues, which are detrimental to and have adverse effect on the office and make colleagues feel fearful and intimidated by her. Ms. McClure-Soto has created conflict with colleagues, openly discussed confidential employment matters and sought to coerce others to participate in a coup against management. Ms. McClure-Soto was previously advised and disciplined to improve her behavior and cease "inappropriate communications" within the workplace. The "inappropriate communication" continued as evidence by Ms. Galtan and Ms. Leon hearing Ms. McClure-Soto mention confidential items which include a personnel matter and a colleague's disability.[17] The individuals interviewed work in close proximity and feel Ms. McClure-Soto is confrontational, intimidating, retaliatory and the source of distrust.

[9] See exhibits 7, 8, 10, & 12, Interviews with Ms. Diaz, Ms. Espinosa, Mr. Leal, and Mr. Meneley
[10] See exhibit 3, Statement of Ms. Olivia Espinosa
[11] See exhibits 2 & 9, Statement and Interview with Ms. Tanya Galtan
[12] See exhibit 8, Interview with Ms. Olivia Espinosa
[13] See exhibit 7, Interview with Ms. Sylvia Diaz
[14] See exhibit 11, Interview with Ms. Jasmine Leon
[15] See exhibit 13, Written Reprimand
[16] See exhibit 14, Video of reception desk and foyer
[17] See exhibit 8 & 9, Interview with Ms. Leon, and Ms. Galtan

BC 000015

W(     place Incident – Budget, Management & F(     ce
Sylvia Diaz, Data Analyst – Compliance
Tuesday, April 7, 2020; 9:00 a.m.

Welcome, we selected to conduct this interview by means of WebEx video conference due to the pandemic COVID-19, and are representing Bexar County as a whole which includes listening to the complainant, and other members of the department.

This conversation is confidential and focused on the facts. Your disclosure today is taken as fact. Alejandro Fabela, Sr. HR Analyst will be taking notes of our conversation and I will prepare a report of our conversation as part of the County's effort to understand the allegations. An audio or video recording will not be done as part of this interview experience. We are not recording; we expect that you are not recording this by audio or video. If you are recording, that recording is not sanctioned and is not authorized.

When asked if you have witnessed an event, we are asking if you personally heard or saw the event take place first hand. We are not asking for information given to you by a third party.

As we begin, can you verify you submitted the email Nancy Soto videotaping me without my permission? Yes. Do you have a copy of your email in front of you? Yes. Is this a true and correct copy of the email? Yes. Do you have anything you would like to add to the email? Yes, I want to add that this was happening for more than a week. Actually, it was happening a couple of weeks but it was very obvious this time, when this happened.

Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department and Work Location)
Sylvia Diaz, I work in the Budget Office, my cell phone ████████, my office number is ████████ and email is
████████

1. Can you share your intention in submitting the email?
   My intention was just to inform Tina and Seth that this was taking place at work. We were walking in and out of the office and Nancy had her phone obviously recording us, or recording different people. I was going, taking the elevators down and that's when I noticed that she was very obvious that she was recording and recording me coming into the office.
   a. What would you like as an outcome?
      Whatever is necessary because everybody right now is using cellphones to record. I mean, there are all kinds of recordings going on. I just don't want to get in trouble because of those actions. I don't want them to have a negative effect on me. Because it's a freedom of speech but it's very uncomfortable and it's whatever the manager wants to do.

2. Did you share your concern with your supervisor?
   Yes

3. Who is your supervisor?
   My supervisor is Tina Dean-Smith

4. Would you share what took place in reference to your complaint?
   I sent Tina this email and then she came into my office and we discussed it. And she just told me that it had gone to HR and it was going to the District Attorney's office.

5. Were there any witnesses that saw what occurred?
   That was occurring in the office not just particularly with me. But in reference to this complaint: No, just me and Tina. I was walking in alone and leaving alone, when I was coming in from lunch one time with all the group, she was there recording us. And, but no, nobody knows about this complaint. Just me and Tina. I sent it to Tina and she came to see me. What is Tina's Full Name? Tina Dean-Smith. And her title is? She's the Assistant County Manager.
   a. Would you name them (first and last name)?

1

**BC 000016**

W[...] [...]lace Incident -- Budget, Management & F[...] [...]ce
Sylvia Diaz, Data Analyst -- Compliance
Tuesday, April 7, 2020; 9:00 a.m.

6.  Would you explain what you mean by "recording our every move in this office"? She's holding up the phone, she has her phone she's always constantly holding up her phone walking around recording. Or she was making it very obvious as we were walking in the hallway walking into the elevator. She was leaning over with her phone in her hand. At one point she told Alex Millan, "start recording, start recording here they come". I was like why are you doing that? Why are you recording? It got to the point where other employees were telling her, "You are not authorized to record me". It's just been brewing and brewing. And I felt very uncomfortable with her recording me coming and going. Had you observe Ms. Soto taking pictures or videoing other people in the office? Yes. Have other people in the office told you that Ms. Soto was taking pictures or videoing taping people in the office? Yes.

7.  Have you witnessed Ms. Soto keeping track of people in the office at any other time?
    Well she would sit at the front desk and see what time everyone was coming back from lunch, leaving or she would either in the morning checking to see who was getting there on time. I understand that this is part of her job because I can imagine management has asked her to keep track of people who are tardy in the morning, or taking extended lunches. Those are my assumptions, but holding up the phone and videotaping are just too much.

8.  You mention "telling Alex", who is Alex and what department does Alex work at?
    Alex Millan is a Budget Analyst and she works on the ninth floor, Budget Office.

9.  Were there any witnesses that heard the statement you heard about Nancy Soto telling "Alex to hurry up and start recording us getting off the elevator coming in from lunch"? Well, no. No.
    a.  Would you name them (first and last name)?

10. Where exactly was Ms. Soto standing when the incident occurred? She was sitting at the front desk facing the hallway; the entrance hallway. Where the elevators are at on the 9th floor. So she was behind the counter? Yes, and the counter is up to the waist.

11. Please explain the statement, "Am I her next target because I did not agree to join her in coup to bring down our County Management"?
    Yes, I had been asked by Nancy to help her advocate for Allen and for Audrey. Allen Castro and Audrey Cavazos. When their incidents were happening, she was like, we need to help Allen and you need to help me because all this was involving our management. And I told her no, I've been with the county for 28 years. I'm not going to ruin my career because of he said she said. If he has a problem he needs to go to the Commissioners, and you know it had been a while that she had been telling me to help her go against management and because of Allen Castro's incident, she wanted me to back him up and I told her no. I didn't want to get involved with that. After that, she started acting different. I just stayed quite, I don't want to be involved with all the "Chisme" she kept coming and asking what's wrong with you and I said nothing. I'm just coming to work and doing my job and that's it. Had Ms. Soto approached you at any time to join her in any actions? What actions has Ms. Soto taken that you think have been made "to bring down our county management"? For one, she had a lot of access to, she was privy to information, a lot of personnel issues, just everything would go through her. And she would tell us what would go on at management meetings. I never, I told her that's part of the job, they have to get after us, they have to correct staff, we cannot be going against management just because they want to do a corrective action on us. You know if we know we are wrong, take responsibility for it. And I just feel like she was trying to coerce me to go against management with her. To join her to go against management to try to bring management down.

12. Please describe your working relationship with Ms. Soto on a daily basis. Has this relationship changed in the last year?
    Yes. Nancy has, I mean I had lunch with Nancy, but I didn't fully trust her because we were enemies at the beginning when she came on to the Budget Office. But she came and told me when I moved to Tina's department that she knew

2

BC 000017

W    nlace Incident -- Budget, Management & F|    ce
Sylvia Diaz, Data Analyst -- Compliance
Tuesday, April 7, 2020; 9:00 a.m.

we had our differences but she, that I would have to go through her for everything and that we would have to leave the past in the past. So that's what I did. But during the years, she was very angry with Seth and angry with Tina and was always looking for ways to, you know, saying that their children were going to suffer and she was going to bring the department down. And I just, like I said I've been here for a long time. And I don't like to be in gossip. And the past year she's been going through some kind of mental issues, kind of, I don't know, she's totally changed and I just don't like talking to her. I don't want to be associated with her, and I don't want to be involved with what she's doing. So the only thing I do is say good morning to her and I only talk to her about business. I don't want her to be sitting in my office and talking to me for hours, I don't want any of that. I'm trying to refrain myself from getting involved with her.

13. What is the current work environment like in the Budget and, Management and Finance Department? It's very quiet. It's just sad, we can't be ourselves and laugh out loud. I mean everything is scrutinized so bad we can't be ourselves. Was the work environment in Budget and Management and Finance Department always like this? No, it's only been a few months that we've been like that, not wanting to be on the news, not wanting to be, we don't want reporters hounding us because we have stayed out of the limelight and now thrusted into the limelight and we don't know who they are going after next. It's been a horrible experience.

14. How have Ms. Soto's actions affected your work environment?
Well, I'm afraid of her. I'm not afraid of her, I just fear her reaction or her whatever she's trying to do. It's just creating a hostile work environment, and it's creating a lot of animosity and it's not a good environment right now because we have a lot of stress. Unnecessary stress.

15. What do you mean by "I am not going to tolerate it anymore" in your complaint? What actions has Ms. Soto taken toward you that you cannot tolerate anymore? Well, I don't want to tolerate this behavior anymore. I'm sick and tired of it. I get there at 7:15-7:30 and you are afraid to even make your breakfast there. Or because you know am I going to be at my desk on time; not be over 5 minutes or 3 minutes in the breakroom fixing my tea. It's not good, It's not a good environment because we can't be ourselves; I know I can't. The recordings and just you know, trying to listen in. She's in the hallway, you're having a conversation or you're on the phone, or you look out the door and she's there hanging out. I mean it's just scary. It's just a weird environment right now. Because nobody is really telling her anything anymore. We're not going to her like we were before. Everything used to run through her. If we were having a problem, issue, running late, calling in, it's not happening like that anymore. And I just feel like she's looking for -- even she is like why is everyone so quiet. But that's how she wants it. She's gloating in it, she's enjoying it.

16. Do you have any other information you think would help in investigating your complaint?
I do, but it doesn't pertain to this.
  a.  Do you know of any evidence, not already covered so far, that you believe supports your complaint?
      Videotaping there at the office, how there is a video running all the time so you could see what's happening. I don't know if the video has audio but you know the video should show what's going on in that office. What video? We have video cameras in the hallway. Security systems that are recording.
  b.  Other than the people referred to so far, who else do you believe we should talk to for our investigation?
      I think you should talk to Pearl Jauregui. One time she did walk into Pearl's office videotaping her and Pearl said, "you can't video tape me it's before 8:00 and I don't give you permission to tape me". And also, she would take pictures of us while we were eating during lunch. Secret pictures, secret recordings as we were conversing. This has been going on for a while. You know, we were talking about family, you're talking about problems. What was recorded? I mean we don't know. It's like you're talking about politicians; you're talking just in general different things. We are not gossiping about the office, we are talking about other things, other things that are going on in the world, other things that are going on in the city.

3

BC 000018

W͏ lace Incident – Budget, Management & F͏ ce
Sylvia Diaz, Data Analyst – Compliance
Tuesday, April 7, 2020; 9:00 a.m.

This concludes this interview. If any further pertinent information comes to mind, please contact us. If you feel that you have been retaliated against in any way for coming forward with this complaint, please notify County HR immediately. As a reminder, we ask that you keep this conversation confidential and know that we are taking your complaint of very seriously.  Thank you.

BC 000019

## Bernal, Ana

| | |
|---|---|
| **From:** | Bernal, Ana |
| **Sent:** | Monday, April 06, 2020 2:52 PM |
| **To:** | Gaitan, Tanya |
| **Subject:** | Workplace Incident - Budget, and Management and Finance |
| | |
| **Importance:** | High |

Tanya,

At 1:00 p.m. Tuesday, April 7, 2020 via WebEx you have an opportunity to speak with myself, Ana Bernal, HR-HRIS Manager who is conducting interviews on behalf of the Budget Office, and Management and Finance. You can expect to meet with myself, Ana Bernal and my colleague Alejandro Fabela, Sr. HR Analyst via WebEx.
Your supervisor has been informed of your absence on Tuesday between the hours of 1:00 p.m. and 2:00 p.m.


Ana M. Bernal
HR-HRIS Manager
Bexar Co. Human Resources


1

W      lace Incident – Budget, Management & F|      ce
Tanya Galtan, Budget Manager
Tuesday, April 7, 2020; 1:00 p.m.

Welcome, we selected to conduct this interview by means of WebEx video conference due to the pandemic COVID-19, and are representing Bexar County as a whole which includes listening to the complainant, and other members of the department.

This conversation is confidential and focused on the facts. Your disclosure today is taken as fact. Alejandro Fabela, Sr. HR Analyst will be taking notes of our conversation and I will prepare a report of our conversation as part of the County's effort to understand the allegations. An audio or video recording will not be done as part of this interview experience. We are not recording; we expect that you are not recording this by audio or video. If you are recording, that recording is not sanctioned and is not authorized.

When asked if you have witnessed an event, we are asking if you personally heard or saw the event take place first hand. We are not asking for information given to you by a third party.

As we begin, can you verify you submitted the email in reference to Hostile Work Environment? Yes, I have it right in front of me. Do you have a copy of your email in front of you? Yes. Is this a true and correct copy of your email? Yes.

Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department and Work Location) How long have you been working for the County? My name is Tanya Galtan, I am a Budget Manager for the Budget Department in the Resource Management Department. I work at the Paul Elizondo tower. My phone number is ▓▓▓▓▓▓▓ I've been working for the county since June 2007, almost 13 years.

1. Can you share your intention in submitting the email?
   My intention is just the concern, that me and my team and the entire department is having. The best way I can describe it at work right now when we were at the office, is stalking. I'm trying to act in a professional way as much as I can.
   a. What would you like as an outcome?
      I'm not sure, I don't know what expectation I have of the outcome to be quite honest with you. I just wanted to make my management aware of it. Because it's just, I dread coming into work every day because of the environment that we are in. I feel like my team is working in the same environment. I've had a couple of them approach me with concerns about the work environment that they are in right now so I just wanted to bring it to Tina's attention. I honestly don't have any expectations besides maybe talking to the people involved just to make them aware. I don't even know if they are aware that they are doing it or if it's on purpose and for me it seems like it is but I don't have any expectations really, I just wanted to let my managers know. I don't know how it will get resolved.

2. Did you share your concern with your supervisor?
   Yes, via this email. This is the first time.

3. Who is your supervisor?
   As of right now, it's Tina Smith-Dean. At the time, I'm not sure if Seth McCabe was here but he's been out of the office but typically it's Seth McCabe. Assistant County Manager is Tina and Seth is the Budget Director.

4. You mention, "me and my staff are working in a hostile work environment".
   a. How many employees report to you? 6

   b. What is their name and position title?
      Paul Matye, Sr. Budget Analyst; Joseph Brantley, Sr. Budget Analyst; Armando Salazar, Sr. Budget Analyst; Thomas DeCesare, Budget Analyst; Alexandria Milan – Budget Analyst; Jasmine Leon, Budget Analyst

   c. What is your definition of a hostile work environment?
      I don't know where to start. I guess I'll just start on how I feel. I feel like I'm constantly being watched and followed and antagonized here at work. Specifically, just things that are said up and down the hallway; loud enough for me to hear. Most of the time I can ignore it but it was becoming so distracting to my work that I just had to say something. I feel like everything I do, to manage my team, it's put into question where it's like a defensive thing from some of the staff. And there are descriptions on specific events that have happened in the month of February that I can expand on if the email is not clear enough. I'm just uneasy at

1

BC 000021

work is the best way I can describe it. There's no verbal altercations or name calling like that, it's more of a when I walk out of my office, someone follows me. When I leave one of my manager's office one person is standing out there like casually doing something. I feel like I'm constantly being followed and watched. That's the best way I can describe it. Our doors are closed in the hallways, no one communicates between each other, if they do the doors are closed. It's just really awful at work when we are in the office.

5. What makes you think you work in a hostile work environment?
Some of the examples that I provided for instance the first one that happened on February 6, Nancy walked by the office and at first I thought she was talking to me but she was talking so loud but she was kind of turning behind her and she passed by my office and said, "Gosh, they make it so easy", But I didn't know what she was talking about so I just let it go. Five to ten minutes later I get up to go to the copy room to get something from the printer, when I reached to the color printer I saw my calendar printed out along with my managers' Tina and Seth's calendar printed out. And when I was there looking at them, I was liked what is this. And Nancy came in and grabbed them from my hand and said, "those are mine, thank you". And then she just walked away. I didn't say anything to her, That's probably the most confrontation that I've had with Nancy since I've worked with her. But really nothing was said. Another example is I feel like I have to lock my door, We had to get our locks changed and I requested to Tina to get my lock changed. I leave my purse in there, I don't bring food to work anymore, I just don't trust some of the employees that are there. And the reason I asked for my door to be locked is, I usually just close my door and you can just open it because I always leave my door open when I'm there. So the Staff knows that I'm there and when it's closed they know I'm not there. When I came back in one morning, my trashcan was kind of put out of place to an area where I would have to walk through to get to my desk. So my assumption was someone was in my office for whatever reason. I have nothing to hide people can go in and look the personnel files if I do have anything but just the fact that someone was in my office without me there just kind of makes me uncomfortable and I leave my purse and my personal belongings, my phone sometimes, my computer sometimes, now I lock it. Even if my doors locked I just feel invaded, that's the best way I can describe it. I don't have any proof of who was in my office, or anything like that, I just know someone was in my office. I have an employee, Alexandria Milan who currently has an active EEOC complaint, and she's come into my office, which I don't know how to handle this because it's the first time I've dealt with this type of personnel issue. But I feel like I don't discuss EEOC complaints with Alexandria Milan unless Tina brings it up or with the Civil District Attorney in charge. Other than that I don't talk about it in the office or with other employees, I don't talk about it at all because I think it's inappropriate. Alex came into my office and she asked me, "Are you going to my thing", and I'm just like I didn't know what thing she was talking about. She's like, "My EEOC, I need to know who's going", I told her, "I don't know; I haven't been directed to go. Why don't you call EEOC", and she said, "Well I don't know, they said they don't know, that's why I'm asking you". And I'm just like, "I don't know Alex, I haven't been directed to. I don't know what to tell you". She left and then another time I was walking from Seth McCabe's office and I have to pass the front desk, the entrance to our department, Nancy Soto was sitting in the front and Alex was standing up against the wall so I had to walk in between them. She didn't move forward so I had to walk between them and as I was walking by, Nancy asked a question and I didn't understand it at the time and then Alex goes, "Well at the EEOC I talked to this person so that's the person you need to be talking to and they will find out soon enough". And then walked back to her office after me, quite a few times, specifically the last few weeks, the last month. I guess it could be February, Alexandria it could be coincidence, I just feel like it's a little unusual like consistently when I would leave. I would close my door so it was obvious I was leaving, she would get out of her office and she would follow me to the bathroom. Specifically, on the day that the occurrence happened between Jasmine Leon and Nancy Soto, she was like 2 ft. behind me. She would be behind me like stomping right behind me. I completely ignored her, Went to the bathroom, minded my business, it didn't sound like she went to the bathroom. And when I left, she followed, no words were said. No verbal confrontation happened I just looked down and washed my hands, and walked out. I don't feel like I have to be like that with one of my employees or with my manager or with any co-workers. I just feel like I'm just like constantly like what is Alex going to do next, what is Nancy going to do, I have my employees who are scared to breathe in the office because they feel like things are going to be twisted or there is just not a lot of trust in the office. Those are a handful of things that I can think of off the top of my head. Do you have special concerns about your staff being in a "hostile work environment"? Yes, I do.

6. Who is Nancy Soto, what is her position title and to whom does she report to?
Nancy Soto is the Administrative Supervisor for the Resource Management Department. She was reporting to Tina but I believe she is reporting to Veronica now. Veronica Guevara is the Risk Coordinator or Risk Manager.

BC 000022

W    )lace Incident – Budget, Management & F[    ce
Tanya Galtan, Budget Manager
Tuesday, April 7, 2020; 1:00 p.m.

7.  Why do you think basic information such as your calendar can be used in a manipulative manner?
    I have no idea. I really don't know. The only thing I think of, is when I'm out of the office. I have no idea. They've come
    up with some pretty creative ways to try to look for anything that I'm doing wrong, and I'm not going to say that I'm
    the perfect employee by any means but I really have no idea. Nancy had access to our timesheets at the time. She's
    the one that's been inputting our hours, reviewing our time sheets, so I don't' know if she was checking to see if my
    timesheets are accurate or what. I really don't know.

8.  Who is Alexandria Milan, what is her position title and to whom does she report to?
    Alexandria Milan is a Budget Analyst in the Budget Department and she reports to me.

9.  Why do you think Ms. Soto said, "Gosh they make it so easy" to Alexandria Milan? What do you think Ms. Soto meant when
    she made this statement? It was five to ten minutes before I saw the calendars, that incident where she took it out of
    my hands while I went to the printer so I'm assuming it has something to do with that but, again I'm assuming events
    that are happening piece melding in front of me.

10. On February 6, you notified Tina Dean-Smith, Asst. Co, Mgr, you would no longer share your calendar with your employees
    and have recently begun to lock your office door. Would you explain the reason for taking these actions?
    I just don't trust my personal belongings by themselves. I even talked to Dan Curry who is the Facilities Management
    Director to see if there are cameras by my car. I just feel like I'm being stalked. That's the best way I can describe it.
    Nancy parks pretty close to me in the parking garage. I try to avoid her as much as I can, not that I feel like she
    would physically do anything but I just, I just don't know. It's something every single day when we were in the office
    it's something, some kind of incident or some kind of email. It's just every day with them. There's never a day where
    I didn't get a concern from one of my employees or if I felt like I was in a peculiar situation. It was just, I'm happy to
    be working at home right now. I feel safe. I'm not kidding. I don't want to play the victim. My concern is just I hate
    going to work. I hate it. I know my employees are in the same situation that I am. I'm very big on, we spend a lot of
    time in the office. Majority of our day is with our co-workers and I just feel like, from the start you can ask any of my
    managers, my goal is to always to create a healthy work environment for my Analysts. Fun, our job is stressful, we
    try to make light of the situation as much as we can and this environment just compound onto what we are already
    stressed out about. I'm not looking forward to the budget process. If we do have one, the way things are going.

11. You mention, "paranoia" and "feel uncomfortable", what or who makes you feel this way?
    Nancy Soto and Alexandria Milan make me feel uncomfortable. When they walk by, when they come to my office,
    when I get an email, when they call, it's like knots in my stomach.

12. When did you start to feel "paranoia" and "feel uncomfortable"?
    Probably, December 2019; January 2020. It started getting really bad in February. Really bad, where it was to the
    point where, I've worked here for 13 years, I've had difficult people I've worked for and worked with and I've never
    been compelled to write an email. That's it, I can't, I need to let my manager know, it's just wanted to report it.

13. In the email you state, "Nancy or Alexandria try to tamper with it". What do you mean by "tamper with it"?
    a.  Why do you think they would "tamper with it"?
        Oh just like I said earlier, I don't feel comfortable with bringing my food to work or leaving my purse in my
        office. Because like I told you, the only two people I would imagine to try to access my office at this point,
        it's just speculation, is either Nancy or Alex and it might be my paranoia but I just don't feel comfortable with
        them being my personal belongings.

14. What is it in your workplace that makes you feel "unsafe at work"?
    I just feel like I'm being stalked. It's just the best way I can describe it. The more specific thing is, just being followed
    into the bathroom the last few weeks before we were working at home. It wasn't' happening but in February right
    before maybe a week or two after what happened between Jasmine and Nancy it was happening maybe a couple
    times a week. It's not just me that has experienced it, I've had other employees, I don't want to speak for them but
    there are other employees who have felt someone following them into the bathroom, Alex specifically, for whatever
    reason.

3

BC 000023

W[...] [...]lace Incident – Budget, Management & F[...] [...]ce
Tanya Galtan, Budget Manager
Tuesday, April 7, 2020; 1:00 p.m.

15. When did you start feeling unsafe in your workplace?
   Around the time when I sent the email, a week or two before that, right when I changed my lock probably which was beginning of February. Two weeks before I sent this email, that's when I started getting concerned. This is becoming a bigger problem not just a disagreement with an employee.

16. Have you ever felt unsafe in your workplace?
   I wouldn't say physically unsafe. I was just more concerned with my personal property being tampered with. I just want to be proactive. I just wanted to prevent as much as I could.

17. You mention Alexandria Millan approached you about the EEOC mediation and you thought that was inappropriate because of the pending EEOC complaint. You also mention it made you "uncomfortable".
   a. Why did you feel uncomfortable with the question?
      I think it was because she hadn't spoken to me about it verbally. Most of the communication was done through the EEOC or the attorneys. I've never dealt with any EEOC complaint before so I just wanted to make sure that it was maintained. Like the avenues were maintained like they had been. I don't know what her intention was coming in and asking me if I was going to be there. It was kind of like a casual conversation as if we were going to have lunch or something. She was like, "hey, are you going to my EEOC". The EEOC doesn't specifically say me, it was kind of like a general complaint, a male staff, I'm assuming she meant Seth McCabe. And just generally, it wasn't something towards me specifically. I just want to maintain the direct avenues we'd been having instead of having casual conversations about it. I just found it inappropriate for her to just come in and ask, "are you going or not". I don't know why she would need to know that.

18. You mention thinking that Ms. Millan has followed you into the bathroom several times during the month of February. You also mention you presume she is doing this to see if you speak with her.
   a. Is this a true statement? Why do you think she would take such actions?
      That is true; I don't know. I don't know why she would do it. It just seemed unusual to me. It didn't seem like she was going to the bathroom. It seemed like she went in to go in and it was quiet, and when I would leave, it was like, what I did she would do. Tracking and she did it more than a couple of times. For me it was suspicious. I felt it was aggressive is the best way I can describe it.

19. You also mention feeling uncomfortable speaking with her one on one and alone.
   a. Is this a true statement? Yes. Why does speaking with her make you uncomfortable? She is recording meetings. I have nothing to hide. I just find it kind of unusual to record a conversation with someone when they are unaware of it. I don't know how Alex is going to react. Typically, when she receives bad news whether she didn't get promoted or she got a performance review and we provided feedback she usually reacts very aggressively. She will say that we are lying and she won't be signing anything. Her initial reaction to things is kind of unprofessional at time, and that is why I am nervous to be around her at times, when we have conversations without having someone there as a witness.

20. You mention each time you go to Tina Dean-Smith's office Nancy Soto is in the supply room and you assume she wants you to know of her presence.
   a. Is this a true statement? Yes.
   b. Where is the supply room in reference to Ms. Dean-Smith's office? Why do you think Ms. Soto wants you to know of her presence when you are speaking with Ms. Dean-Smith?
      The last few weeks, like 99% of the time when I go into Tina's office every time I leave Tina's office and the door directly across the hall from Tina's door is the office supply room's door, Nancy is always in there. She is not there when I get there but she is when I leave. I walk in and the conversation can be heard because it is an office even if you have the door closed. Alex does the same thing. One of the times I went to the bathroom, I left my office when I walked out I saw Alex at the end of the hall way on the other side. I walked to the lobby to get to the bathroom, and she walked around and existed the exit door by Seth's office, which is the same hallway as the bathroom so when she saw me go into the bathroom she went straight to the bathroom. I thought it was unusual that she walked all the way around just to go the bathroom. I think it's an

4

W[   ]lace Incident – Budget, Management & F[   ]ce'
Tanya Galtan, Budget Manager
Tuesday, April 7, 2020; 1:00 p.m.

intimidation factor, like I am watching you. She is trying to hear the conversations we are having, I'm not sure why she is doing it. It could be a complete coincidence but it's nearly every time I go into Tina's office. I don't know you would have to ask her.

21. You mention you have contacted Facilities Director to assure yourself if the cameras in the parking garage are functional as a precaution in case you are approached by Ms. Millan or Ms. Soto

    a. Is this true? Yes. Why did you take these actions? I don't want to be approached by them outside of the office especially if it has something to do with personal issues regarding; I don't manage Nancy so I'm not sure what her end game is to helping Alexandria. I know Nancy has approached one of my other employees a few months back to file an official complaint against management. So I think Nancy is on this crusade to file as many complaints as she can. I don't know what Nancy's; like why would she want to involve my staff. Because of that situation, anything outside of the office I try to cut it out. If there is not a witness in the room with either one of them, I do not feel comfortable with them by myself. That is why I asked Dan to see, just in case something comes up like if they approach me. They never have, but if they approach me there is proof that I was trying to avoid it and leave.

22. You also mention Alexandria Millan has mentioned in the past of a physical altercation she had at a bar with a man. And although she has not done this to you, you wish to have it on record in case a physical altercation occurs with you or something were to happen to your property.

    a. Is this true? Yes. When and what did she tell you about this incident? I couldn't tell you when it; like a casual conversation she went out to drink to a bar which is normal, and a guy had harassed her and she said she reacted physically and tried to fight him. Alex is a very feisty person, she has never done anything physical to anyone that I am aware of nor to me. Again, this is just me being precautious. I don't know what people will do when they get pushed to their limit. It seems like things are tittering in the office, I just don't know what she is going to do next. I just wanted to make sure, if there was something to happen that there were measures taken to prevent it as much as possible. To show the truth.

    b. What property are you speaking of? My purse, my dad's paintings, personal things in the office. What is your concern in regard to there being a physical altercation? Have you ever felt physically threatened by Ms. Millan? No; she has never done anything. Just trying to prepare for the worst as much as possible. Try to maintain strictly professional conversations; there is no need for me to speak with her one on one casually.

23. You mention other co-workers feeling antagonized by Ms. Millan and Ms. Soto at the office.

    a. May we have their names? Can you describe the incidents that you have heard about? Jasmine Leon, had an incident with Nancy Soto. I wasn't there but did receive a text message probably around 8:00. Jasmine stated that Nancy Soto was out front taking pictures, and it's making me feel uncomfortable. I don't know why she is doing that. I told her to, "go straight to your office, I will deal with it when I get to the office and I will talk to Tina, stay put don't react or do anything". Jasmine Leon has also stated that Nancy approached her to file a complaint against management. Jasmine has been included in a shared email to the media, which was unprofessional. Paul Matye and Thomas DeCesare have been privately recorded on a private conversation; it wasn't at a meeting, it was just a private casual conversation that was released to the media. I assume any email I send to Alex will be released to the news media and it has happened. Emails have been taken out of context. Alex takes bits and pieces from emails and takes it out of context to the media. I do have one employee that is getting physically ill that I worry about. Employee has called in sick, not sleeping, and is physically affecting them. The other two or maintain their professionalism, head down and doing their work.

24. You make note of several employees worried about their work environment and some becoming physically ill.

    a. May we have their names? Is there something specific they have shared with you that is making them worried? Is there something specific they have shared with you that is making them ill? Have they had to take time off from work because of becoming physically ill? Have you taken any time off because of these incidents with Ms. Soto and Ms. Millan? Yes, to all the questions. I know that Paul Matye has called in sick before. The last couple of weeks it is more often than it was before. He has shared with me where he's physically sick where he's just. He would be able to provide more details. I don't want to share because it was a private conversation. He's the person I'm worried about the most as far as this impacting him. For him it's more a trust issue where he sees the good in people, and when the news media came out with the story of his recording it threw him off.

BC 000025

W[...] [...]lace Incident – Budget, Management & F[...] [...]ce
Tanya Galtan, Budget Manager
Tuesday, April 7, 2020, 1:00 p.m.

One, it was stressful because of the things he said which he has apologized for and sent an email regarding that, and two, it's just the lack of trust that he has with his co-workers. The other two have not missed any time. One of them was leaving work and was approached by the news media directly. We didn't expect. I know its stressful for them. It's kind of like dodging constantly. It's the same three that I've mentioned earlier. That have approached me about Alex specifically, and the impact of what she shared with the media. Yes, for instance now, I'm taking 45 minutes to an hour to answer questions. Which I appreciate, it's just one more thing I have to worry about – multiple meetings regarding open records request or having to respond of the EEOC requests. She takes up a lot of my time, and a lot of energy for sure. And having to meet with analysts to follow up. Making sure they are staying focused on their work as much as they can. I can't think of a time where I've taken time off, off the top of my head. I have gone to the doctor for stress.

25. You mention your staff as well as yourself, being concerned about your spreadsheets/documents and the upcoming budget process being possibly sabotaged by Ms. Milan and or tampered by Ms. Soto.
    a. Is this a true statement? Can you describe what type of actions Ms. Milan could take that could possibly sabotage the upcoming budget process? Can you describe what type of actions Ms. Soto could take that could possibly sabotage the upcoming budget process? Yes. Alexandria has read and write access to the budget drive which holds all our spreadsheets and word documents to prepare our budget book. It's as easy as deleting or manipulating spreadsheets. I have never seen her or aware of her doing that, but she has the access that the rest of us have. Especially with the upcoming budget, office and departments ask for reclassifications or reorganizations of their departments, which in times can affect employees and their jobs. We try to keep those in our office and department as well as HR as much as we can because these are working documents, and these are things that have not been decided or finalized until the elected official speaks with the County Manager. My fear is a lot of the information we are sharing like tax rate information, revenue information, recommendations on how we want to approach a program change. This information can be leaked out outside of the office, which I think can be a detriment to the budget process. We have to audit the access to our drives all the time. We do it once a year. Now I feel I have to do it a little more often to insure that, it doesn't seem that hard to call, IT and say "hey can you give me access to this drive", and then you know the person has access. But it's just mostly Alex who has access to that information but Nancy used to have access to that and a couple of years ago we just maintained it via email. So now, it just funnels through an email process and then we save everything. There have been three employees that have addressed me with concerns about their documents, nothing has happened but I'm just scared that someone is going to do something to my work to make me look bad in the process.

26. You mention Jasmine Leon had a verbal altercation with Ms. Soto.
    a. Do you know what the verbal altercation was about? Have you witnessed Ms. Soto taking pictures or videos in the office? Have you witnessed Ms. Soto taking pictures or video of people coming off the elevators? I was not there that morning. I was on a planned leave request. The only information that I had was receiving a text message from Jasmine Leon and her telling me that Nancy was taking pictures of her coming off the elevator and going through the door. And then when I came in, there were people talking about it in the hallway like Nancy and Jasmine got into it in the hallway but I wasn't there for it. I've never seen Nancy take pictures of me or at least I never noticed or looked. Usually when it's her or Alex in the room or hallway I just go straight forward. I don't make eye contact with them unless I absolutely have to or having a conversation with them.

27. How long have you worked with Ms. Soto? Please describe your working relationship with Ms. Soto on a daily basis in the last year. How has your working relationship with her changed?
    I've worked with Nancy for my entirety of, since I worked there when it was under the Planning and Resource Department and she was the Administrative Supervisor. I've always worked with her. The last year has been pretty normal. I do manage the budget that she takes care of. We had a professional working relationship. It wasn't hostile or I didn't feel uneasy about her. It's just been professional. It wasn't until the last few weeks, prior to sending this email that it started getting weirder with her. I just didn't want to be around her. She was doing the whole up and down the hallway, talking about EEOC complaints, and after that I just kept it as professional via email and I didn't want to be by myself in the same room with her.

BC 000026

W( )lace Incident – Budget, Management & Fi( ) :e
Tanya Gaitan, Budget Manager
Tuesday, April 7, 2020; 1:00 p.m.

28. What is the current work environment like in the Budget and, Management and Finance Department?
There is pretty much no talking. It's, most of the doors at least in my department are closed which is unusual. I can't speak for the other people but I know in private conversations people feel the tension in the office. It's the best way to describe it. People are in the same boat as I am where they share the same concerns. I don't want to be in the same room with either one of them because you feel like you are being watched or stalked, antagonized in some way. It's just really bad right now. It's not social, it's the opposite of social environment that we were used to, which is straight forward and talk about work and that's it.

29. How are Ms. Soto's and Ms. Millan's actions affecting your work environment?
It's distracting for me because I have to actively not pay attention to things that are happening in the hallway when they are both there.   There are a lot of printing, copying, shredding that goes on in the print room. The reason I know this is because I am right next to the room and I can hear Alex pass by, print, shred, copy, and go back.  Its constant. It may not have anything to do with what's going on but I know that my analysts are working on.  I follow up with them on a weekly basis and there is nothing, they aren't printing budget books, not printing anything significant. So it's just constantly to maintain the environment for my team as best as I can by being fair to Alex as fair as possible with all my analysts and hold them accountable like I do with every single employee that I have. It's a distraction and extremely stressful. I have knots in my stomach because I don't know what will become of the day. What will come up or what kind of incident will happen and I wasn't surprised that an incident like Jasmine and Nancy happened. Specifically, with them but when I heard about it, it wasn't a surprise because it was just kind of boiling over. Things are super tense in the office.

30. Do you have any other information you think would help in investigating your complaint?
   a. Do you know of any evidence, not already covered so far, that you believe supports your complaint?
   b. Other than the people referred to so far, who else do you believe we should talk to for our investigation?
      To be quite honest with you, I would talk to everyone in the department because I want there to be a fair outcome across the board.  I know that the people that I've personally talked to who have had issues with Nancy specifically are Sylvia Diaz, Veronica Guevara, Pearl Jauregui, Blake Meneley, he shared with me that Nancy was taking pictures of him when he walked in, and Mia Buentello.

This concludes this interview. If any further pertinent information comes to mind, please contact us. If you feel that you have been retaliated against in any way for coming forward with this complaint, please notify County HR immediately. As a reminder, we ask that you keep this conversation confidential and know that we are taking your complaint of very seriously. Thank you.

BC 000027

| | |
|---|---|
| **From:** | Bernal, Ana |
| **Sent:** | Monday, April 06, 2020 10:40 AM |
| **To:** | Espinosa, Olivia L. |
| **Subject:** | Workplace Environment |

| | |
|---|---|
| **Importance:** | High |

Olivia,

At 1:00 p.m. today, Monday April 6, 2020 via WebEx you have an opportunity to speak with myself, Ana Bernal, HR-HRIS Manager who is conducting interviews on behalf of the Budget Office. You can expect to meet with myself, Ana Bernal and my colleague Alejandro Fabela, Sr. HR Analyst via WebEx.
Your supervisor has been informed of your absence on Monday between the hours of 1:00 p.m. and 2:00 p.m.

**Ana M. Bernal**
HR-HRIS Manager
Bexar Co. Human Resources

BC 000028

W[...]lace Incident – Budget, Management & F[...]ce
Olivia Espinosa, Office Assistant IV
April 6, 2020; 1:00 p.m.

Welcome, we selected to conduct this interview by means of WebEx video conference due to the pandemic COVID-19, and are representing Bexar County as a whole which includes listening to the complainant, and other members of the department.

This conversation is confidential and focused on the facts. Your disclosure today is taken as fact. Alejandro Fabela, Sr. HR Analyst will be taking notes of our conversation and I will prepare a report of our conversation as part of the County's effort to understand the allegations. An audio or video recording will not be done as part of this interview experience. We are not recording; we expect that you are not recording this by audio or video. If you are recording, that recording is not sanctioned and is not authorized.

When asked if you have witnessed an event, we are asking if you personally heard or saw the event take place first hand. We are not asking for information given to you by a third party.

As we begin, can you verify you submitted a written statement in reference to an encounter between Jasmine Leon and Nancy Soto-McClure on February 26, 2020? Yes. Do you have a copy of the statement in front of you? Yes. Is this statement a true and correct statement of what you observed that day? Yes. Did you draft this statement on your own initiative or were you asked to draft the statement? On my own. Is there anything you would like to add to the statement at this time? No. Have you observed – on other occasions - Ms. Soto taking pictures in the office? I would say just like trying to have like control over everyone. Like when I first started working there she told me to lock the supply closet and not to give them the key at all, and I was like okay because I was a new employee so I would listen to her and other employees would be like "no she has no right to lock it". Like we are employees, like we can't have access to the supply room and they would get mad at me, and it created tension and stress. And the fact that she had all my passwords to my computer. She had me like write on a sticky note and just keep it on the computer at all times and her reasoning was because if something ever happen to me that she would still be able to go into the computer and still continue the work processes and nothing would be disturbed. But, like personally I felt kind of like uncomfortable because I'm just like I had no privacy at all. And as a new employee to the budget department I figured well maybe it's because it's like budget and finance and so it's sensitive information, that's why she has to have access at all times.  That was the only time I witnessed it. Had you observed – on other occasions - Ms. Soto filming people in the office? Just that one time. Have you observed – on other occasions - Ms. Soto filming or taking pictures of people getting on and off the elevators? No, it was just that one time.

Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department) Olivia Espinosa, Office Assistant IV, Budget, and Management and Finance department. Can you give me a description of where your work location is? As soon as you get off the elevators you step off and turn to the left, and it's that front desk right there, pass the double doors.  Where is Ms. Soto's work station in relation to your work station?  Down the hall at the very end and then you make a right and it's like the first office catty-corner.

1. Can you share your intention in submitting the statement?
   Because I didn't want like other people to make like a statement and like they not see my side of what happened.

   a. What would you like as an outcome?
      I honestly don't know, like myself I'm scared for when she comes back and the controlling behavior continues or if word gets out and she finds out that I was interviewed and she retaliates against me, like that's what I'm terrified of, like I've never dealt with this in my job before.

2. In your statement, you mention an "exchange occurred" between Jasmine Leon and Nancy Soto, how would you define the exchange?
   I would say like, it was like aggressive. I think it would have been fine. The way when Nancy said, "like do you have something to hide?" That is when I felt she was like she was edging her on and like, trying to put more fuel to the fire. I don't understand why she did that.

3. Have you witnesses any other exchanges between Ms. Soto and Ms. Leon that caused you concern?
   No.

BC 000029

4. Have you witnessed any other exchanges between employees in the office that cause you concern?
   Probably, just like that, a lot of people are uncomfortable around her, and that she tries to control a lot of stuff.

This concludes this interview. If any further pertinent information comes to mind, please contact us. If you feel that you have been retaliated against in any way for coming forward with this complaint, please notify County HR immediately. As a reminder, we ask that you keep this conversation confidential and know that we are taking your concerns very seriously. Thank you.

BC 000030

| | |
|---|---|
| **From:** | Bernal, Ana |
| **Sent:** | Monday, April 06, 2020 2:47 PM |
| **To:** | Leal, Manuel |
| **Subject:** | Workplace Incident – Budget, and Management and Finance |
| | |
| **Importance:** | High |

Manuel,

At 10:30 a.m. Tuesday, April 7, 2020 via WebEx you have an opportunity to speak with myself, Ana Bernal, HR-HRIS Manager who is conducting interviews on behalf of the Budget Office, and Management and Finance. You can expect to meet with myself, Ana Bernal and my colleague Alejandro Fabela, Sr. HR Analyst via WebEx.
Your supervisor has been informed of your absence on Tuesday between the hours of 10:30 a.m. and 11:30 a.m.

Ana M. Bernal
HR-HRIS Manager
Bexar Co. Human Resources

BC 000031

Welcome, we selected to conduct this interview by means of WebEx video conference due to the pandemic COVID-19, and are representing Bexar County as a whole which includes listening to the complainant, and other members of the department.

This conversation is confidential and focused on the facts. Your disclosure today is taken as fact. Alejandro Fabela, Sr. HR Analyst will be taking notes of our conversation and I will prepare a report of our conversation as part of the County's effort to understand the allegations. An audio or video recording will not be done as part of this interview experience. We are not recording; we expect that you are not recording this by audio or video. If you are recording, that recording is not sanctioned and is not authorized.

When asked if you have witnessed an event, we are asking if you personally heard or saw the event take place first hand. We are not asking for information given to you by a third party.

As we begin, can you verify you submitted the email Comment – Employee Relations? Yes. Is there a copy of your email in front of you? Yes. Is this a true and correct copy of your email? Yes. Is there anything you would want to add to the email? No, there's nothing to add to this.

Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department and Work Location)
**Manuel Leal, Bexar County, Government Relations Manager,** ▓▓▓▓▓▓▓ **I work on the 9th floor, I work for Melissa Shannon who also works on the 9th floor, and we both work in the County Managers office.**

1. Can you share your intention in submitting the email to Tina Smith-Dean?
   I submitted it for the well fair of all employees on the 9th floor. I feel what occurred or might have occurred that I observed would lead to some type of altercation.
   a. What would you like as an outcome?
      I would like there to be a policy on recording employees while at work.

2. Did you share your concern with your supervisor?
   Yes, Melissa Shannon was copied on the email and I talked to her before sending it.

3. Who is your supervisor?

4. Please describe your working relationship with Nancy Soto. Almost non-existent; I don't really converse with her, unless it's work related, and at that it's very, very rare.

5. You state you have observed Ms. Soto holding her phone in peculiar way, in an unnatural way while at the front desk facing the lobby entrance as you would enter/exit.
   a. Is this a true statement? Yes, that is a true statement. What do you mean that Ms. Soto held her phone in an "unnatural position"? I mean that while I observed her doing it; sometime before the incident occurred; I couldn't quite understand what she was doing, because the phone wasn't facing her. She wasn't really getting a good view of the phone. I was perplexed as too why she was holding it in such a manner because it didn't seem a normal way to use a phone but, after the incident I think it was clear that she was using it solely to record whatever was coming in the office. What did you mean that it was held in a "very unorthodox" manner? Again, there was no practical way for her to be using the phone for herself with her eyes the way she was holding it. It was held above her head, it was held perpendicular to the ground, which means that the camera wouldn't be capturing her, it would be capturing either above and behind or anything in front of her. There was just no way for me to comprehend why she was holding it that way.

6. You mention you "heard of yesterday's incident" and it "clicked".
   a. What do you mean? Can you elaborate? When I heard of the incident that had occurred, I was not there, I was just coming into work. It clicked clearly then while I observed her or how I observed her holding the phone because she wasn't holding it to be of use to her. It seemed to me the reason she was holding it, it was to record or take pictures much like what occurred in the incident. And the incident you're speaking about, what

BC 000032

incident is that? **I heard that Blake and Jasmine confronted Nancy about recording them as they entered the office, as the incident.**

7. Have you witnessed Ms. Soto taking photos or videos in the office at any time?
   **I cannot say that I have seen her without a shadow of doubt taking pictures or recording video. I never confronted or anything of that nature.**

8. What is the current work environment like in the Budget and, Management and Finance Department? **While I don't work with them on a daily basis, I do travel through the hall, because my office is down the hall. It's very tense, everybody is on edge, they are fearful of being recorded verbally and through video. It's very tense right now. I don't like walking in the halls anymore like I used to.** You expressed concern about the well-being of the employees in the office – what were you thinking about when you wrote this? **I was thinking very clearly that a verbal altercation, which occurred apparently, could escalate into a physical altercation, which could escalate to someone bringing a weapon into the office and hurting other people. I think it's a first step in what could be a very dangerous situation.**

9. Has this incident with Ms. Soto affected your working environment?
   **Not directly, indirectly as I stated I find it difficult some times to talk to people in the hall as I pass them or waiting for the elevator. It just seems to have created a situation where nobody knows who they can trust, and you say the wrong thing you could be; have a recording made of it, and it's very Soviet era environment.**

10. Do you have any other information you think would help in investigating your complaint?
    **I do not believe so, I think the only kernel I have is that I believe from what I observed that this was going on prior to the incident, and that's really all I have at this point.**
    a. Do you know of any evidence, not already covered so far, that you believe supports your complaint?
       **No, I do not, and to be clear I don't want to call it a complaint, again I want to call it a concern for employee relations.**
    b. Other than the people referred to so far, who else do you believe we should talk to for our investigation?
       **I have no recommendations at this time.**

This concludes this interview. If any further pertinent information comes to mind, please contact us. If you feel that you have been retaliated against in any way for coming forward with this complaint, please notify County HR immediately. As a reminder, we ask that you keep this conversation confidential and know that we are taking your complaint of very seriously. Thank you.

| | |
|---|---|
| **From:** | Bernal, Ana |
| **Sent:** | Monday, April 06, 2020 11:25 AM |
| **To:** | Leon, Jasmine |
| **Subject:** | Workplace Incident |
| | |
| **Importance:** | High |

Jasmine,

At 3:30 p.m. today, Monday April 6, 2020 via WebEx you have an opportunity to speak with myself, Ana Bernal, HR-HRIS Manager who is conducting interviews on behalf of the Budget Office, and Management and Finance. You can expect to meet with myself, Ana Bernal and my colleague Alejandro Fabela, Sr. HR Analyst via WebEx. Your supervisor has been informed of your absence on Monday between the hours of 3:30 p.m. and 4:30 p.m.

**Ana M. Bernal**
HR-HRIS Manager
Bexar Co. Human Resources

1

Welcome, we selected to conduct this interview by means of WebEx video conference due to the pandemic COVID-19, and are representing Bexar County as a whole which includes listening to the complainant, and other members of the department.

This conversation is confidential and focused on the facts. Your disclosure today is taken as fact. Alejandro Fabela, Sr. HR Analyst will be taking notes of our conversation and I will prepare a report of our conversation as part of the County's effort to understand the allegations. An audio or video recording will not be done as part of this interview experience. We are not recording; we expect that you are not recording this by audio or video. If you are recording, that recording is not sanctioned and is not authorized.

When asked if you have witnessed an event, we are asking if you personally heard or saw the event take place first hand. We are not asking for information given to you by a third party.

As we begin, can you verify you submitted the email Incident in the Workplace – 2/26/2020? **Yes.** Do you have a copy of the email in front of you? **I do.** I have it open. Do you have a copy of the statement in front of you? **Yes.** Is this statement a true and correct statement of what you observed that day? **Yes.** Did you draft this statement on your own initiative or were you asked to draft the statement? **I did it on my own accord.** Is there anything you would like to add to the statement at this time? **That is exactly what had taken place. I tried to set the picture as best as I could.**

Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department and Work Location)
**Jasmine Leon, Budget Analyst, Bexar County Budget Department, Paul Elizondo Tower 9th floor Suite 901,** 

1. Can you share your intention in submitting the email?
   **I sent it because I felt that this was a form of harassment. I obviously have been in other incidents. Rather situations surrounding this prior, so that's why I felt that this was a form of harassment, because of what had taken place prior when I was involved in something else that obviously from the news.**

   a. What would you like as an outcome?
      **I want disciplinary action, obviously, the correct form of disciplinary action, which I know that you all decide as HR because this was not okay. Like I said in my email, I felt intimidated in my workplace. This person along with the other person I mentioned; I felt that they try to humiliate me. Before this they had tried to also coerce me to joining them in what they are doing and I refused to take part of any of this. I stayed out of it and I did my work, I did what I was supposed to do and I felt this was like a grievance that they have taken against me. And when this incident took place, I felt that they felt they could do that because of what they have already done to me, and that they had that power to do that.**

2. You mention in the email that Ms. Nancy Soto was "holding her phone up in my direction as if she was taking a photo/video of me", what makes you think she was taking photo/video of you? **She had her phone like directly up, like she was simulating the act of taking a photo or video. I say that as well because I thought of me and my other co-workers have talked about it, because it has happened to other co-workers previously. This was the first time that it had happened to me, and so it was as plain as day. I knew what she was doing, whether she was actually doing it or not she was simulating the act as she was as a form of harassment.** Had you seen Ms. Soto taking pictures or videos in the office before this date? **No, not to me, she had not done it to me. I know that she has simulated the act with other people in the work office, yes.** Have you observed other people in the office using their phones to take pictures of the office? **She was the only person that I have actually saw doing that, that she was trying to record me. She was trying to get me involved in whatever she has been doing. She was trying to get me involved in that. She was the person who told me about trying to file EEOC claims. Trying to put things in my head like are you being discriminated against because you are black or because you have a disability. She was trying to riled me up, and try to like make me join her in what she is**

3. You mention, "she was trying to intimidate me." What makes you think she was trying to intimidate you? **Because, before there was a lot of working behind the scenes; that she was trying to recruit me. She was trying to get me involved into whatever she has been doing. She was trying to get me involved in that. She was the person who told me about trying to file EEOC claims. Trying to put things in my head like are you being discriminated against because you are black or because you have a disability. She was trying to riled me up, and try to like make me join her in what she is**

BC 000035

trying to do. I don't know the details of everything that she is doing. I try to stay out of that but I know prior to when she finally did find something she was trying to get me to come forward with whatever as well.

4. What is your working relationship with Ms. Soto?
I really don't have a relationship with her. Prior I would say it was friendly, obviously I am cordial with all my co-workers. Really before all this I never had any issues with anybody, even when I didn't part-take in any of things she had wanted me to do, I still kept it cordial, but when things started popping up in the news and things shifted it became tense; the work environment.

    a. Have you witnessed Ms. Soto trying to intimidate other people any other time?
       No, just what has been done to me and what I have heard from other people.
    b. Who and when? Can you describe Ms. Soto's behavior on those occasions?

5. You mention Ms. Soto "did the same act of simulating taking photo/video on Tuesday, 2/25 of Sylvia, Veronica, Pearl and Mia", would you provide their full names and where they work? Sylvia Diaz, Budget Department, Data Analyst, Paul Elizondo Tower; Veronica Guevara, Budget Department 9th floor; Pearl Jauregui, Budget Department, 9th floor; Mia Buentello, Budget Department 9th floor Did you observe this or were you told about it? I was told about it. If you observed it what did you see?

6. Please describe your working relationship with Ms. Soto on a daily basis. Nothing confrontational, up until this point, I always avoided any type of conflict. We don't really have any interaction because Nancy is a manger for admin so I don't have communication with her on a daily basis. Anyway, she's not somebody I would talk too on a regular basis, like I would talk to the other Budget Analysts/co-workers. Had you had any other incidences with Ms. Soto that caused you concern? There were other incidences prior, not confrontational but, it was her trying to get me involved into other things that were going on, but I refused to part-take in.

7. In your opinion, what is the current work environment like in the Budget and, Management and Finance Department? It's a very tense environment. Not only this but I think with, I mean we all know in our department who has been leaking out into the press that are trying to humiliate us, and antagonize us, and harass us, by putting our names and faces into the media. It's not a comfortable place to be in; individually I'm not the only one that this has happened to now. So it's not a comfortable work environment, it's very tense. Before, obviously, it wasn't lax but we were friendly with each other. You didn't feel like you had to be up in arms all the time, now it's tense like no one really talks; everybody is very careful; shut your door; put your head down and do your work type of thing. Not really a lot of socializing or anything; it's just very tense.

8. Has this incident affected your work environment?
Yes, it has affected me and my work environment because when this incident happened I was like-What else? What else do you want from me? What else do you want to do to me? I mean, so that's why I got upset when I saw her doing that because I'm just like - you know, what do you guys want from me. It has affected me.

    a. How has it affected your work environment?
       It's affected me a lot. It's like I don't even feel comfortable in my workplace anymore. I don't know what's going to be next. Even though I don't do anything, I do my job; the things that came out about me have nothing pertaining to my job. This is very frustrating.

9. Do you have any other information you think would help in investigating your complaint?
That was mainly the background. She was trying to get me involved with the other things taking place. And after I refused to do so, I don't think she was too fond of that. Obviously, it wasn't overstated but it was different from then. From then on, when I refused to partake in anything she was trying to do, I was trying to stay out of all that. I noticed that that kind of shifted.

    a. Do you know of any evidence, not already covered so far, that you believe supports your complaint?
       I know that you can take video of the incident that took place. I mean we have cameras, it happened. It happened right there in our lobby area. So you can see it on video. You can see when I came out of the

2

BC 000036

elevator where, she was sitting at the receptionist area; she was taking a photo/video of me and 15 minutes later, you can see where the incident occurred because I saw her in our lobby area with her phone up, umm, facing the elevator. Like she was about to do that with other people, she was simulating the act with other people when the confrontation happened. Because I told her what she was doing was not ok. So you were already in the hallway when the confrontation occurred? Yes, I didn't confront her the first time I walked past her. So let me walk you through it really quick just one more time. I came out of the elevator it was 8:00 in the morning. I came out of the elevator, as soon as I came out I saw her with her phone up. Like she was simulating the act of taking a photo/video of me. I noticed right away obviously because you have to make eye contact with, I mean you're at the receptionist area desk, you see everybody. So I came around the corner walking through the door, I looked at her from behind and saw she was shuffling through her phone to make it seem like she was doing something else. And that's when I was concerned and I texted Tanya and told her what happened. I said... I have to go pull up my message, but I text her and told her the incident that happened. That I felt like Nancy was simulating the act of taking a photo/video of me or she was actually doing it. And so, she told me she would talk to me when she got to the office, or she wasn't there yet. So 15 minutes later, I had to use the restroom. So that was around 8:15 so I, coming out of the door to the lobby area, and she's in the lobby area by the door where you are going to enter in. And she had her phone out. Like she was taking photo or video. But she was facing the elevator. And I looked at her, I made eye contact with her and I'm like, "what you are doing is not ok". And that's when she was like, "Jasmine what are you talking about"? I was like, "I know what you are doing, I saw you this morning, taking a photo/video of me". And that's when she denied it. That's when our confrontation happened. And Tina came in at the tail end of it. So she saw when I was walking away but we were like still saying words to each other. And I walked to the bathroom and that's when I sent a follow up email because Alex Milan came in a minute later and I felt like, because they've been together sort of doing the intimidation thing and I've had incidents where Alex pops into the bathroom right after me. And I don't know, obviously if they've but I felt like she was doing it on purpose. I can say with this incident that took place, I for sure felt like she did it on purpose because she heard the incident between me and Nancy. And then she came into the bathroom right after me and followed me. Now nothing happened, we did make eye contact and she went into one of the stalls.

10.

a. Other than the people referred to so far, who else do you believe we should talk to for our investigation?
**Talk to ladies that I mentioned in the email; Veronica, Sylvia, Mia, and Pearl.**

This concludes this interview. If any further pertinent information comes to mind, please contact us. If you feel that you have been retaliated against in any way for coming forward with this complaint, please notify County HR immediately. As a reminder, we ask that you keep this conversation confidential and know that we are taking your complaint of very seriously. Thank you.

| | |
|---|---|
| **From:** | Bernal, Ana |
| **Sent:** | Monday, April 06, 2020 11:07 AM |
| **To:** | Meneley, Blake |
| **Subject:** | Workplace Incident |

| | |
|---|---|
| **Importance:** | High |

Blake,

At 2:00 p.m. today, Monday April 6, 2020 via WebEx you have an opportunity to speak with myself, Ana Bernal, HR-HRIS Manager who is conducting interviews on behalf of the Budget Office, and Management and Finance. You can expect to meet with myself, Ana Bernal and my colleague Alejandro Fabela, Sr. HR Analyst via WebEx. Your supervisor has been informed of your absence on Monday between the hours of 2:00 p.m. and 3:00 p.m.

**Ana M. Bernal**
HR-HRIS Manager
Bexar Co. Human Resources
████████

1

W(   )lace Incident – Budget, Management & F(   )ce
Blake Meneley, Sr. Budget Analyst
Monday, April 6, 2020; 2:00 p.m.

Welcome, we selected to conduct this interview by means of WebEx video conference due to the pandemic COVID-19, and are representing Bexar County as a whole which includes listening to the complainant, and other members of the department.

This conversation is confidential and focused on the facts. Your disclosure today is taken as fact. Alejandro Fabela, Sr. HR Analyst will be taking notes of our conversation and I will prepare a report of our conversation as part of the County's effort to understand the allegations. An audio or video recording will not be done as part of this interview experience. We are not recording; we expect that you are not recording this by audio or video. If you are recording, that recording is not sanctioned and is not authorized.

When asked if you have witnessed an event, we are asking if you personally heard or saw the event take place first hand. We are not asking for information given to you by a third party.

As we begin, can you verify you submitted the text message in reference to Ms. Nancy McClure-Soto and the elevator? Yes ma'am. Do you have a copy of the text in front of you? Yes. Is this a true and correct copy of the text that you submitted? That is correct, yes. Did you submit this text on your own initiative or were you asked to submit it? On my own initiative. If so, by whom?

1. Can you share your intention in submitting the text message?
   So this intention was to let my supervisor know of some suspicious acts that were going on whenever I arrived at work and gotten off the elevator, something that had happened that made me feel uncomfortable immediately. And, I thought that would need to be reported to a supervisor or at least let that supervisor know of it

   a. What would you like as an outcome?
      Not really sure. I don't think I would be really comfortable or trusting of someone that had already done that prior to this. In that regard not sure from a trust stand point would be something that is doable from this moment moving forward, because in my mind I can't think of any reason as to why someone would be videoing me anyway, so it would be more of a trust thing at this point.

2. Did you share your concern with your supervisor?
   Yes, so the text that you see was sent to Seth McCabe and then was immediately sent, well it would have been 45 minutes or so after, was sent to Tina Smith-Dean for her review as well, where from that point she also let me know that the DA's office has it and it was for further investigation.

3. Who is your supervisor?
   Seth McCabe prior and now it is Tina Smith-Dean.

4. Would you share what took place in reference to the incident in question?
   Sure, I need to look exactly what day it was now at this point. I arrived at work and it was, and I made sure I looked at the time whenever this happen, but I came up the elevator with Alexandria Milan and it was about 08:07. We got off the elevator together on the 9th floor, and then I walked to the left towards the Budget Department where I work, I noticed that there was a phone that Nancy was holding and she was coming across like she was videoing a couch in the Budget front Office. But then turned towards Alex and I as we were getting off the elevator, and I immediately saw that it was very odd that was happening and I proceeded to look down at her phone and she had stopped Alex to ask her if she thought the couch was centered. And I thought that was an odd question to ask to begin with, nothing ever moved upfront so I didn't, it caught me really off guard and obviously from that point on I knew something else was going on. Then that was pretty much it, I never made any confrontation or anything like that. I immediately went to my office and then I sent this text here.

1

BC 000039

W[ ]lace Incident – Budget, Management & F[ ] [ ]ce
Blake Meneley, Sr. Budget Analyst
Monday, April 6, 2020; 2:00 p.m.

5.   Where did the incident take place? What time was it?
So it was at 08:07, and it took place on the 9th floor, from the elevators to the Budget Office, the front office area and then past the doors, that was it pretty much. The videoing was done up until I walked through the actual Budget Office door.

    a.   What floor and department?

6.   Where exactly was Ms. Nancy McClure-Soto standing as you came off the elevator? So she was standing and not actually inside the office but just in the entryway. We have two couches and she was standing on the outside of that. Were you surprised to see her standing there? Yes, I was surprised to see her standing there, she doesn't usually stand there. There's no computers or anything around there, so for her to be standing there and it was odd to me obviously. Did I give a clear answer of where she was? No, was she in the elevator lobby, or was she in the waiting area of the Budget and, Management and Finance Office? Waiting area, she was in the waiting area. You said that you were surprised to see her standing there, where was she standing in that area? If you are getting off the elevator walking towards the counter she was more to the right, she was in front of the couch and the clock but facing the elevator lobby. What was she doing? So there was a phone held up towards us as we gotten off, but she made a motion starting from the couch area and towards to elevator lobby with her phone. Did she speak to you? No, she did not.

7.   Have you witnessed this type of behavior any other time? I have not, no. Have you seen Ms. Soto – on other occasions – taking pictures or videotaping people? No, I have not.

8.   You mention "showing Alex", who is Alex and what department does Alex work at? Alex is a Budget Analyst in the Budget department, Alexandria Millan. And yes, she stopped Alex as we walked passed Nancy. Nancy had stopped Alex to look at the picture. What is your working relationship with Alex on a daily basis? Not much communication at all, it's really very little and it's work related either through email or word of mouth.

9.   Were there any witnesses that saw what transpired when you were getting off the elevator?
No, ma'am it was just me, Alex, and Nancy.
    a.   Would you name them (first and last name)?
       Myself Blake Meneley, Alexandria Millan and Nancy Soto

10.  Please describe your working relationship with Ms. Soto on a daily basis. So Nancy is our Administrator. I don't communicate with her a whole lot, just in the mornings just to say good morning and if I ever need anything as far as administrative or office supply related stuff. That is the only time I communicate with Nancy, which is very little. Had you had any other incidences with Ms. Soto that caused you concern? No, ma'am.

11.  In your opinion, what is the current work environment like in the Budget and, Management and Finance Department? The work environment is unusual, a little tense. It's gotten difficult to know what's going on and as far as who to trust. There's been some issues that have gone on outside of here obviously, so it is a tense working environment and not the most pleasant at the moment.

12.  Has this incident affected your work environment? Yes, it has. How has it affected your work environment? It goes back to the trust. We are supposed to work as a team obviously. In the Budget department, we do a lot of things that involve each other and each other's communication. I feel as if the work environment has become very isolated, where we have to do things ourselves, and people are a little hesitant to collaborate amongst each other. There have been incidents where that has been compromised, where we feel that it's probably been compromised and so we are very hesitant to communicate with each other. It all goes back to the trust issue as well.

2

BC 000040

W(    )lace Incident – Budget, Management & F(  )ce
Blake Meneley, Sr, Budget Analyst
Monday, April 6, 2020; 2:00 p.m.

13. Do you have any other information you think would help in investigating your complaint?

I do not, just if you guys have any questions feel free to reach out.

    a.  Do you know of any evidence, not already covered so far, that you believe supports your complaint?

        No, I do not have anything else.

    b.  Other than the people referred to so far, whom else do you believe we should talk to for our investigation?

        I don't have anyone else.

14. Do you have any other comments?

I do not.

This concludes this interview. If any further pertinent information comes to mind, please contact us. If you feel that you have been retaliated against in any way for coming forward with this complaint, please notify County HR immediately. As a reminder, we ask that you keep this conversation confidential and know that we are taking your complaint of very seriously.  Thank you.

BC 000041

**Bernal, Ana**

| | |
|---|---|
| From: | Smith-Dean, Tina |
| Sent: | Wednesday, March 11, 2020 8:37 AM |
| To: | Guevara, Veronica |
| Subject: | FW: Nancy Soto video taping me without my permission |

Tina M. Smith-Dean
Assistant County Manager

**From:** Diaz, Sylvia ▓▓▓▓▓▓▓▓▓
**Sent:** Wednesday, February 26, 2020 8:48 AM
**To:** Smith-Dean, Tina ▓▓▓▓▓▓▓▓▓▓▓▓▓▓McCabe, Seth ▓▓▓▓▓▓▓▓▓
**Subject:** Nancy Soto video taping me without my permission

Good morning Tina,
It is very upsetting that I am having to spend work time writing this email to let you know that It is getting very annoying and aggravating that Nancy Soto sits at the front desk with her phone recording our every move in this office.
I walk to the elevator and she is with her phone up obviously pointing in my direction.
Yesterday I caught her telling Alex to hurry up and start recording us getting off the elevator coming in from lunch?

Am I her next target because I did not agree to join her in coup to bring down our County Management?

We have to be here for eight hours a day and I am not going to tolerate it anymore.

*Sylvia Diaz*
*Data Compliance Analyst*
*Bexar County Management & Financial Services*
*Paul Elizondo Tower*



1

BC 000042

**From:**             Smith-Dean, Tina
**Sent:**            Wednesday, March 11, 2020 8:36 AM
**To:**               Guevara, Veronica
**Subject:**       FW: Hostile Work Environment


Tina M. Smith-Dean
Assistant County Manager

**From:** Gaitan, Tanya
**Sent:** Wednesday, February 26, 2020 1:10 PM
**To:** Smith-Dean, Tina
**Cc:** McCabe, Seth
**Subject:** Hostile Work Environment

Tina,
I am emailing you today to inform you of the incidences that have taken place in the last month. The reason for me emailing you this information is so that you are aware that me and my staff are working in a hostile work environment.

- February 6, 2020-Nancy Soto walked passed my office and loudly spoke behind her saying, "Gosh they make it so easy." I assume she was speaking to Alexandria Milian who is two offices from my office. I did not know what that meant, so I ignored it. I later walked into the copier room to get something from the color printer and picked up printed copies at the color copier. When I flipped it over it was colored copies of you, Seth and my calendars. Nancy walked in took them from my hands and told me, "Thank you, those are mine." She walked out. I do not have any information to hide, however, I now feel that basic information can be used in a manipulative manner due to the personnel issues I am having with Alexandria. Therefore, I made the decision to only allow my managers which is you and Seth to have access. This does not impede my processes with my analysts since they typically call or email me to set up meetings. However, Alexandria has expressed concern on February 19, 2020 of not having access to my email when she asked Seth how she was supposed to get a leave request approved if she did not know when I would be back in the office.

- February 6, 2020-I have recently begun to lock my door, however, I am aware Nancy holds the extra keys for my office. I walked into my office first thing in the morning and found my recycling bin out of place between the wall and my desk. The placement was such that I would not have been able to walk out without moving it the when I left work the previous day. This may be paranoia, but I found a hair on my desk similar to the color of Nancy's hair. I do not have proof that she was in my office. I want to point this out that this is how I am feeling in my workspace. Again I do not have anything to hide. I lock any copies I may have of my employees personnel file (unofficial file). I do feel uncomfortable with another employee who is not my manager walking into my office without permission. I leave my personal belongings such as food and my purse in this office trusting it will be safe if I am away from my desk. I have stopped bringing food to the office. I no longer leave my water on its own. This is in case Nancy or Alexandria try to tamper with it. They have not done any of this to my knowledge, however, I feel unsafe at work. You did respond quickly to have my locks changed, which I appreciate.

- February 7, 2020-Alexandria came into my office and asked if I was going to her "thing". I replied, "What thing?", and she said her EEOC mediation. I told her I have not received final direction on whether I will be attending or not and she should contact the EEOC. She then said she called them and did not know. I responded that I did not know either. She then walked out. I have been very private with the pending EEOC complaint to

1

respect Alexandria's privacy ( , have not discussed it with anyone besid. my upper management and the DA's Civil Section staff. I find Alexandria's question to be highly inappropriate and made me uncomfortable. I wanted to make you aware of this so it can be on record.

- February 24, 2020-Alexandria and Nancy were openly talking about EEOC complaints in the hallway. This occurred as I was walking back from my weekly meeting with Seth. I did not know the extent of their conversation, however I did here Alexandria say as I walked in between them "she is the head of the EEOC" and "that is the person I met". Nancy was sitting at the front desk and Alexandria was standing in the hallway behind the front desk. Again, I think this is inappropriate to discuss in the open.

- February 26, 2020-I walked out of my office to go to the bathroom. Alexandria just walked into her office, which I noticed at my desk before I walked out. I walk into the bathroom and walked into the stall. There was another individual in already another stall. I hear another person come in, go into a stall, at the same time I walk out of the stall to wash my hands. The person who was in there with me walked out at the same time. This person finished washing their hands and walked out. Alexandria then walked out of the staff and began washing her hands. I did make eye contact nor spoke to her. I finished before and began walking out. She followed directly behind me all the way until I came to my office. This is the same day the incident occurred between Jasmine Leon and Nancy.

- Various times in the last few weeks: Each time I have visited Tina when I have been called to her office, I have seen Nancy Soto coincidentally in the supply room. This occurs almost every time. She does not look or say anything to me. But I assume she wants me to be aware of her presence.

- I do not recall the date, but it occurred in February 2020. Alexandria has followed me into the bathroom twice in one day directly behind me. The reason this was noticeable to me is because I walked out of my office to go to the bathroom. I saw Alexandria walking away from me at the end of the hallway towards your office. I walked through the front lobby to the bathroom. I then saw Alexandria walk out of the office exit door near Seth's office. I went into the bathroom, heard her walk in, and I eventually walked out before her. Later in the afternoon, I walked out of my office to go the bathroom, Alexandria followed immediately behind me, went into the bathroom, and I left before her. My presumption is she is trying to see if I will speak to her. I almost feel like it is a set-up, which I will not respond to even if the verbal communication is hostile. However, it would be my word against hers. No incident occurred. I do not feel comfortable speaking with either one of them one on one and alone due to concern of false statements being made against me.

- I have asked the Facilities Director if the cameras were active in the garage by my car. This is a precaution in case I am approached by Alexandria or Nancy. Alexandria has shared she has been in a physical altercation at a bar with a man. Therefore, I know she is capable of doing that. No incident has occurred. It is simply the environment that I feel I am in and want to have record if something were to happen to me or my property.

- I have had other coworkers share with me that they feel antagonized by Alexandria and Nancy at the office. I will not share those details since I have not been a witness to it. I will allow the employees to approach you on their own without any encouragement from me. The reason I point this out is to show I am not the only employee in this hallway who feels uneasy.

- This is the most concerning part for me. I have had several employees worried about their work environment. Some of become physically ill due to the stress of the work environment with the last month. I have had several of my employees voice their concerns this week about their spreadsheets/documents and the upcoming budget process. They have lost trust in Alexandria. They do not know if she will sabotage their work or share private conversations and recommendations regarding budget requests from the offices and department. I 100% agree with them. There are mechanisms where we can see who saved their documents last, however I am aware that Nancy has files with their passwords. The files also has properties that show who saved a file last. However, I do not have the time to go through 100+ spreadsheets and documents to ensure my staff and my files have not

2

BC 000044

been tampered with. I do not know how we are able to function properly, especially with the upcoming budget process. Accuracy of the budget document is my number one responsibility as the Budget Manager. I feel that this is at jeopardy.

I have and will continue to maintain my professionalism at work with the everyone to include Nancy and Alexandria. I do walk into work every day expecting another incident to happen because of Alexandria and Nancy's behavior. It appears to be getting worse. Today, my employee Jasmine Leon has been in a verbal altercation with Nancy.

I have not reported this since most of the incidences have been minor to me, but I feel that the work environment is getting worse by the day and it is beginning to affect my employees who I care about and is the reason I want to put this on record. I want to be clear that I do not want to come off as a victim in this situation. I am capable of maintaining my professionalism, but also want to protect my employees from any harm. My goal as a manager is to create a safe and fun work space for my staff while holding each employee and myself accountable. They are hard-working and an intelligent group of individuals. This behavior that has been occurring is affecting my staff. This is a toxic work environment that I nor my staff can continue functioning in.

**Tanya Gaitan**
Budget Manager
Bexar County Budget Department

BC 000045

February 26, 2020

I was at the office when an exchange occurred at the front desk between Jasmine Leon and Nancy Soto.

While I was at my desk, Nancy was sitting next to me taking pictures of the couch and paintings while sitting next to me at the front desk. She showed me pictures asking me if the paintings looked crooked. She then went out to stand in front of the entry door facing the elevator's lobby and took more pictures. Ms. Soto said she was taking pictures for the 9th floor remodel.

While at my desk and as Nancy was taking pictures standing from the entry door facing the lobby, Jasmine walked out of the opposite door. Nancy who had her phone held up said sorry and put her phone down. Jasmine told Nancy I know what you're doing. Nancy said I'm not doing anything, I'm taking pictures of the building, want to see them, I'll show you. Jasmine said no, I saw you this morning Nancy and I know what you're doing. Then Nancy said I am not taking pictures of you. Do you have something to hide? Then Nancy brings me to the middle of it and asks me if she was taking pictures of Jasmine. I said no then Jasmine said no Nancy, it's not right and it needs to stop. Then Jasmine walked away.

Nancy stayed in the front lobby for 2 or 3 minutes but was not taking pictures. She then came back around to the front desk and showed me the pictures that she took and said she had not deleted any and even went to her deleted photos to show me she had not deleted any recently. I know iPhones and you can delete deleted photos so I don't know if Nancy deleted some or not. She did have time to delete them between when this occurred and when she showed them to me later.

_____                    _2/26/20_____
Olivia Espinosa                             Date

Bernal, Ana

| | |
|---|---|
| **From:** | Smith-Dean, Tina |
| **Sent:** | Wednesday, March 11, 2020 8:36 AM |
| **To:** | Guevara, Veronica |
| **Subject:** | FW: Comment – Employee Relations |

Tina M. Smith-Dean
Assistant County Manager

**From:** Leal, Manuel ◄ ███████
**Sent:** Thursday, February 27, 2020 10:12 AM
**To:** Smith-Dean, Tina ███████
**Cc:** Shannon, Melissa ███████
**Subject:** Comment – Employee Relations

Tina,

I heard there was an incident involving employees yesterday that revolved around pictures and/or videos being taken.

I thought about this overnight and I came to the conclusion that I need to inform you of something.

- For over a week, I have noticed Nancy Soto holding her phone up in a very peculiar way as I have been entering/exiting the office. Nancy would sit/stand at the front desk and hold up her phone in an unnatural position while facing the lobby entrance as I would enter/exit. I did not think anything of it other than the fact that it seemed very unorthodox.

When I heard of yesterday's incident it instantly "clicked" in my head. I do not know what Nancy was doing and am not making accusations, but I feel I should at least let you know of my observation; if for nothing else, the well-being of other employees.

Manuel Leal
County of Bexar
███████

1

BC 000047

| | |
|---|---|
| **From:** | Smith-Dean, Tina |
| **Sent:** | Wednesday, March 11, 2020 8:36 AM |
| **To:** | Guevara, Veronica |
| **Subject:** | FW: Incident in the Workplace - 2/26/2020 |

Tina M. Smith-Dean
Assistant County Manager

**From:** Leon, Jasmine ▰▰▰▰▰▰▰▰
**Sent:** Wednesday, February 26, 2020 9:04 AM
**To:** Smith-Dean, Tina ▰▰▰▰▰▰▰▰
**Cc:** Gaitan, Tanya ▰▰▰▰▰▰ McCabe, Seth ▰▰▰▰▰▰
**Subject:** Incident in the Workplace - 2/26/2020

Good Morning,

I want to notify you all of an incident that took place this morning with Nancy and myself. When I came off of the elevator to our floor at 8:00 AM, Nancy was sitting at the front desk and was holding her phone up in my direction as if she was taking a photo/video of me. When I came through the door, I looked at her from behind and saw that she was shuffling around on her phone to make it seem that she was doing something else. I was upset about what took place, so I notified Tanya of what happened through text message.

About 15 minutes later, I left my office to use the restroom. This time, Nancy was at the front, but on the other side of the door with her phone out – as if she was prepared to take photos/videos of other people coming in. I passed by her, in which we made eye contact and I told her what she was doing was not okay. She then followed up with asking me what I was talking about. I told her that I saw her taking a photo/video of me this morning, to which she denied. I told her that I knew what she was doing and rather she took the photo/video or not, she was trying to intimidate me. I then started to walk off with us still shouting at each other.

Nancy did this same act of simulating she was taking photo/video on Tuesday, 2/25, with Sylvia, Veronica, Pearl, and Mia as they were coming back from lunch. They have documented this as well.

Thank You,

*Jasmine Leon*
Budget Analyst
Bexar County – Budget
▰▰▰▰▰▰▰▰▰▰▰▰
▰▰▰▰▰▰▰▰

1

**BC 000048**

**Bernal, Ana**

| | |
|---|---|
| From: | Smith-Dean, Tina |
| Sent: | Wednesday, March 11, 2020 8:36 AM |
| To: | Guevara, Veronica |
| Subject: | FW: |

Tina M. Smith-Dean
Assistant County Manager

From: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Sent: Wednesday, February 26, 2020 9:08 AM
To: Smith-Dean, Tina ▓▓▓▓▓▓▓▓▓▓▓▓
Subject:

Sent from my mobile.

BC 000049


Today 8:13 AM

I am sending you this as some kind of documentation, because I rode the elevator up with Alex this morning at 8:07 and when we got off the elevator Nancy had her phone pointed right at us getting off the elevator but then she played it off by showing Alex a picture of the couch and asked her if it looked centered. So idk if there was something being done when I walked off the elevator or not, but I'm letting you know now.

Thanks. They have been doing

2

BC 000050

**Bernal, Ana**

| | |
|---|---|
| From: | Bernal, Ana |
| Sent: | Monday, April 06, 2020 2:27 PM |
| To: | Diaz, Sylvia |
| Subject: | Tomorrow - WebEx Interview |

Sylvia,

At 9:00 a.m. Tuesday, April 7, 2020 via WebEx you have an opportunity to speak with myself, Ana Bernal, HR-HRIS Manager who is conducting interviews on behalf of the Budget Office, and Management and Finance. You can expect to meet with myself, Ana Bernal and my colleague Alejandro Fabela, Sr. HR Analyst via WebEx.
Your supervisor has been informed of your absence on Tuesday between the hours of 9:00 a.m. and 10:00 a.m.

Ana M. Bernal
HR-HRIS Manager
Bexar Co. Human Resources

1

BC 000051



C10 9th Floor Reception-2020-02-26_07h50min00s000ms.gh32

7:52:27.677 AM 2/26/2020

BC 000052



C10 9th Floor Reception-2020-02-26_07h50min00s000ms.g64x

7:58:26.017 AM 2/26/2020

BC 000053



BC 000054



C10 9th Floor Reception-2020-02-26_07h50min00s000ms.gf6x

8:02:28.447 AM 2/26/2020

BC 000055



C10 9th Floor Reception-2020-02-26_07h50min10st000ms.q64x

8:09:08.937 AM 2/26/2020

BC 000056



C10 9th Floor Reception-2020-02-26_07h50min00s000ms.q64x

8:09:20.637 AM 2/26/2020

BC 000057



C10 9th Floor Reception-2020-02-26_07h50min00s000ms.q64x

8:13:07.757 AM 2/26/2020

BC 000058



C10 9th Floor Reception-2020-02-26_07h50mIn00s000ms.q64x

8:13:10.257 AM 2/26/2020

BC 000059



C10 9th Floor Reception-2020-02-26_07h50min00s000ms.g64x

8:13:13.453 AM 2/26/2020

BC 000060



BC 000061



C10 9th Floor Reception-2020-02-26_07h50min00s000ms.g64x

8:13:25.353 AM 2/10/2020

BC 000062



C10 9th Floor Reception-2020-02-26_07h50min00s000ms.g64x

8:1 3:32.550 AM 2/26/2020

BC 000063

 **BEXAR COUNTY DEPARTMENT OF HUMAN RESOURCES**
Employee Conduct

## Confidentiality

**Policy Number: 7.5.04**
**Effective Date: January 1, 2007**

All information concerning County business must be held in strict confidence and must not be discussed with others on or off the job except for purposes of necessary County business. An employee is prohibited from directly or indirectly using or allowing the use of official information obtained through or in connection with their position in the County for the purpose of furthering a private interest.

BC 000064



Notice of Disciplinary Action – Written Reprimand

Date:     Friday, February 07, 2020
To:       Nancy McClure-Soto, Administrative Services Coordinator
From:     Veronica Guevara, Risk Management Coordinator
Re:       Notice of Disciplinary Action, Written Reprimand

Under the provision of Bexar County Civil Service Commission Rules and Regulations, Policy 7.6.10 Disciplinary Actions, you are hereby advised that this is a Written Reprimand. The Written Reprimand is being delivered to you for the following violations of the policy:

  1.   Conduct which is detrimental to or has an adverse effect on the office or department.

The specific reasons for this action:

In the past several days, you have sent a number of lengthy emails to various public officials throughout Bexar County documenting behaviors you believe to be retaliatory. You have directly contacted other Executive Directors within Bexar County and initiated inappropriate communications challenging the performance of their assigned duties. Specifically, you engaged the Facilities Management Executive Director over the control and direction of facility and maintenance issues within certain facilities in Bexar County in an insubordinate manner (for example, communicating in "all caps"). On Friday, January 31, 2020 at 1pm, you sent an email to me (attached) with a carbon copy to David Smith, the County Manager, Joe Gonzales, the District Attorney, and two Commissioners, Tommy Calvert and Justin Rodriguez.

Instead of being respectful and giving me the courtesy of discussing your concerns directly with me as your supervisor, you instead sent your complaints office-wide. Those concerns should have been communicated directly to me so that I might have the opportunity to address them with you directly. Thereafter, if you felt that your concerns were not addressed, you could bring them to the attention of senior management as necessary. Additionally, you have alleged that I am retaliating against you for the first time in an email for something though I am not aware of anything I have done to you which would constitute retaliation. You spent a considerable amount of work time to write the attached emails which contain inaccurate information. On Friday, January 31, 2020, I sent you an email to offer assistance without any pretext or motive. You then took my offer of assistance and disingenuously describe it as retaliation without any support. This type of behavior negatively impacts your ability to productively interact with other employees and strains the work environment.

I would remind you that you have been temporarily placed under my supervision as a result of complaints you previously made against your supervisor. You were placed under my supervision during the pendency of the workplace investigation which is currently still ongoing. Bexar County takes all employee complaints seriously and we promote a workplace which is free from unlawful behavior and any form of retaliation. As a complainant, you have the right to be free from unlawful behavior and retaliation. However, you may not engage in inappropriate communications with your superiors or other Bexar County employees. The attached emails reflect a less than professional approach to interactions with other Bexar County colleagues and are not indicative of the types of communications that promote cooperation and interoffice harmony. In the future, if you have a concern regarding your employment, please permit me the opportunity to address it with you directly prior to sending out mass emails to individuals who are not within your supervisory chain.

This written reprimand cannot be appealed but you have the right to respond to this disciplinary action in writing to me in 10 days.

_____  2/7/20        _____  2/7/2020
Nancy McClure-Soto         Date          Veronica Guevara           Date
Administrative Services Coordinator      Risk Management Coordinator

cc:   Bexar County Civil Service Commission
en:   Email 01/31/2020, 1:00pm, from Nancy Soto, to Veronica Guevara, cc: David Smith, Justin Rodriguez, Tommy Calvert, Joe Gonzales

*EEOC complaint filed on 1/12/20. I feel this is another form of retaliation. Nancy Soto 2/7/20*

**BC 000065**

**Guevara, Veronica**

| | |
|---|---|
| From: | McCabe, Seth |
| Sent: | Friday, January 31, 2020 1:06 PM |
| To: | Guevara, Veronica |
| Subject: | FW: 9th Floor-PET-Front Desk Coverage 01/31/20 |
| Attachments: | Front Desk Coverage |
| | |
| Importance: | High |

Since you are referenced.

From: Soto, Nancy ▓▓▓▓▓▓▓▓▓
Sent: Friday, January 31, 2020 12:02 PM
To: McCabe, Seth <smccabe@bexar.org> ▓▓▓▓▓▓ Calvert, Tommy
Cc: Smith, David ▓▓▓▓▓▓▓▓ Rodriguez, Justin ▓▓▓▓▓▓▓▓▓▓▓▓
<tc@bexar.org>; Millan, Alexandria ▓▓▓▓▓▓▓▓▓▓ Gonzales, Joe D. ▓▓▓▓▓▓
Subject: 9th Floor-PET-Front Desk Coverage 01/31/20
Importance: High

Seth McCabe,

As you know, I am covering the 9th floor front desk today, Friday, January 31, 2020. My Office Assistant Olivia Espinosa is out sick. It has been common practice since we moved into this building, to ask one of my coworkers to "listen" or "cover" the front desk area when I need to run across the hall to use the restroom. To my knowledge, this has not changed. This morning around 10:30 am, I asked my coworker, Alexandria Millan, to cover for me so I could run across the hall. I was not gone more than 3-4 minutes. I was just informed, by Alexandria Millan, that after she returned to her office, she was approached by you. She said you told her "you do not need to sit up at the front because you do not report to Nancy". She said she informed you that she was only watching the desk so I could go to the restroom.

Yesterday, January 30, 2020, I was in a meeting. At 12:00, my Office Assistant, Olivia Espinosa, wanted to go to lunch. She told me she was approached by Veronica Guevara and by Tina Smith-Dean, who both offered to sit at the desk and cover for her until I got out of my meeting. When I came out of my meeting at 12:06, Tina Smith-Dean, Assistant County Manager, was sitting at the front desk providing coverage for Olivia Espinosa. I hardly think providing coverage for the front desk rises to the level of the Assistant County Manager, but either way, coverage was provided.

Subsequently, I received the attached email from Veronica Guevara, my temporarily assigned supervisor. For the first time ever, she is offering me coverage for the front desk even though she is in a meeting until 2:00 pm today. She also stated that I would need to notify the supervisor prior to asking for coverage for the front desk, which would naturally include restroom breaks. Since you are the supervisor of everyone on this floor, except me and Pearl Jauregui , are you suggesting that I should be asking your permission each time I need to go to the restroom? Is there a policy I am unaware of that employees need to request permission to go to the restroom, or does this only apply to me?

1

BC 000066

I have been covering the 9th floor front desk since we moved into this building. I routinely skip my lunches or eat at the front desk in order to avoid asking anyone for coverage. Everyone in this department, including Veronica Guevara, Tina Smith-Dean, and you, Seth McCabe, are aware of that and have never offered my any type of assistance or coverage.

It is quite unbelievable I am being forced to send out an email for such a petty issue but, since I am being presented with another form of retaliation, I am obligated to document it.

Clearly, this is simply another petty form of retaliation since I sent out an email to Tina Smith-Dean on December 5, 2019. Although Tina Smith-Dean stated that " the concerns expressed in your email are taken seriously and will not negatively impact your job or the relationships within our work environment", as expected, her response has proven to be false. At this point, I can't help but wonder when one of the stakeholders, which are being copied on my numerous emails, is finally going to step in and put a stop to this constant retaliation and discrimination.

I would appreciate clarification from County Manager, Mr. David Smith and/or District Attorney, Mr. Joe Gonzales, to let me know exactly what the County's Policy is on asking permission before being allowed to use the restroom.

cc. EEOC/Continued Retaliation/Discrimination

Nancy A. Soto
Administrative Coordinator

2

**Guevara, Veronica**

| | |
|---|---|
| **From:** | Soto, Nancy |
| **Sent:** | Friday, January 31, 2020 1:00 PM |
| **To:** | Guevara, Veronica |
| **Cc:** | Smith, David; Rodriguez, Justin; Calvert, Tommy; Gonzales, Joe D. |
| **Subject:** | Front Desk Coverage-01-31-20 #2 |

Good afternoon Veronica,

It is 12:20 pm and I am sitting at the front desk eating my lunch as I do every time my Office Assistant is out for the day. I find it quite odd that you would, out of the blue, offer to provide me your assistance with coverage since you have seen me repeatedly eat lunch at the front desk since you began working in this department. I do find it quite coincidental however; that your email coincides with a conversation Seth McCabe just had with Alexandria Millan concerning her watching the front desk while I ran to the restroom. In his conversation with Alexandria, he stated " you do not need to sit at the front desk, you do not report to Nancy". Even though she was only covering, so I could go to the restroom.

I am certain you are aware of this because I have asked almost everyone in this department, at one time or another, to "cover while I step across the hall". You may have even covered for me once or twice. It is common practice and I am certain that Olivia Esparza, has done the same when I am out of the office. She has never mentioned to me that you or anyone has brought it to her attention that she should be asking a supervisor before doing so. As women, sometimes, there simply is not enough time to request permission before using the restroom.

Clearly, you are aware of the issues which are taking place in this office concerning myself and Assistant County Manager, Tina Smith-Dean. It is the very reason you were directed to be my temporary supervisor. Your direction to me to "make sure the supervisor is notified as a courtesy", would of course include restroom breaks. This would mean I would be required to contact Mr. Seth McCabe each time I need to use the restroom since everyone on the 9th floor reports directly to Seth, except me and Pearl. Unless, there is a county policy I am unaware of, this clearly is a violation of my rights as there is not a single other person, in particular, any woman, in this department which is required to do that.

I should note that it is now 12:53. You, along with your guests, had lunch delivered and have had an opportunity to eat your lunch in the conference room. You have passed by me on two (2) occasions while I am eating my lunch at the front desk and not offered to sit here and provide any sort of coverage.

This is simply another form of retaliation, being directed at me, since I sent out an email to Assistant County Manager, Tina M. Smith-Dean. As such, I feel compelled to document it for the investigation which is currently taking place and copy all stakeholders on this email.

Respectfully,

Nancy A. Soto
Administrative Coordinator



BC 000068

cc. EEOC/Retaliation/Discrimination

From: Guevara, Veronica ████████████████
Sent: Friday, January 31, 2020 11:08 AM
To: Soto, Nancy ████████████
Subject: Front Desk Coverage

Good morning, Nancy:

I noticed that Olivia is not in today. If you need help covering the front desk by folks on the floor, please let me know or make sure his/her supervisor is notified or asked as a courtesy. I'm tied up until about 2 pm but am happy to cover up front as well.

Thank you,

Veronica Guevara
Bexar County
Risk Management Coordinator

2

BC 000069

**Guevara, Veronica**

| | |
|---|---|
| From: | Soto, Nancy |
| Sent: | Monday, January 27, 2020 12:36 PM |
| To: | Curry, Dan |
| Cc: | Smith, David; Guevara, Veronica; Torralva, Jose; Ramirez, Hector; Rodriguez, Justin; Calvert, Tommy; Caballero, Francesca; Putney, Amy |
| Subject: | 2nd Response- Resource Management Facility Needs |
| | |
| Importance: | High |

Good afternoon Dan,

My immediate supervisor, at this time, is Veronica Guevara. I have copied her on this email. As I mentioned in my email below, our internal office process is to have all Facility related issues funneled through our Administrative Team, of which I am responsible for. To my knowledge, this has not changed. Again, we are not adding any additional level of bureaucracy to your operation. Our internal process has never created any issues in the scheduling of any services, in fact, it has cut down on the number of people directly involved.

Up until your email, which I received on Friday, January 24, 2020, this has *NEVER* been an issue or even questioned. As you know, I have worked directly with the Facilities Staff for years and years. I am extremely confused as to why this would be an issue for you at this time as I have also worked directly with you Dan. Most recently on the renovations of the current County Gym Facility where I was directed by Tina Smith-Dean to meet regularly with you and your staff regarding the renovations which needed to be done prior to the opening. I have also worked directly with you to coordinate the yearly Employee Health Fair. This sudden concern about the way we have been operating internally for so many years is quite perplexing.

I would be happy to meet and discuss any issues which your department is having concerning our internal process as I am totally unaware of anything that has changed which has hindered your staff from conducting their work within our department.

Tina Smith-Dean would normally be the individual to make this type of major change concerning one of our internal policies and to one of my long standing job responsibilities. To my knowledge, she is not supposed to be making any decisions concerning my job duties. Veronica Guevara was only assigned as my temporary supervisor on December 5, 2019, pending the outcome of other issues which are currently being addressed within our department and therefore, she has limited knowledge of this issue and of my long standing job responsibilities. I believe a change, of this magnitude, which will change a long standing internal office policy and remove of one of my larger job responsibilities rises to a higher. Therefore; as I mentioned in my first email response to you, I will await further instruction from County Manager, Mr. David Smith, to determine if he wants to remove this job duty from me and change the way we have been operating since I was hired in this department.

I have copied other stakeholders on this email as a means to document a much larger issue.

Respectfully,

1

Nancy A. Soto
Administrative Coordinator



my file/job duties/retaliation

---

From: Curry, Dan
Sent: Monday, January 27, 2020 11:20 AM
To: Soto, Nancy
Subject: RE: 01-24-20- Resource Management Facility Needs

Nancy,
Who is your immediate supervisor, I will take up this issue with them.


Thank You,

Dan Curry  AIA, FMP
Director
Bexar County Facilities Management

---

From: Soto, Nancy
Sent: Friday, January 24, 2020 5:37 PM
To: Curry, Dan
Cc: Smith, David; Torralva, Jose; Ramirez, Hector
Subject: 01-24-20- Resource Management Facility Needs
Importance: High

Dan,

Thank you for your email. I understand your concerns. It has been my job responsibility since I started in this department to oversee the day to day operations of our departments housekeeping, custodial services, repairs, etc. and to be the direct contact for our offices. This includes our office on the 9th floor of the Paul Elizondo Tower, the Human Resources Department, the Employee Clinic, and also the County Gym. This was designed to cut down on the number of people who are contacting your department to open work orders and to streamline the flow of work. To my knowledge this has not changed. I don't believe this process has ever created any issues in the scheduling of any services, in fact, it has cut down on the number of people directly involved.

The clinic is a unique area. As you know, we do not have access to their narcotics area. It has been a long standing practice for Facilities to contact me prior to scheduling any services which would require "after hours" work. I coordinate with UHS and Human Resources to get approval for Clinic Staff to stay after their normal scheduled hours and also to have the overtime salary approved. I have also made it a point to maintain a close relationship with the County's Housekeeping Services so I can address our department's needs without going directly through your department for every small issue. In the past, I was formerly introduced to the account managers which made this much easier. I was not given that same courtesy when this new company was hired.

2

BC 000071

I took it upon myself to meet and introduce myself to Mr. Guerra shortly after 4M took over the housekeeping contract. I did a walk-through of the Employee Clinic area to explain the specific needs of the clinic. I did this in anticipation of the floors at the clinic being cleaned to ensure there would be no confusion or delays.

My intent is not to add an additional level of bureaucracy to your operation as I a fully aware of the need for you and your team to be able to conduct your business without delay. I have always worked directly with your staff to facilitate their schedules along with the needs of this department. I am not aware of any time when your staff has had to wait or delay a job because of my availability. On the contrary, I have provided your staff with my personal cell number to be able to reach me at any time as to avoid any delays.

Since Tina Smith-Dean is no longer in my chain of command, I have copied Mr. David Smith, County Manager, on this email. It was David, through our Operations Manager Mr. John Diaz, who gave me this responsibility when I started working for this department almost 16 years ago. Until today, it has NEVER been a problem and I have not been made aware that anything has changed. I will await further instruction from Mr. Smith to determine if he wants to remove this job duty from me and change the way we have been operating since I was hired in this department. Until then, I would respectfully request that our normal process be allowed to continue as I am not aware of any issues which have presented a problem for the Facilities Staff. I am happy to discuss anything I can do to make this process smoother if needed.

Thank you for your understanding
Respectfully,

Nancy A. Soto
Administrative Coordinator

---

**From:** Curry, Dan
**Sent:** Friday, January 24, 2020 4:52 PM
**To:** Soto, Nancy
**Cc:** Torralva, Jose                Ramirez, Hector                          Smith-Dean, Tina

**Subject:** FW: Report

Nancy,
I appreciate your desire to help coordinate day to day operations within several spaces in our buildings. However, we simply do not have the staff, time, or resources to add an additional level of bureaucracy to our operation. I cannot have my staff rely on the schedule or availability of a single person to do their job. I am instructing my team to continue to coordinate schedules directly with the users in County buildings for events like this; floor care, custodial services, repairs, power shut downs, etc. My team is responsible for maintenance and facility issues at ALL buildings and spaces, that is why we are here. As always if you need assistance you can call x52608 and submit a work order.

Thank you in advance for your understanding.

Thank You,

3

BC 000072

**Dan Curry** AIA, FMP
Director
Bexar County Facilities Management

---

**From:** Soto, Nancy
**Sent:** Wednesday, January 22, 2020 9:15 AM
**To:** Garcia, Ponch
**Cc:** Ramirez, Hector; Torralva, Jose
**Subject:** RE: Report

Good Morning Ponch,

Since the Employee Clinic opened, it has been my job responsibility to oversee the facility and maintenance issues for the Clinic. I thought you and I had discussed in the past but perhaps I am mistaken. I also had a meeting with Mr. Guerra over a week ago. As I was not formerly introduced to him when his company originally took over the custodial contract, I thought it would be prudent to introduce myself and provide him with my contact information. We also did a walk-through of the Employee Clinic. I introduced him to the Clinic staff and we discussed our expectations. I informed him that I am responsible for the facility maintenance issues for our Employee Clinic. As such, he would need to coordinate directly with me anytime the clinic floors needed to be cleaned. It is mandatory that staff personnel from UHS be present at all times due to the narcotics which are stored in the clinic. In addition, I need to make sure we have approval from UHS for staff to stay late. In additional, the salary of that individual is approved prior to scheduling anything after hours. I also agree that the clinic floors are in need of cleaning along with a few other items I discussed with Mr. Guerra.

Mr. Guerra went directly to the clinic staff and scheduled the cleaning of the floors. I only found out about it yesterday at the end of the day. I did remind clinic staff that all requests such as these need to come to me before these types of decisions are made as it is my job responsibility.

Today, I am trying to confirm with UHS the approval of their staff to work after hours to facilitate the cleaning of the floors and I will also make sure the overtime payment of the employee is approved. As soon as I am able to confirm, I will notify Hector.

I am also responsible for the maintenance and facility issues over in our Human Resources Department. Staff has been instructed to funnel all requests directly through me. I will reach out directly to Ana Bernal to determine exactly what issues Human Resources may be having in regards to the cleaning staff so I can address them also.

I would appreciate it if you would keep me in the loop on all facility/maintenance issues related to the Resource Management Department (9th Floor-PET, Human Resources, & Employee Clinic).

Thank you for reaching out to me Ponch and have a great day

*Nancy A. Soto*
*Administrative Coordinator*





4

From: Garcia, Ponch █████████████████
Sent: Wednesday, January 22, 2020 8:51 AM
To: Soto, Nancy █████████
Cc: Ramirez, Hector █████████████ Torralva, Jose █████████████
Subject: FW: Report

Nancy,

A walk-thru of the entire building was conducted with the 4M Contract Manager last Thursday. I took the opportunity to introduce the Contract Manager to Ana Bernal, HR Manager. 4M will be working towards addressing the some of the issues presented by Ana in regard to cleaning services and staff.

During the walk-thru - 4M noted that the floors required attention and I agree. The floors look horrible.

I asked 4M to coordinate with the Maintenance Team to schedule the cleaning of the floors at the earliest opportunity.

Please let me know if you have any questions.

Thank you

Ponch

*Baldemar "Ponch" Garcia, MBA, FMP*
*Contract & Compliance Manager*
*Bexar County Facilities Management Department*
████████████████

CONFIDENTIALITY NOTICE: This electronic transmission and any attachments constitute confidential information which is intended only for the named recipient(s) and may be legally privileged. If you have received this communication in error, please contact the sender below immediately. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication by anyone other than the named recipient(s) is strictly prohibited.

From: Ramirez, Hector █████████████
Sent: Tuesday, January 21, 2020 3:36 PM
To: Soto, Nancy ██████████
Cc: Gutierrez, Carmen █████████
Subject: FW: Report

Nancy,
Making sure you were informed of this proposed schedule to strip and wax in the clinic.

Hector E Ramirez
Supervisor
Bexar County Facilities Management
████████████████



BC 000074

**From:** Garcia, Ponch
**Sent:** Tuesday, January 21, 2020 2:26 PM
**To:** 'Paul Guerra'
**Cc:** Ramirez, Hector; Gutierrez, Carmen; Garza, Alexandria
**Subject:** RE: Report

Please reach out to maintenance team so they can inform stakeholders.

Thank you

Ponch

**From:** Paul Guerra
**Sent:** Tuesday, January 21, 2020 2:10 PM
**To:** Garcia, Ponch
**Subject:** Report

Ponch,

Forgot to put the clinic, the floor is scheduled to be stripped and waxed this Friday 01/24/2020.

**Have a Safe and Great Day!**

Paul Guerra
*Account Manager*





BC 000075



February 26, 2020

**To:** Nancy Soto

**Subject: Notice of Investigative Administrative Leave**

Effective February 26, 2020, you are being placed on Investigative Administrative Leave with pay for a period of up to thirty (30) business days pursuant to Bexar County Human Resources Policy 7.4.04 Administrative Leave and Bexar County Civil Service Commission Rules, Policy 7.6.11 Investigative Administrative Leave.

During the period you are on Investigative Administrative Leave you are required to call in each morning at 8:30 a.m. to Veronica Guevara ██████████ if she is unavailable please leave a message. During this period you must be available for telephone communication between the hours of 8:00 a.m. through 5:00 p.m., Monday through Friday. In addition, you must be available to report, in person, to Administration if necessary to participate in the investigation or respond to work inquiries. Being unresponsive or unavailable during your regularly scheduled hours may result in additional disciplinary action up to and including termination. You are not permitted to work a second job during your regular schedule while you are on Investigative Leave pursuant to Bexar County Civil Service Commission Rule 7.6.11, Sec. (e).

Be advised that until further notice, access to all areas of the Bexar County Resource Management Office is strictly prohibited. Access to the building for administrative purposes must be authorized in advance by contacting Veronica Guevara.

Sincerely,

_(signature)_     2.26.2020

Veronica Guevara     Date
Risk Management Coordinator

cc:   Bexar County Civil Service Commission

I acknowledge receipt of this document:

_(signature)_     2/26/20

Employee Signature     Date Received

1

**BC 000076**



## EXHIBIT A:

### EMPLOYEE'S DUTY TO PRESERVE INFORMATION

Under the Texas Public Information Act, as a Bexar County employee, you are the custodian of any records related to your work with Bexar County or any information that constitutes the transaction of official business. You have a legal duty to preserve that information. This includes information contained in any personal electronic devices such as cell phones, tablets, or personal computers, which are subject to the Act if those devices contain work-related information. This duty to preserve covers communication such as texts, tweets, emails, notes, and pictures.

Through this notice you are directed to maintain all videos, photographs, and records created by you or in your possession which constitutes the transaction of official business or in any way relates to your employment with Bexar County. DOCUMENTATION DESTRUCTION: IT IS REQUESTED THAT ALL DOCUMENTS, VIDEOS, PHOTOGRAPHS, AND/OR OTHER DATA COMPLIATIONS WHICH MIGHT IMPACT THE SUBJECT MATTER OF THIS INVESTIGATION BE PRESERVED AND THAT ANY ONGOING PROCESS OF DOCUMENT DESTRUCTION INVOLVING SUCH DOCUMENTATION CEASE. If any document, image, or data required herein has previously been destroyed, you are requested to describe in detail the circumstances of and reasons for such destruction and to produce all documents which relate to either the circumstances or the reasons for such destruction.

Sincerely,

_2.26.2020_
Veronica Guevara                Date
Risk Management Coordinator

I acknowledge receipt of this document:

_____        2/26/20
Employee Signature                Date Received

1

W...place Incident – Budget, Management & Fi...ce
Nancy McClure-Soto, Administrative Services Coordinator
Wednesday, April 15, 2020

Welcome, we selected to conduct this interview by means of WebEx video conference due to the pandemic COVID-19, and are representing Bexar County as a whole which includes listening to you, and other members of the department.

This conversation is confidential and focused on the facts. Your disclosure today is taken as fact. Alejandro Fabela, Sr. HR Analyst and I will be taking notes of our conversation and I will prepare a report of our conversation as part of the County's effort to gain your insight. An audio or video recording will not be done as part of this interview experience. We are not recording; we expect that you are not recording this by audio or video. If you are recording, that recording is not sanctioned and is not authorized.

When asked if you have witnessed an event, we are asking if you personally heard or saw the event take place first hand. We are not asking for information given to you by a third party.

Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department and Work Location)
How long have you been working for the County?

1. On the morning of Wednesday, February 26, 2020, what actions did you take between your arrival at the office and approximately 9:00 a.m.?

2. Did you take any actions on the morning of February 26 that were outside your normal morning routine at the office? If so, what were those actions?

3. On the morning of February 26, did anyone react to what he/she perceived as you recording (film/photo) him/her with your personal mobile device? If so, what happened?

4. If you were recording (film/photo), do you think any persons may have been in those recordings?

5. Have you made other recordings of colleagues within the office setting? If yes, when/where?

6. Did you have a reason for the recording (film/photo)? If yes, then what is that reason?

7. Is anyone else aware of your reason for the recording?

8. Have you been tasked with similar reasons before?

This concludes this interview. If any further pertinent information comes to mind, please contact us. Thank you.

**Bernal, Ana**

| | |
|---|---|
| **From:** | Bernal, Ana |
| **Sent:** | Thursday, April 16, 2020 10:47 AM |
| **To:** | Soto, Nancy |
| **Subject:** | RE: February 26, 2020 |

Nancy,

The investigation continues as I mentioned.

Here are the questions I was going to ask you.

You will have until 9:00 a.m. tomorrow, Friday, April 17, 2020 to respond.

1. Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department and Work Location) How long have you been working for the County?

2. On the morning of Wednesday, February 26, 2020, what actions did you take between your arrival at the office and approximately 9:00 a.m.?

3. Did you take any actions on the morning of February 26 that were outside your normal morning routine at the office? If so, what were those actions?

4. On the morning of February 26, did anyone react to what he/she perceived as you recording (film/photo) him/her with your personal mobile device? If so, what happened?

5. If you were recording (film/photo), do you think any persons may have been in those recordings?

6. Have you made other recordings of colleagues within the office setting? If yes, when/where?

7. Did you have a reason for the recording (film/photo)? If yes, then what is that reason?

8. Is anyone else aware of your reason for the recording?

9. Have you been tasked with similar reasons before?

Respectfully,
Ana M. Bernal
HR-HRIS Manager
Bexar Co. Human Resources

**From:** Soto, Nancy
**Sent:** Thursday, April 16, 2020 9:41 AM

1

BC 000079

To: Bernal, Ana <abernal@bexar.org>
Subject: RE: February 26, 2020

Ana,

Again, I am not aware of any incident which occurred. I cannot possibly provide "my side of the story" if I don't know what you are referring to. I went to work as normal. At noon, I was given a letter by Veronica Guevara, placed on "Investigative Administrative Leave", and walked out of the building even though I did not violate any office or department policies or any Civil Service Rules. I was not provided any details or explanation as to why. I truly can't provide any additional information until I understand exactly what I am being accused of. At this time, I am requesting the full details of this investigation so I can provide them to my attorney.

Thank you for your time.

Respectfully,

Nancy Soto


From: Bernal, Ana
Sent: Thursday, April 16, 2020 9:22 AM
To: Soto, Nancy
Subject: RE: February 26, 2020

Nancy,
We want to give you the opportunity to give your side of the story.
If you don't want to participate in the interview would you like to submit a written state as to what occurred that day prior to you being put on Investigative Administrative Leave?

Respectfully,
Ana Bernal


From: Soto, Nancy
Sent: Thursday, April 16, 2020 9:04 AM
To: Bernal, Ana
Subject: RE: February 26, 2020

Ana,

As I explained below, I am unaware of any incident which occurred on February 26, 2020. I was given a letter by Veronica Guevara which stated I was being placed on "Investigative Administrative Leave" for a period of 30 days and then I was walked out of the building. I have no information on the details of this investigation even though I have repeatedly asked. I assumed this investigation was completed since I was returned to work and the "Investigative Administrative Leave" was not extended. Please provide me with the details of the actual incident or complaint which you believe to have occurred so I can discuss it with my attorney and we can determine the best course of action.

Respectfully,

Nancy Soto

BC 000080

From: Bernal, Ana
Sent: Thursday, April 16, 2020 8:52 AM
To: Soto, Nancy ██████████████
Subject: RE: February 26, 2020

This interview is part of the investigation and you are being given the opportunity to respond to what occurred on Wednesday, February 26, 2020.

From: Bernal, Ana
Sent: Thursday, April 16, 2020 8:50 AM
To: Soto, Nancy ██████████
Subject: RE: February 26, 2020

Nancy,
This interview is your opportunity to walk me through that morning, perhaps something will come up.

Ana

From: Soto, Nancy
Sent: Thursday, April 16, 2020 8:44 AM
To: Bernal, Ana ██████████████
Subject: RE: February 26, 2020

Good Morning Ana,

Thank you for your response. I am unaware of any incident which occurred on February 26, 2020. On that date, I was given a letter by Veronica Guevara which stated I was being placed on "Investigative Administrative Leave" for a period of 30 days and then I was walked out of the building. I asked Veronica several times why I was being placed on "Investigative Administrative Leave". She stated she did not have any information to provide me. She only said that an investigation was being conducted that involved me. I asked if it was in reference to the Kelmar Global investigation and she said it did not. She said some "complaints" had made against me, that there would be an investigation conducted. Until the investigation was completed, I would be on "Investigative Administrative Leave".

On April 8, 2020, I received a phone call from Veronica Guevara, which was followed up by an email, to inform me that I was no longer on "Investigative Administrative Leave". I was being brought back to work again. Again, I asked why she had put me on "Investigative Administrative Leave", and again she said she had no information to provide me. I was returned to work.

I am seeking clarification and details as to exactly what this interview that you are asking me to participate in is regarding.

Thank you

Nancy Soto

From: Bernal, Ana
Sent: Thursday, April 16, 2020 8:04 AM
To: Soto, Nancy ██████████████
Subject: RE: February 26, 2020

Nancy,

3

BC 000081

The interview today is in reference to the incident that occurred on Wednesday, February 26, 2020,

From: Soto, Nancy
Sent: Wednesday, April 15, 2020 5:05 PM
To: Bernal, Ana
Subject: RE: February 26, 2020

Ana,

Thank you for your email. Could you please provide clarification on what investigation this is reference to. What investigation am I being interviewed for and what charges is this concerning?

Thank you
Respectfully,

Nancy Soto

From: Bernal, Ana
Sent: Wednesday, April 15, 2020 1:10 PM
To: Soto, Nancy
Subject: February 26, 2020
Importance: High

Nancy,

At 9:00 a.m. Thursday, April 16, 2020 via WebEx you have an opportunity to speak with myself, Ana Bernal, HR-HRIS Manager who is conducting interviews on behalf of the Budget Office, and Management and Finance. You can expect to meet with myself, Ana Bernal and my colleague Alejandro Fabela, Sr. HR Analyst via WebEx.
Your supervisor has been informed of your absence on Thursday between the hours of 9:00 a.m. and 10:00 a.m.

Ana M. Bernal
HR-HRIS Manager
Bexar Co. Human Resources

BC 000082

| | |
|---|---|
| **From:** | Bloodworth, Kristin K. |
| **Sent:** | Thursday, April 16, 2020 5:01 PM |
| **To:** | Bernal, Ana; Gonzalez, Manuel |
| **Cc:** | Roberson, Larry L. |
| **Subject:** | RE: Bexar County H-R Investigation of Nancy Soto |

Ana,
Hold off on responding to this email for now and we'll get back to you regarding a response.
Thanks,
Kristin

Kristin K. Bloodworth
Assistant Criminal District Attorney
Civil Division



**CONFIDENTIALITY NOTICE:** This electronic transmission and any attachments constitute confidential information, which is intended only for the named recipient (s) and may be legally privileged. If you have received this communication in error please contact the sender below immediately. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication by anyone other than the named recipient (s) is strictly prohibited.

**From:** Bernal, Ana
**Sent:** Thursday, April 16, 2020 4:46 PM
**To:** Gonzalez, Manuel
**Cc:** Bloodworth, Kristin K.
**Subject:** FW: Bexar County H-R Investigation of Nancy Soto

FYI

**From:** Jason J. Jakob
**Sent:** Thursday, April 16, 2020 4:45 PM
**To:** Bernal, Ana                    Rene Diaz                    Evelyn Lewis                    Vicki McGovern
**Cc:** Soto, Nancy
**Subject:** Bexar County H-R Investigation of Nancy Soto

Dear Ms. Bernal:

This email is in reference to our earlier telephone conversation today and our notice that this law firm legally represents Mrs. Nancy Soto has a pending EEOC claim against Bexar County, Texas. We also represent her in any and all investigations arising from or related directly or indirectly from Mrs. Soto employment with Bexar County, Texas.

1

**BC 000083**

As I discussed with you today this ( ...n was retained late in the day and no... ..ole to respond or provide answers to the allegations and questions provided to Mrs. Soto at 10:47 a.m. to be answered by 9:00 a.m. tomorrow as this is an unreasonable brief response time and does not allow adequate legal representation of our client.

Tomorrow, I will send a formal Letter of Representation of Mrs. Soto by this law firm.

Please send me a copy of your 10:47 a.m. email as well as include me, the undersigned attorney, with all future correspondence with my client in regard to this investigation or adverse employment actions or considerations being conducted by Bexar County, Texas against our client, Mrs. Soto.

Moreover, please coordinate any future interviews you desire with our client with this office so that legal representation may be afforded to Mrs. Soto.

Best Regards- Jason J. Jakob
        Attorney and Counselor at Law

 

Jason J. Jakob, Esq.
Founding and Senior Partner

Diaz Jakob, LLC
Attorneys at Law

*** Notice from Diaz Jakob, LLC: This email and its contents (including any accompanying attachments) are intended only for the addressee(s) and may contain privileged and/or confidential information. If you are not the intended recipient(s) of this message, any use, disclosure, copying, distribution, or reliance upon it or its contents is strictly prohibited. Any unauthorized or inadvertent disclosure of this email or its contents (including any accompanying attachments) shall not compromise or waive the confidential or privileged nature of this transmission. Should you receive this transmission in error, please notify the sender immediately and delete this email and any accompanying attachments.
CIRCULAR 230 NOTICE: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended to be used and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter[s].
Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

BC 000084

**Bernal, Ana**

| | |
|---|---|
| **From:** | Bloodworth, Kristin K. |
| **Sent:** | Monday, April 20, 2020 4:41 PM |
| **To:** | Bernal, Ana |
| **Cc:** | Gonzalez, Manuel |
| **Subject:** | FW: Bexar County HR Investigation: N. Soto |
| **Attachments:** | RE: February 26, 2020 |

Kristin K. Bloodworth
Assistant Criminal District Attorney
Civil Division



**CONFIDENTIALITY NOTICE:** This electronic transmission and any attachments constitute confidential information, which is intended only for the named recipient (s) and may be legally privileged. If you have received this communication in error please contact the sender below immediately. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication by anyone other than the named recipient (s) is strictly prohibited.

**From:** Bloodworth, Kristin K.
**Sent:** Friday, April 17, 2020 3:06 PM
**To:** 'jjakob@diazjakob.com'
**Subject:** Bexar County HR Investigation: N. Soto

Jakob,

One of our Human Resources employees, Ana Bernal, reached out to inform me you had contacted her regarding an investigation she was conducting and she shared that you have been retained as Nancy Soto's legal counsel. In similar fashion, I would request that your future communications be directed to my attention as the District Attorney's Office represents Bexar County and its offices and employees.

While I understand and appreciate your request that communications with Ms. Soto go through you, please note that communications between Bexar County employees are not prohibited simply because someone has retained counsel. If you believe that communication with Ms. Soto is restricted, please send me your underlying authority for such assertion so we can discuss that issue further. Otherwise, Ms. Bernal is legally entitled to continue her investigation without outside interference or involvement.

With regard to the pending investigation, Ms. Bernal has been tasked with investigating events that took place on the morning of Feb. 26, 2020. Ms. Bernal has requested that your client timely respond to the attached questions (within the email from Ms. Bernal to Ms. Soto). It appears from Ms. Soto's earlier emails that she does not have a response to the questions propounded. If she has no response to the questions or is unable to respond for some other reason, please confirm and I will instruct Ms. Bernal to note the same in her report. Otherwise, please have your client respond as directed so that HR can conclude its investigation into this matter by early next week.

1

With regard to Ms. Soto's EEOC claim, . you think we can resolve her claim at th.. ..me, I am open to having that discussion with you. Within our current environment, I think it would be difficult to get before an EEOC mediator any time soon.

When Ms. Soto's responses to the HR questions are complete, please forward me the same and I will get those to Ms. Bernal.

I look forward to working with you on this matter.

Hope all is well.

Have a wonderful weekend,
Kristin

Kristin K. Bloodworth
Assistant Criminal District Attorney
Civil Division



**CONFIDENTIALITY NOTICE:** This electronic transmission and any attachments constitute confidential information, which is intended only for the named recipient (s) and may be legally privileged. If you have received this communication in error please contact the sender below immediately. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication by anyone other than the named recipient (s) is strictly prohibited.

2

## Bernal, Ana

**From:** Bernal, Ana
**Sent:** Thursday, April 16, 2020 10:47 AM
**To:** Soto, Nancy
**Subject:** RE: February 26, 2020

Nancy,
The investigation continues as I mentioned.
Here are the questions I was going to ask you.
You will have until 9:00 a.m. tomorrow, Friday, April 17, 2020 to respond.

1. Can you introduce yourself? (Full Name, Contact Phone Number, Work Title, Work Department and Work Location) How long have you been working for the County?

2. On the morning of Wednesday, February 26, 2020, what actions did you take between your arrival at the office and approximately 9:00 a.m.?

3. Did you take any actions on the morning of February 26 that were outside your normal morning routine at the office? If so, what were those actions?

4. On the morning of February 26, did anyone react to what he/she perceived as you recording (film/photo) him/her with your personal mobile device? If so, what happened?

5. If you were recording (film/photo), do you think any persons may have been in those recordings?

6. Have you made other recordings of colleagues within the office setting? If yes, when/where?

7. Did you have a reason for the recording (film/photo)? If yes, then what is that reason?

8. Is anyone else aware of your reason for the recording?

9. Have you been tasked with similar reasons before?

Respectfully,
Ana M. Bernal
HR-HRIS Manager
Bexar Co. Human Resources


From: Soto, Nancy
Sent: Thursday, April 16, 2020 9:41 AM

1

**BC 000087**

**To:** Bernal, Ana ~~███████████~~
**Subject:** RE: February 26, 2020

Ana,

Again, I am not aware of any incident which occurred. I cannot possibly provide "my side of the story" if I don't know what you are referring to. I went to work as normal. At noon, I was given a letter by Veronica Guevara, placed on "Investigative Administrative Leave", and walked out of the building even though I did not violate any office or department policies or any Civil Service Rules. I was not provided any details or explanation as to why. I truly can't provide any additional information until I understand exactly what I am being accused of. At this time, I am requesting the full details of this investigation so I can provide them to my attorney.

Thank you for your time.

Respectfully,

Nancy Soto


**From:** Bernal, Ana
**Sent:** Thursday, April 16, 2020 9:22 AM
**To:** Soto, Nancy ~~███████████~~
**Subject:** RE: February 26, 2020

Nancy,
We want to give you the opportunity to give your side of the story.
If you don't want to participate in the interview would you like to submit a written state as to what occurred that day prior to you being put on Investigative Administrative Leave?

Respectfully,
Ana Bernal
~~███████████~~


**From:** Soto, Nancy
**Sent:** Thursday, April 16, 2020 9:04 AM
**To:** Bernal, Ana ~~███████████~~
**Subject:** RE: February 26, 2020

Ana,

As I explained below, I am unaware of any incident which occurred on February 26, 2020. I was given a letter by Veronica Guevara which stated I was being placed on "Investigative Administrative Leave" for a period of 30 days and then I was walked out of the building. I have no information on the details of this investigation even though I have repeatedly asked. I assumed this Investigative was completed since I was returned to work and the "Investigative Administrative Leave" was not extended. Please provide me with the details of the actual incident or complaint which you believe to have occurred so I can discuss it with my attorney and we can determine the best course of action.

Respectfully,

Nancy Soto

BC 000088

From: Bernal, Ana
Sent: Thursday, April 16, 2020 8:52 AM
To: Soto, Nancy ████████████████
Subject: RE: February 26, 2020

This interview is part of the investigation and you are being given the opportunity to respond to what occurred on Wednesday, February 26, 2020.

From: Bernal, Ana
Sent: Thursday, April 16, 2020 8:50 AM
To: Soto, Nancy ████████████████
Subject: RE: February 26, 2020

Nancy,
This interview is your opportunity to walk me through that morning, perhaps something will come up.

Ana

From: Soto, Nancy
Sent: Thursday, April 16, 2020 8:44 AM
To: Bernal, Ana ████████████████
Subject: RE: February 26, 2020

Good Morning Ana,

Thank you for your response. I am unaware of any incident which occurred on February 26, 2020. On that date, I was given a letter by Veronica Guevara which stated I was being placed on "Investigative Administrative Leave" for a period of 30 days and then I was walked out of the building. I asked Veronica several times why I was being placed on "Investigative Administrative Leave". She stated she did not have any information to provide me. She only said that an investigation was being conducted that involved me. I asked if it was in reference to the Kelmar Global Investigation and she said it did not. She said some "complaints" had made against me, that there would be an investigation conducted. Until the investigation was completed, I would be on "Investigative Administrative Leave".

On April 8, 2020, I received a phone call from Veronica Guevara, which was followed up by an email, to inform me that I was no longer on "Investigative Administrative Leave". I was being brought back to work again. Again, I asked why she had put me on "Investigative Administrative Leave", and again she said she had no information to provide me. I was returned to work.

I am seeking clarification and details as to exactly what this interview that you are asking me to participate in is regarding.

Thank you

Nancy Soto

From: Bernal, Ana
Sent: Thursday, April 16, 2020 8:04 AM
To: Soto, Nancy ████████████████
Subject: RE: February 26, 2020

Nancy,

3

BC 000089

The interview today is in reference to .e incident that occurred on Wednesday, ruary 26, 2020.

From: Soto, Nancy
Sent: Wednesday, April 15, 2020 5:05 PM
To: Bernal, Ana
Subject: RE: February 26, 2020

Ana,

Thank you for your email. Could you please provide clarification on what investigation this is reference to. What investigation am I being interviewed for and what charges is this concerning?

Thank you
Respectfully,

Nancy Soto

From: Bernal, Ana
Sent: Wednesday, April 15, 2020 1:10 PM
To: Soto, Nancy
Subject: February 26, 2020
Importance: High

Nancy,

At 9:00 a.m. Thursday, April 16, 2020 via WebEx you have an opportunity to speak with myself, Ana Bernal, HR-HRIS Manager who is conducting interviews on behalf of the Budget Office, and Management and Finance. You can expect to meet with myself, Ana Bernal and my colleague Alejandro Fabela, Sr. HR Analyst via WebEx.
Your supervisor has been informed of your absence on Thursday between the hours of 9:00 a.m. and 10:00 a.m.

Ana M. Bernal
HR-HRIS Manager
Bexar Co. Human Resources

4

BC 000090